IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| PATRICK PERRY et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v.           ) | No. 1:19-cv-01106-STA-cgc |
| ) | |
| HARDEMAN COUNTY GOVERNMENT et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON SUPPLEMENTAL BRIEFING AND EVIDENTIARY SUBMISSIONS**

This is an action for violations of the overtime pay provisions of the Fair Labor Standards Act ("FLSA"). Before the Court is Defendants Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, Mayor Jimmy Sain, and Sheriff Jimmy Doolen's Motion for Decertification. Plaintiffs, who are current and former deputies, dispatchers, and jailers employed by the Hardeman County Sheriff's Office, oppose decertification. For the reasons set forth below, Plaintiffs are ordered to submit evidence demonstrating how they were similarly situated in their employment with Hardeman County, and the parties are directed to submit additional briefing on the issues discussed here.

## BACKGROUND

On May 29, 2019, seven Plaintiffs filed the original Complaint in this case, alleging various violations of the FLSA. Three Plaintiffs were investigators employed at the Hardeman County Sheriff's Office (Patrick Perry, Justin Bryant, and Cody Naylor), and three were sheriff's deputies (Chris Wilkerson, Michael Hatch, and Ethan Vasquez). Plaintiff Cheri Baker was a dispatcher employed jointly by Hardeman County Government, the Hardeman County Sheriff's Office, the

1

Hardeman County Emergency Communication District, and the City of Bolivar. As a dispatcher, Baker was subject to a 40-hour workweek. Compl. ¶ 129. All other Plaintiffs were considered law enforcement and therefore subject to a 43-hour workweek. *Id*. All seven Plaintiffs alleged that Defendants had not paid them for all hours of overtime worked, had not correctly calculated their hourly rate of pay, and had altered timesheets submitted by Plaintiffs. *Id*. ¶¶ 97-101. All seven Plaintiffs alleged that they received compensatory time in lieu of overtime but that Defendants had not correctly calculated the amount of compensatory time which they were owed. *Id*. ¶¶ 105-112. Beyond these two claims, the original Complaint alleged that Defendants violated the FLSA in a number of different ways at different times.

For example, the investigators alleged they were misclassified as exempt employees and had never been properly paid for hundreds of hours of off-the-clock work. *Id*. ¶¶ 102-103. Two other Plaintiffs, Chris Wilkerson and Michael Hatch, resigned their positions with Hardeman County in 2018. *Id*. ¶¶ 71, 82, 119. According to Wilkerson and Hatch, Defendants failed to pay them for all compensatory time, vacation time, and holiday time they were owed at the time of their resignations. *Id*. ¶¶ 117-122. The other five Plaintiffs alleged Defendants adopted a new work week in January 2019, at which time Defendants began to miscalculate Plaintiffs' pay. *Id*. ¶¶ 113-116. Finally, Deputy Ethan Vasquez alleged that Defendants did not properly pay him for time he spent traveling to perform duties in the National Guard, though the Complaint does not allege how this violated the FLSA. *Id*. ¶¶ 123-28.

Plaintiffs sought relief for themselves and on behalf of all other similarly situated employees of the Hardeman County Sheriff's Office. After the Court held a scheduling conference and approved the parties' plan for discovery, Plaintiffs filed an unopposed motion for leave to amend their pleadings (ECF No. 27), in which Plaintiffs requested leave of court to file an amended

complaint naming 22 new Plaintiffs, all Hardeman County deputies and dispatchers. The Court granted the request, and Plaintiffs filed an Amended Complaint (ECF No. 29) on October 11, 2019. The Amended Complaint not only added 22 new Plaintiffs, Plaintiffs included not just deputies and dispatchers but also a jailer employed by the Hardeman County Sheriff's Office. All told, the Amended Complaint named 21 deputies, 7 dispatchers, and 1 jailer as Plaintiffs.

The Amended Complaint also expanded Plaintiffs' allegations about each of the "specific mechanisms" by which Defendants had violated the FLSA. Am. Compl. ¶ 132 (ECF No. 29). First, Plaintiffs alleged Defendants arbitrarily changed deputies, dispatchers, and jailers from hourly employees to salaried employees in March 2019, even though none of them are exempt from the FLSA's overtime requirements, and by doing so, failed to pay these employees for all hours worked. *Id.* ¶¶ 133-153. Plaintiffs next allege that prior to 2019 Defendants scheduled dispatchers and jailers to work 48 hours one week and 36 hours the following week, without paying overtime for hours worked in excess of 40 hours during the weeks they worked 48. *Id.* ¶¶ 154-175 (dispatchers), ¶¶ 176-190 (jailers). The Amended Complaint also restated Plaintiffs' allegations about Defendants' failure to pay all compensatory, vacation, and holiday pay due upon an employee's resignation. *Id.* ¶¶ 191-217. In one of its new theories of relief, the Amended Complaint went on to allege that Defendants had failed to pay deputies who worked the second or third shift for time spent during annual in-service training. For those deputies, who were not identified in the Amended Complaint, Defendants required them to work their regular shift and then attend eight hours of in-service training, meaning those deputies worked a total of 80 hours for that week without any overtime pay. *Id.* ¶¶ 218-230. Finally, Plaintiffs expanded on their allegations of off-the-clock work and realleged their claim about Defendants' failure to pay Deputy Vasquez for his travel time to National Guard duty.

Against the backdrop of these pleadings, Plaintiffs filed a motion to conditionally certify the case as an FLSA collective action (ECF No. 66) on March 3, 2020. Plaintiffs identified the following category of Hardeman County employees as persons similarly situated to Plaintiffs:

> All persons who have worked for Hardeman County Government as a sheriff deputy, jailer or dispatcher at any time in the three years prior to the filing of the complaint in this case and were required to work a 48-hour week without compensation at the rate of time and one half for all hours worked over 40 in a work week. Those who have had their overtime incorrectly calculated, who have not been paid for overtime worked, who have worked off the clock without being paid, those who were required to attend pre-shift and post-shift briefings without being paid, and those who were not paid their accrued compensatory, holiday and vacation time that [sic] time of termination of employment.

Defendants filed a written response in opposition (ECF No. 101) to Plaintiffs' motion to certify. However, when the parties appeared before the United States Magistrate Judge for a hearing on the motion, Defendants withdrew their opposition. Minute Entry, June 26, 2020 (ECF No. 104). The Magistrate Judge entered a written order granting the motion to certify on June 30, 2020. In her order, the Magistrate Judge stated that Plaintiffs should "provide a more definite statement of the classes and subclasses to be included" in the collective action and directed the parties to submit a proposal for "classes and subclasses." Order Granting Pls.' Mot. to Certify 2, June 30, 2020 (ECF No. 106).

On August 14, 2020, the parties submitted a joint proposal (ECF No. 110), defining 8 "subclasses" of Hardeman County employees: (1) those who did not receive correct overtime pay (all Plaintiffs); (2) all deputies, dispatchers, and jailers who did not receive pay for pre-shift briefings starting May 29, 2016[1]; (3) all employees who had not received proper accrued compensatory,

---

[1] The Joint Proposal defined certain claims for alleged FLSA violations going back three years (May 29, 2016) prior to the date the original seven Plaintiffs filed the initial Complaint (May 29, 2019) in this case. The statute of limitations for a violation of the FLSA is two years. *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 414 (6th Cir. 2022) (citing *McLaughlin v. Richland Shoe Co.*,

4

vacation, and holiday time upon their termination after October 2018; (4) dispatchers and jailers who had worked 48-hour workweeks each pay period without overtime starting in March 2019; (5) all deputies who were changed from hourly to salaried employees and had not been paid for 3 hours during those weeks starting in March 2019; (6) deputies and jailers who had not been paid for off the clock work starting in May 29, 2016; (7) all employees who were not paid correctly between October 1, 2016, and July 31, 2017; and (8) all deputies who did not receive overtime pay for in-service training. Even though the parties submitted this proposal for classes and sub-classes, no further action was taken on their proposal.

One more procedural aspect of the case of significance bears emphasis here. Prior to conditional certification of the case as a collective action, Plaintiffs filed two motions to amend their pleadings and add more claims, essentially supplemental claims concerning conduct occurring since they had filed the original Complaint. The Court denied the requests, coming as they did after the deadline for amending the pleadings. Several months later some Plaintiffs and other Hardeman County employees who were not parties to this case filed two separate suits of their own. In a Complaint dated June 9, 2021, and docketed as civil action no. 1:21-cv-01087, Brandon Allen, Cheri Baker, Justin Bryant, Jenny Duke, Crystal Ervin, Lauren Hampton, Jackie Kelley, Pearlie Long, Martha Lowrance, Cody Naylor, Patrick D. Perry, Toni Pierce Cathie Sprayberry, Martha Jane Vickers, and Alisha Young filed a Complaint for violations of the FLSA and for claims under state law against Hardeman County and Jimmy Sain in his individual capacity

---

486 U.S. 128, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). If an employee can show that the employer's violation of the statute was willful, the statute of limitations is three years. *Id.* To make such a showing, an FLSA plaintiff "must prove that the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677).

5

and in his official capacity as Mayor of Hardeman County. And in a separate Complaint dated June 28, 2021, and docketed as civil action no. 1:21-cv-01098, Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry filed a complaint for more FLSA violations and claims under state law against Hardeman County and Mayor Sain.

Before the Court could set scheduling conferences in either of the new cases, the parties in the case at bar and the parties in case no. 1:21-cv-01087 filed joint motions to consolidate the three actions. The Court granted the joint motions and consolidated cases 1:21-cv-01087 and 1:21-cv-01098 with the case at bar for all further proceedings. The Court also granted Plaintiffs in all three cases leave to file a single "Master Complaint" to set forth all of the allegations made in the three cases in a single pleading. Upon the filing of the Master Complaint (ECF No. 228) on December 1, 2021, the Court subsequently dismissed cases 1:21-cv-01087 and 1:21-cv-01098, finding that the claims in each of the companion cases were redundant to the claims asserted in the Master Complaint.

The Master Complaint named 67 current and former employees of Hardeman County as Plaintiffs and Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, Mayor Sain (in both an individual and official capacity), and Hardeman County Sheriff John Doolen as Defendants. Master Compl. ¶ 6. The Master Complaint alleges on behalf of all Plaintiffs (deputies, dispatchers, and jailers) FLSA claims for unpaid overtime based on Mayor Sain's decision to convert all Plaintiffs from hourly pay to salary in March 2019. *Id.* ¶¶ 91-114. With respect to deputies only, the Master Complaint alleges that the Hardeman County Sheriff's Office required deputies to work off the clock to complete paperwork before leaving for the day. *Id.* ¶¶ 115-122. With respect to four Plaintiffs who worked as investigators, the Master Complaint alleges that investigators routinely worked off the clock without proper

overtime pay. *Id.* ¶¶ 123-136. With respect to deputies who worked the second or third shifts, the deputies did not receive overtime pay for time spent on annual in-service training, one week during the year when the deputies attended mandatory training for 8 hours and worked their regular 8-hour shifts. *Id.* ¶¶ 137-151.

The Master Complaint also included FLSA violations that denied overtime pay to dispatchers and jailers. The Master Complaint alleged two types of violations affecting these groups of employees and in largely similar ways. First, Plaintiffs restated certain allegations about dispatchers and jailers who were regularly scheduled to work 48 hours per week and did not receive overtime pay. *Id.* ¶¶ 167-177 (dispatchers); *id.* ¶¶ 184-191. Defendants also required dispatchers to be at their posts 15 minutes before their shift began and jailers to be at their posts 15 to 30 minutes prior to a shift change but without paying these employees for their pre-shift time. *Id.* ¶¶ 178-183 (dispatchers); *id.* ¶¶ 192-197.

Beyond the policies affecting whole categories of employees, the Master Complaint also restated allegations from the previous pleadings about other FLSA violations. Defendants had miscalculated accrued compensatory, vacation, and holiday time for employees and thereby denied employees, 17 Plaintiffs in all, who had resigned their jobs the full amount of pay they were owed at the time their employment with Hardeman County ended. *Id.* ¶¶ 198-221.[2] The Master Complaint also made allegations specific to the Plaintiffs in case no. 1:21-cv-01087 and only for certain pay periods in 2021. According to the Master Complaint, Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry did not receive correct

---

[2] In their brief in response to Defendants' Motion for Decertification, Plaintiffs now indicate that all but 15 Plaintiffs have resigned their positions with Hardeman County and are no longer employed by the County.

pay for overtime they worked during the period between May 21, 2021, and June 18, 2021. *Id.* ¶¶ 152-166. In its longest series of factual allegations, Master Complaint alleged that Mayor Sain had retaliated against several Plaintiffs over their participation in this litigation. *Id.* ¶¶ 222-296. The Master Complaint finally restated the allegations about Defendants improperly denying Deputy Vasquez pay for his time spent traveling for military duty with the National Guard in January 2019. *Id.* ¶¶ 297-303.

The discovery process in this case has been protracted, to say the least. The Court need not review each of the depositions noticed by the parties, the modifications to the discovery deadlines granted by the Court, or the motion practice over discovery disputes. Discovery now appears to be complete. A trial is set for October 23, 2023. In their Joint Motion to Decertify the Collective Action, Defendants argue that decertification of the collective action is warranted because the named Plaintiffs are not similarly situated to the opt-in Plaintiffs. The named Plaintiffs and opt-in Plaintiffs work in different jobs with dissimilar responsibilities. Rather than identifying some single payroll policy applicable to all Plaintiffs, Plaintiffs have alleged a number of FLSA violations. Even for Plaintiffs who worked as deputies, the proof shows that these deputies had a variety of duties and reported to different supervisors. Deputies' work schedules were different than dispatchers and jailers. The only common policy identified by Plaintiffs, that Defendants did not pay all Plaintiffs overtime, is too vague to justify collective action.

Plaintiffs see matters differently. In their view, Plaintiffs now consist of all 67 current and former Hardeman County employees named as Plaintiffs in the Master Complaint. Each of these Plaintiffs signed a consent form to signify his or her agreement to act as a "party plaintiff." After the Magistrate Judge granted the motion for conditional certification, 17 Hardeman County employees opted into the case as members of the collective action "pursuant to the motion for

conditional certification." Pls.' Resp. in Opp'n 4 (ECF No. 313). Focusing on the actual duties of each type of job represented among the "party plaintiffs" (deputy, dispatcher, and jailer), Plaintiffs contend that the 17 opt-in parties are similarly situated. The only meaningful distinction among all Plaintiffs is the various grades of pay. Plaintiffs argue then that decertification is not warranted and that trial should proceed on the claims of all Plaintiffs.

## **STANDARD OF REVIEW**

Section 216(b) of the FLSA permits one or more employees to recover unpaid overtime compensation by suing an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Supreme Court has described FLSA cases of this sort as "collective actions." *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1711 (2022) (describing FLSA actions on behalf of similarly situated employees as a "collective action"); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (same); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013) (same); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482 (1989) (same). FLSA "collective actions permit individualized claims and individualized defenses, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 403 (6th Cir. 2021) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)) (emphasis in original). Unlike class members in civil actions under Federal Rule of Civil Procedure 23, similarly situated employees join an FLSA collective action by filing notice of their consent to join the action. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

9

Traditionally, courts have followed a two-step "certification" process in FLSA collective actions, first to give notice of the action to similarly situated employees and later to make a final determination of whether the opt-in employees are in fact similarly situated. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."); *but see Clark v. A&L Homecare & Training Ctr.*, LLC, 68 F.4th 1003, 1009 (6th Cir. 2023) ("[T]he term 'certification' has no place in FLSA actions.") (citing *Fischer v. Federal Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022)). At the first step, courts conditionally "certify" the collective action by deciding whether the FLSA plaintiffs and the other employees they seek to represent are similarly situated. "The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Symczyk*, 569 U.S. at 75 (citing *Hoffmann–La Roche*, 493 U.S. at 171–172). "A district court's determination to facilitate notice in an FLSA suit is . . . provisional, in the sense that the court renders a final decision on the underlying issue (whether employees are 'similarly situated' . . . ) only after the record for that issue is fully developed . . . ." *Clark*, 68 F.4th at 1010–11.

Once a court approves notice to other employees, similarly situated employees must "opt in" to participate in the case. *Canaday*, 9 F.4th at 402 (quoting *Symczyk*, 569 U.S. at 75) ("That means all plaintiffs in an FLSA collective action must affirmatively choose to 'become parties' by opting into the collective action."). "Once they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action." *Canaday*, 9 F.4th at 394. In other words, a similarly situated employee who opts in becomes an "individual claimant," with his or her own lawsuit. *Id*. An opt-in plaintiff's FLSA action "commences," either "(a) on the date when the complaint is filed, if he is specifically named as party plaintiff in the complaint" together with a "written consent to become a party plaintiff," or "(b) . . . on the subsequent date on which" the plaintiff actually

10

files a written consent, if the plaintiff was not named in the complaint or did not file a written consent with the complaint. 29 U.S.C. § 256(a) & (b).

At the second stage—"after all of the opt-in forms have been received and discovery has concluded"—the court makes another "similarly situated" determination (typically on motion of the defendant for decertification), *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018), but under a "stricter standard because it occurs near the end of discovery." *Frye v. Baptist Memorial Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (citing *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). "The very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170) (internal quotation marks omitted). In the Sixth Circuit, FLSA plaintiffs have the burden to prove similarity. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162, 136 S. Ct. 663, 193 L.Ed.2d 571 (2016) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Plaintiffs must produce "more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Frye*, 495 F. App'x at 671 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

In sum, opt-in plaintiffs "become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court determines—not conditionally, but conclusively—that each of them is in fact 'similarly situated' to the original plaintiffs." *Clark*, 68 F.4th at 1009 (citing 29 U.S.C. § 216(b); and *Canaday*, 9 F.4th at 403); *see also Mickles on behalf*

11

*of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("Although § 216(b) also requires an opt-in plaintiff be similarly situated to the named plaintiff, the opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them.").

## ANALYSIS

The issue presented is whether Plaintiffs can meet their burden to prove they are similarly situated and therefore proceed to trial collectively on their individual FLSA claims. "Plaintiffs in an FLSA collective action need only show that their employment makes them similarly situated to one another." *Canaday*, 9 F.4th at 403. "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019)). The Sixth Circuit has approved consideration of the following factors to determine similarity: (1) "the factual and employment settings of the individual plaintiffs," (2) "the different defenses to which the plaintiffs may be subject," and (3) "the degree of fairness and procedural impact of certifying the action as a collective action." *Pierce*, 922 F.3d at 745 (quoting *O'Brien*, 575 F.3d at 584). Proof to establish a common theory of an FLSA violation is also relevant. *Id.* at 585. "All these issues tend to be factbound, meaning they depend on the specific facts pertaining to those employees." *Clark*, 68 F.4th at 1010 (holding that FLSA plaintiffs must show a "strong likelihood" they are similarly situated to other employees before notice of the suit can issue to other employees). "The heart of the matter is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather

than personal, evidence." *Pierce*, 922 F.3d at 745 (citing 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1807 (3d ed. 2005)).

At this point, the Court finds Plaintiffs have not met their burden to prove how they are similarly situated for purposes of their collective FLSA claims against Defendants. Although Defendants have cited deposition testimony to support their argument for decertification, Plaintiffs have not introduced any evidence at all to show why collective action is appropriate in this case. On the contrary, Plaintiffs' brief cites exclusively the allegations of the Master Complaint (ECF No. 225). This does not satisfy Plaintiff's burden at this stage of the case. The Sixth Circuit has described the burden at the decertification stage as a "stricter standard," which requires Plaintiffs to come forward with "more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Frye*, 495 F. App'x at 671; *see also Monroe*, 860 F.3d at 397 ("Once discovery has concluded, the district court—with more information on which to base its decision and thus *under a more exacting standard*—looks more closely at whether the members of the class are similarly situated."); *O'Brien*, 575 F.3d at 586 ("Plaintiffs *who do present evidence that they are similarly situated* to the lead plaintiffs should not be barred from the opportunity to be part of a FLSA collective action, because the collective action serves an important remedial purpose.") (emphasis added). The Ninth Circuit has likened decertification to the summary judgment standard under Rule 56. *Campbell*, 903 F.3d at 1117 ("Decertification, in the sense the term is typically used, comes after relevant discovery is complete, and in that respect resembles a motion for summary judgment.") (collecting cases). In the absence of proof to show how they are similarly situated, Plaintiffs have not shown why the Court should allow them to proceed in a collective action on any of their FLSA claims.

13

Rather than grant the Motion for Decertification over Plaintiffs' failure to introduce evidence about the similarity among them, the Court will give Plaintiffs an opportunity to submit proof and additional briefing on the decertification issues. Plaintiffs are therefore directed to produce evidence to make each of the relevant showings required for the similarly situated inquiry the Court must conduct to determine the Motion for Decertification.

What exactly does Plaintiffs' burden of proof require? The parties' briefing on decertification is not entirely persuasive on the framing of this question. In Plaintiffs' view, there are 67 "named Plaintiffs," and 17 "opt-in Plaintiffs" in this case. Plaintiffs distinguish between "named Plaintiffs" who gave their consent to act as "party plaintiffs" and are named as parties in the Master Complaint and "opt-in Plaintiffs" who gave their consent to participate in the collective action and are not named as Plaintiffs in the Master Complaint. Plaintiffs contend the Court needs only to decide whether the 17 "opt-in Plaintiffs" are similarly situated to the 67 "named Plaintiffs." Plaintiffs have not cited any authority to warrant a distinction between opt-in Plaintiffs who agree to be "parties" and some other kind of Plaintiffs who opt in for a more limited purpose.

The Sixth Circuit has held that any plaintiff who files written consent has "party status as if they had initiated the action." *Canaday*, 9 F.4th at 394; *id.* at 397 ("[E]ach opt-in plaintiff becomes a real party in interest, who must meet her burden for obtaining relief and satisfy the other requirements of party status."). Likewise, the Court of Appeals has held that opt-in plaintiffs "become parties to an FLSA suit (as opposed to mere recipients of notice) *only after* they opt in *and* the district court determines—not conditionally, but *conclusively*—that each of them is in fact 'similarly situated' *to the original plaintiffs*." *Clark*, 68 F.4th at 1009 (emphasis added). Therefore, in order to satisfy their burden on decertification, Plaintiffs must show how all Plaintiffs who have opted into the case, regardless of the nature of their consent or the specific wording of

14

their signed consent form, are similarly situated in all relevant respects. *Pierce*, 922 F.3d at 749 ("[T]he collective-action framework presumes that similarly situated employees are representative of each other and have the ability to proceed to trial collectively.").

The next question then is similarly situated to whom? In Defendants' view, Plaintiffs as a whole cannot show how they were similarly situated in their employment. Plaintiffs allege a series of FLSA violations, most of which pertain only to certain Plaintiffs who worked in certain jobs for Hardeman County. Defendants argue that because of the diversity of their job responsibilities and the diversity of facts surrounding their employment, Plaintiffs, 84 in all, cannot demonstrate they were similarly situated. Strictly speaking, Defendants' point is true as far as it goes. Despite some factual overlap, Plaintiffs' different theories of relief combined with the disparate nature of their jobs at the Sheriff's Office (investigators, deputies, dispatchers, and jailers) means collective treatment for all of Plaintiffs' individual claims is doubtful. But the Sixth Circuit has counseled district courts to "examine whether partial decertification is possible, when faced with the situation where a subset of the plaintiffs fail to allege violations of the FLSA." *O'Brien*, 575 F.3d at 586. The same principle applies where as in this case the FLSA plaintiffs allege one kind of violation of the Act as to some Plaintiffs and another kind of violation as to others. *Pierce*, 922 F.3d at 747 ("The end-all and be-all of a collective action is to determine the average number of hours each individual worked per week. At the least, the court should have created a separate subclass for the [dissimilar] employees.").

Therefore, Plaintiffs must show how each set or subset of Plaintiffs are similarly situated in all relevant respects to the other Plaintiffs who allege the same violation of the FLSA. For example, the Master Complaint alleges that Defendants denied all Plaintiffs correct overtime pay and thereby violated the FLSA in a uniform manner when former Hardeman County Mayor Sain

15

reclassified most or all Plaintiffs (deputies, dispatchers and jailers) from hourly employees to salaried employees in March 2019.  Master Compl. ¶¶ 91-114.  For claims like this one that apply to Plaintiffs as a whole, Plaintiffs must introduce substantial evidence to show how a single, common policy applied to each Plaintiff and resulted in a violation of the FLSA, despite the very different nature of each Plaintiff's employment with Hardeman County.  *Pierce*, 922 F.3d at 747 ("A common policy cannot overcome the factual differences between [different types of] employees . . ., which goes to determining the heart of the claim (the total hours worked each week).").

As for Plaintiffs' claims concerning only subsets or specific groups of Plaintiffs rather than all Plaintiffs as a whole, the subset of Plaintiffs alleging the claims must prove how they "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation."  *Clark*, 68 F.4th at 1010; *see also* Jt. Proposal for Classes and Subclasses (ECF No. 110) (defining eight types of FLSA violations and the subclasses of Plaintiffs alleging each type of claim, including the names of the Plaintiff who asserted the claim).  For example, the subset of Plaintiffs who worked as dispatchers and allege certain FLSA violations in the course of their work as dispatchers, like not being paid for pre-shift briefings, must show how they were similarly situated in order to proceed with their individual claims collectively.

In short, for each separate alleged FLSA violation on which Plaintiffs intend to proceed collectively at trial, Plaintiffs' evidentiary submissions and supplemental briefing should address the following: (1) the specific practice regarding employee compensation adopted by Defendants and alleged to have violated the FLSA, (2) the identity of the Plaintiffs subject to the practice, including their names, job titles, classification as salary or hourly employees, and regular work schedule or shift at all times relevant to the claim; (3) how Defendants' application of the practice

regarding employee compensation resulted in a violation of the FLSA as to each Plaintiff; and (4) any other evidence to show how Plaintiffs alleging the FLSA violation were similarly situated.

As far as their supplemental briefing on the law, all parties should further address the following issues. First, the parties should explain whether the Court should certify any collective action claims for violations of the FLSA that were not identified in Plaintiffs' initial motion for conditional certification or alleged as collective action claims in the Master Complaint. For example, several Plaintiffs allege that Defendants engaged in acts of retaliation against them after they became participants in this lawsuit. However, the retaliation claims alleged by a subset of Plaintiffs were not part of Plaintiffs' original motion for conditional certification or the Magistrate Judge's order granting conditional certification.

Next, the parties' supplemental briefing should address the proper disposition of any collective action claims for violations of the FLSA, in the event the Court determines that Plaintiffs have not carried their burden to prove similarity. Defendants have requested that the Court "decertify the conditionally certified class, dismiss the opt-in plaintiffs without prejudice, and allow the plaintiffs to pursue their claims in separate, individual actions if they so desire." Mot. for Decertification 2 (ECF No. 307). As part of their supplemental briefing, the parties should address whether partial decertification is possible in this matter and how the Court should achieve it. Otherwise, Plaintiffs' failure to carry their burden of proof for certification on any FLSA claim on which Plaintiffs intend to proceed to trial collectively will result in the decertification of that FLSA claim and the dismissal of the claim without prejudice.

Finally, the supplemental briefing should present any other arguments or proof the parties believe the Court should consider before making a final determination of Defendants' Motion for Decertification.

17

## **CONCLUSION**

Because the trial of this matter is set to begin October 23, 2023, Plaintiffs' evidentiary submissions and supplemental briefing are due no later than the close of business on Monday, October 2, 2023. Defendants will then have until the close of business on October 12, 2023, in which to respond to Plaintiffs' additional submissions.

**IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        UNITED STATES DISTRICT JUDGE

                                        Date: September 20, 2023.