**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

|  |  |  |
|---|---|---|
| **PATRICK PERRY et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 1:19-cv-01106-STA-cgc** |
| | ) | |
| **HARDEMAN COUNTY GOVERNMENT et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION FOR
DECERTIFICATION
ORDER TO FILE MEDIATION STATUS REPORT**

---

This is an action for violations of the overtime pay, compensatory time, and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"). Before the Court is Defendants Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, Mayor Jimmy Sain, and Sheriff Jimmy Doolen's Motion for Decertification (ECF No. 307). Plaintiffs, who are current and former deputies, dispatchers, and jailers employed by the Hardeman County Sheriff's Office, have responded in opposition. The parties have also filed supplemental briefing. The Court held a hearing on the Motion on April 3, 2024. For the reasons set forth below, Defendants' Motion is **GRANTED in part, DENIED in part**.

## BACKGROUND

On May 29, 2019, seven Plaintiffs filed the original Complaint in this case, alleging various violations of the FLSA. Three Plaintiffs were investigators employed at the Hardeman County Sheriff's Office (Patrick Perry, Justin Bryant, and Cody Naylor), and three were sheriff's deputies (Chris Wilkerson, Michael Hatch, and Ethan Vasquez). Plaintiff Cheri Baker was a dispatcher

1

employed jointly by Hardeman County Government, the Hardeman County Sheriff's Office, the Hardeman County Emergency Communication District, and the City of Bolivar.  As a dispatcher, Baker was subject to a 40-hour workweek.  Compl. ¶ 129.  All other Plaintiffs were considered law enforcement and therefore subject to a 43-hour workweek.[1]  *Id*.  All seven Plaintiffs alleged that Defendants had not paid them for all hours of overtime worked, had not correctly calculated their hourly rate of pay, and had altered timesheets submitted by Plaintiffs.  *Id*. ¶¶ 97-101.  All seven Plaintiffs alleged that they received compensatory time in lieu of overtime but that Defendants had not correctly calculated the amount of compensatory time which they were owed. *Id.* ¶¶ 105-112.  Beyond these two claims, the original Complaint alleged that Defendants violated the FLSA in a number of different ways at different times.

For example, the investigators alleged they were misclassified as exempt employees and had never been properly paid for hundreds of hours of off-the-clock work.  *Id.* ¶¶ 102-103.  Two Plaintiffs, Chris Wilkerson and Michael Hatch, resigned their positions with Hardeman County in 2018.  *Id*. ¶¶ 71, 82, 119.  According to Wilkerson and Hatch, Defendants failed to pay them for all compensatory time, vacation time, and holiday time they were owed at the time of their resignations.  *Id.* ¶¶ 117-122.  The other five Plaintiffs alleged Defendants adopted a new work week in January 2019, at which time Defendants began to miscalculate Plaintiffs' pay.  *Id.* ¶¶ 113-116.  Finally, Deputy Ethan Vasquez alleged that Defendants did not properly pay him for time he

---

[1] Defendants later sought judgment as a matter of law on the 43-hour work week adopted for Hardeman County employees classified as law enforcement. *See* Defs.' Mot. for Summ. J. July 21, 2023 (ECF No. 308).  Plaintiffs responded in opposition on that point, even though the Complaint contained the allegations about the department's 43-hours workweek.  Before the Court had issued a ruling, Defendants withdrew their motion for summary judgment.

spent traveling to perform duties in the National Guard in violation of Tenn. Code Ann.§ 8–33–101 *et seq. Id.* ¶¶ 123-28.

Plaintiffs sought relief for themselves and on behalf of all other similarly situated employees of the Hardeman County Sheriff's Office.  After the Court held a scheduling conference and approved the parties' plan for discovery, Plaintiffs filed an unopposed motion for leave to amend their pleadings (ECF No. 27), in which Plaintiffs requested leave of court to file an amended complaint naming 22 new Plaintiffs, all Hardeman County deputies and dispatchers.  The Court granted the request, and Plaintiffs filed an Amended Complaint (ECF No. 29) on October 11, 2019.  The Amended Complaint added 22 new Plaintiffs, not just deputies and dispatchers but also a jailer employed by the Hardeman County Sheriff's Office.  All told, the Amended Complaint named 21 deputies, seven dispatchers, and one jailer as Plaintiffs.

The Amended Complaint also expanded Plaintiffs' allegations about each of the "specific mechanisms" by which Defendants had violated the FLSA.  Am. Compl. ¶ 132 (ECF No. 29).  First, Plaintiffs alleged Defendants arbitrarily changed deputies, dispatchers, and jailers from hourly employees to salaried employees in March 2019, even though none of them are exempt from the FLSA's overtime requirements, and by doing so, failed to pay these employees for all hours worked.  *Id.* ¶¶ 133-153.  Plaintiffs next allege that prior to 2019 Defendants scheduled dispatchers and jailers to work 48 hours one week and 36 hours the following week, without paying overtime for hours worked during the 48-hour workweeks.  *Id.* ¶¶ 154-175 (dispatchers), ¶¶ 176-190 (jailers).  The Amended Complaint also restated Plaintiffs' allegations about Defendants' failure to pay all compensatory, vacation, and holiday pay due upon an employee's resignation.  *Id.* ¶¶ 191-217.  In one of its new theories of relief, the Amended Complaint went on to allege that Defendants had failed to pay deputies who worked the second or third shift for time spent attending

annual in-service training.  For those deputies, who were not identified in the Amended Complaint, Defendants required them to work their regular shift and then attend eight hours of in-service training, meaning those deputies worked a total of 80 hours for that week without any overtime pay.  *Id.* ¶¶ 218-230.  Finally, Plaintiffs expanded on their allegations of off-the-clock work and realleged their claim about Defendants' failure to pay Deputy Vasquez for his travel time to National Guard duty.

Against the backdrop of these pleadings, Plaintiffs filed a motion to conditionally certify the case as an FLSA collective action (ECF No. 66) on March 3, 2020.  Plaintiffs identified the following category of Hardeman County employees as persons similarly situated to Plaintiffs:

> All persons who have worked for Hardeman County Government as a sheriff deputy, jailer or dispatcher at any time in the three years prior to the filing of the complaint in this case and were required to work a 48-hour week without compensation at the rate of time and one half for all hours worked over 40 in a work week.  Those who have had their overtime incorrectly calculated, who have not been paid for overtime worked, who have worked off the clock without being paid, those who were required to attend pre-shift and post-shift briefings without being paid, and those who were not paid their accrued compensatory, holiday and vacation time that [sic] time of termination of employment.

Defendants filed a written response in opposition (ECF No. 101) to Plaintiffs' motion to certify. However, when the parties appeared before the United States Magistrate Judge for a hearing on the motion, Defendants withdrew their opposition.  Minute Entry, June 26, 2020 (ECF No. 104). The Magistrate Judge entered a written order granting the motion for conditional certification on June 30, 2020.  In her order, the Magistrate Judge stated that Plaintiffs should "provide a more definite statement of the classes and subclasses to be included" in the collective action and directed the parties to submit a proposal for "classes and subclasses."  Order Granting Pls.' Mot. to Certify 2, June 30, 2020 (ECF No. 106).

On August 14, 2020, the parties submitted a joint proposal (ECF No. 110), defining eight "sub-classes" of Hardeman County employees: (1) those who did not receive correct overtime pay (all Plaintiffs); (2) all deputies, dispatchers, and jailers who did not receive pay for pre-shift briefings starting May 29, 2016; (3) all employees who had not received proper accrued compensatory, vacation, and holiday time upon their termination after October 2018; (4) dispatchers and jailers who had worked 48-hour workweeks each pay period without overtime starting in March 2019; (5) all deputies who were changed from hourly to salaried employees and had not been paid for 3 hours during those weeks starting in March 2019; (6) deputies and jailers who had not been paid for off the clock work starting in May 29, 2016; (7) all employees who were not paid correctly between October 1, 2016, and July 31, 2017; and (8) all deputies who did not receive overtime pay for in-service training. Even though the parties submitted this proposal for classes and sub-classes, no further action was taken on their proposal.

One more procedural aspect of the case of significance bears emphasis here. Prior to conditional certification of the case as a collective action, Plaintiffs filed two motions to amend their pleadings and add more claims, essentially supplemental claims concerning conduct occurring since they had filed the original Complaint. The Court denied the requests, coming as they did after the deadline for amending the pleadings. Several months later some Plaintiffs and other Hardeman County employees who were not parties to this case filed two separate suits of their own.

In a Complaint dated June 9, 2021, and docketed as civil action no. 1:21-cv-01087, Brandon Allen, Cheri Baker, Justin Bryant, Jenny Duke, Crystal Ervin, Lauren Hampton, Jackie Kelley, Pearlie Long, Martha Lowrance, Cody Naylor, Patrick D. Perry, Toni Pierce, Cathie Sprayberry, Martha Jane Vickers, and Alisha Young alleged violations of the FLSA and claims

under state law against Hardeman County and Jimmy Sain in his individual capacity and in his official capacity as Mayor of Hardeman County. And in a separate Complaint dated June 28, 2021, and docketed as civil action no. 1:21-cv-01098, Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry alleged more FLSA violations and claims under state law against Hardeman County and Mayor Sain.

Before the Court could set scheduling conferences in either of the new cases, the parties in the case at bar and the parties in case no. 1:21-cv-01087 filed joint motions to consolidate the three actions. The Court granted the joint motions and consolidated cases 1:21-cv-01087 and 1:21-cv-01098 with the case at bar for all further proceedings. The Court also granted Plaintiffs in all three cases leave to file a single "Master Complaint" to set forth all of the allegations made in the three cases in a single pleading. Upon the filing of the Master Complaint (ECF No. 228) on December 1, 2021, the Court subsequently dismissed cases 1:21-cv-01087 and 1:21-cv-01098, finding that the claims in each of the companion cases were redundant to the claims asserted in the Master Complaint.

The Master Complaint named 67 current and former employees of Hardeman County as Plaintiffs and Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, Mayor Sain (in both an individual and official capacity), and Hardeman County Sheriff John Doolen as Defendants. Master Compl. ¶ 6. The Master Complaint alleged on behalf of all Plaintiffs (deputies, dispatchers, and jailers) FLSA claims for unpaid overtime based on Mayor Sain's decision to convert all Plaintiffs from hourly pay to salary in March 2019. *Id.* ¶¶ 91-114. With respect to deputies only, the Master Complaint alleged that the Hardeman County Sheriff's Office required deputies to work off the clock to complete paperwork before leaving for the day. *Id.* ¶¶ 115-122. With respect to investigators (four Plaintiffs), the Master

Complaint alleged that investigators routinely worked off the clock without proper overtime pay. *Id.* ¶¶ 123-136.  With respect to deputies who worked the second or third shifts, the deputies did not receive overtime pay for time spent on annual in-service training, one week during the year when the deputies attended mandatory training for eight hours and worked their regular 8-hour shifts. *Id.* ¶¶ 137-151.

The Master Complaint also included FLSA violations that denied overtime pay to dispatchers and jailers.  The Master Complaint alleged two types of violations affecting these groups of employees and in largely similar ways.  First, Plaintiffs restated certain allegations about dispatchers and jailers who were regularly scheduled to work 48 hours per week and did not receive overtime pay.  *Id.* ¶¶ 167-177 (dispatchers); *id.* ¶¶ 184-191 (jailers).  Defendants also required dispatchers to be at their posts 15 minutes before their shift began and jailers to be at their posts 15 to 30 minutes prior to a shift change but without paying these employees for their pre-shift time. *Id.* ¶¶ 178-183 (dispatchers); *id.* ¶¶ 192-197 (jailers).

Beyond the policies affecting whole categories of employees, the Master Complaint also restated allegations from the previous pleadings about other FLSA violations.  Defendants had miscalculated accrued compensatory, vacation, and holiday time for employees and thereby denied employees, 17 Plaintiffs in all, who had resigned their jobs the full amount of pay they were owed at the time their employment with Hardeman County ended.  *Id.* ¶¶ 198-221.[2]  The Master Complaint also made allegations specific to the Plaintiffs in case no. 1:21-cv-01087 and only for certain pay periods in 2021.  According to the Master Complaint, Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry, did not receive correct

---

[2] In their initial brief in response to Defendants' Motion for Decertification, Plaintiffs now indicate that all but 15 Plaintiffs have resigned their positions with Hardeman County.

pay for overtime they worked during the period between May 21, 2021, and June 18, 2021. *Id.* ¶¶ 152-166.  In its longest series of factual allegations, Master Complaint alleged that Mayor Sain had retaliated against several Plaintiffs over their participation in this litigation. *Id.* ¶¶ 222-296. The Master Complaint finally restated the allegations about Defendants improperly denying Deputy Ethan Vasquez pay for his time spent traveling for military duty with the National Guard in January 2019. *Id.* ¶¶ 297-303.

The discovery process in this case has been protracted, to say the least.  The Court need not review each of the depositions noticed by the parties, the modifications to the discovery deadlines granted by the Court, or the motion practice over discovery disputes.  Discovery now appears to be largely complete, though the parties conducted depositions as recently as March 29, 2024, and again on May 1, 2024.  *See* Pls.' Notice of Grantham Dep. Apr. 18, 2024 (ECF No. 369); Pls.' Notice of Hensley Dep. Apr. 24, 2024 (ECF No. 372); Pls.' Notice of Bell Dep. Apr. 24, 2024 (ECF No. 373).

In their Joint Motion to Decertify the Collective Action, Defendants argue that decertification of the collective action is warranted because the named Plaintiffs are not similarly situated to the opt-in Plaintiffs.  The named Plaintiffs and opt-in Plaintiffs work in different jobs with dissimilar responsibilities.  Rather than identifying some single payroll policy applicable to all Plaintiffs, Plaintiffs have alleged a number of FLSA violations.  Even for Plaintiffs who worked as deputies, the proof shows that these deputies had a variety of duties and reported to different supervisors.  Deputies' work schedules were different than dispatchers and jailers.  The only common policy identified by Plaintiffs, that Defendants did not pay all Plaintiffs overtime, is too vague to justify collective action.

Plaintiffs see matters differently.  In their view, Plaintiffs now consist of all 67 current and former Hardeman County employees named as Plaintiffs in the Master Complaint.  Each of these Plaintiffs signed a consent form to signify his or her agreement to act as a "party plaintiff."  After the Magistrate Judge granted the motion for conditional certification, 17 Hardeman County employees opted into the case as members of the collective action "pursuant to the motion for conditional certification."  Pls.' Resp. in Opp'n 4 (ECF No. 313).  Focusing on the actual duties of each type of job represented among the "party plaintiffs" (deputy, dispatcher, and jailer), Plaintiffs contend that the 17 opt-in parties are similarly situated.  The only meaningful distinction among all Plaintiffs is their various grades of pay.  Plaintiffs argue then that decertification is not warranted and that trial should proceed collectively on the claims of all Plaintiffs.

After the parties had briefed the Motion, the Court entered an order on September 20, 2023, directing them to file supplemental briefing.  Specifically, the Court found that Plaintiffs in opposing decertification had not submitted any evidence to show how they were similarly situated or how the Court might define subclasses of Plaintiffs whose claims could be tried together. Plaintiffs filed their supplemental brief (ECF No. 352) on February 23, 2024.  Plaintiffs state in their supplement that while they do not oppose decertification and the dismissal of each individual Plaintiff's claims without prejudice, such a process would not be the best use of judicial resources. Decertification would only result in Plaintiffs filing scores of new suits to press their claims. Instead, Plaintiffs propose six subclasses in which certain Plaintiffs with similar claims can proceed to trial collectively on their causes of action: dispatchers, patrol deputies who worked the first shift, patrol deputies who worked the second and third shifts, deputy investigators, correctional officers, and correctional officer sergeants.  Plaintiffs argue that each has alleged and can prove largely identical claims and are therefore appropriate for collective action.  Plaintiffs

add that one Plaintiff Tim Welch worked as the only maintenance worker at the jail. Plaintiffs also argue that Defendants illegally retaliated against some Plaintiffs after they filed suit for FLSA violations. Plaintiffs contend that the better course is the certification of subclasses of similarly situated Plaintiffs who can proceed collectively in one trial.

Defendants filed their supplemental brief (ECF No. 356) on March 8, 2024. Defendants continue to argue that decertification is required based on the factual distinctions among Plaintiffs and the nature of their claims. For example, rather than trying the claims of all deputies, Plaintiffs propose trying the claims of deputies who worked the first shift and then the claims of deputies who worked the second and third shifts. Plaintiffs' proposal underscores the disparate nature of the claims alleged by the deputies. The claims of maintenance worker Tim Welch are simply unique to him because he is the only Plaintiff who worked in maintenance. And the retaliation claims alleged by some Plaintiffs are individualized and not similar enough for collective treatment. Even if the Court accepted the subclasses proposed by Plaintiffs, the facts show that the claims of the members of the subclasses are distinct. For instance, Defendants assert that not all dispatchers allege that Defendants incorrectly calculated their comp time. Other Plaintiffs will have claims covered by different time periods, either because of the unique statute of limitations for the claims alleged by that Plaintiff or because different Plaintiffs had different tenures with Hardeman County. Many Plaintiffs had such widely differing duties and work schedules that they cannot prove a common violation of the FLSA. For these reasons Defendants argue that Plaintiffs have failed to carry their burden to prove similarity, requiring the decertification of the collective action.

## JURISDICTION

The Court has subject-matter jurisdiction in this case under 28 U.S.C. § 1331(a).  Plaintiffs allege that Defendants failed to pay them correct overtime and compensatory time in violation of 29 U.S.C. § 207.  29 U.S.C. § 207(k) (permitting a public agency like Hardeman County to pay employees "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by" § 207).  A subset of Plaintiffs allege that Defendants also withheld payment for their accrued comp time when they resigned or retired from their jobs with the County, a separate violation of the FLSA.  § 207(o)(4) ("An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time . . . .").  Plaintiffs also allege that Defendants withheld accrued comp time and vacation and holiday pay from a subset of former county employees in retaliation for their participation in this lawsuit and thereby violated the anti-retaliation provision of the FLSA. § 215(a)(3)).  Section 216(b) of the FLSA permits Plaintiffs to bring a collective action for these violations.  §216(b) (allowing FLSA collective actions "to recover the liability prescribed in the preceding sentences").  Plaintiffs' FLSA allegations make this a civil action arising under the laws of the United States. § 1331(a) ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The Court has supplemental jurisdiction over other claims alleged in the pleadings under Tennessee law pursuant to 28 U.S.C. § 1367.  A federal court may exercise supplemental jurisdiction over claims it does not otherwise have jurisdiction to hear independently.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 559, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).  Supplemental jurisdiction is available where there is at least one claim over which the court has

subject-matter jurisdiction and the supplemental claim constitutes part of the same "case or controversy." 28 U.S.C. § 1367(a). In this case, the Master Complaint alleges that Plaintiff Ethan Vasquez seeks pay for time he spent traveling to report for military duty in the Tennessee National Guard. Master Compl. ¶¶ 297-303 (ECF No. 228). According to Vasquez, Defendants' failure to pay violated Tenn. Code Ann. § 8–33–101 *et seq*., which protects public employees who take leaves of absence to perform their duties as reservists. The Master Complaint also includes a reference to the Tennessee Public Protection Act. Master Compl. ¶ 52 (see heading accompanying the section "Second Cause of Action"). "[T]he Tennessee Public Protection Act (TPPA) protects employees who refuse to participate in or refuse to remain silent about illegal activities at their workplace." *Gammons v. Adroit Med. Sys., Inc.*, 91 F.4th 820, 829 (6th Cir. 2024) (quoting Tenn. Code Ann. § 50–1–304(b) (cleaned up)).[3]

Finally, some Plaintiffs allege that Defendants withheld accrued holiday and vacation pay when those Plaintiffs left their jobs with Hardeman County, not in retaliation for activity protected by the FLSA but simply as a matter of policy. *See* Compl. ¶¶ 71, 82, 117-122 (alleging that Plaintiffs Chris Wilkerson and Michael Hatch resigned their positions with Hardeman County in 2018 and did not receive payment for all compensatory time, vacation time, and holiday time they were owed at the time of their resignations); Baker Dep. 76:8-18 (PageID 3672) ("In October/November 2018, Mayor Sain made the decision to no longer pay deputy, jail, and dispatch employees for their accrued compensatory, holiday, and vacation time at the time of termination

---

[3] The same heading cites Tenn. Code Ann. § 50–2–103(h), a code section addressed to meal breaks. § 50–2–103(h) ("[E]ach employee shall have a thirty-minute unpaid meal break if scheduled to work six (6) hours consecutively, except in workplace environments that by their nature of business provide ample opportunity to take an appropriate meal break."). None of the allegations in this portion of the Master Complaint address meal breaks or specifically allege a violation of the TPPA.

of employment.").  These claims sound in contract and state claims under Tennessee law, which the Court has supplemental jurisdiction to consider pursuant to § 1367(a).

The Court would add that its decertification analysis is confined to Plaintiffs' collective claims for violations of the FLSA: unpaid overtime in violation of § 207, including claims for incorrectly calculated comp time and unpaid comp time, and retaliation in violation of §215(a)(3). To the extent that Plaintiffs seek collective relief as to other causes of action alleged in the Master Complaint, Plaintiffs' Tennessee law claims do not fall within the scope of the FLSA.  Because Plaintiffs' claims for violations of Tennessee statutory law and breach of contract do not fall within the scope of the FLSA's private right of collective action, the Court will not certify a collective action to pursue these claims.

## STANDARD OF REVIEW

Section 207 of the FLSA prohibits employers from employing any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a).  Section 207(k) governs employees "in law enforcement activities (including security personnel in correctional institutions)" and alters the maximum number of hours permitted in a workweek, depending on the length of the "work period" adopted by the public agency.  § 207(k).  Law enforcement employees are entitled to overtime if (1) their agency adopts "a work period of at least 7 but less than 28 days"; and (2) the officer works more than 43 hours per week. 29 C.F.R. § 553.230; *Brock v. City of Cincinnati*, 236 F.3d 793, 811 (6th Cir. 2001) ("Under the regulations, the maximum number of hours an employer can compensate law enforcement employees for at straight time is 43 hours per week if the employer adopted a work period of either seven or fourteen days . . . .").  And the FLSA also

permits a public agency to pay its employees "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by" § 207.  29 U.S.C. § 207(k).

Section 216(b) of the FLSA creates a private right of action for violations of § 207 and permits "one or more employees" to recover unpaid overtime compensation by suing an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  The Supreme Court has described FLSA cases brought on behalf of similarly situated employees as "collective actions."  *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1711 (2022) (describing FLSA actions on behalf of similarly situated employees as a "collective action"); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (same); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013) (same); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482 (1989) (same).

FLSA "collective actions permit individualized claims and individualized defenses, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 403 (6th Cir. 2021) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)) (emphasis in original).  Unlike class members in actions under Federal Rule of Civil Procedure 23, similarly situated employees join an FLSA collective action by filing notice of their consent to join the action.  § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Traditionally, courts have followed a two-step "certification" process in FLSA cases of this sort, first to give notice to similarly situated employees of the action and later to make a final determination of whether the opt-in employees are in fact similarly situated.  *Monroe v. FTS USA,*

*LLC*, 860 F.3d 389, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."); *but see Clark v. A&L Homecare & Training Ctr.*, LLC, 68 F.4th 1003, 1009 (6th Cir. 2023) ("[T]he term 'certification' has no place in FLSA actions.") (citing *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022)).   At the first step, courts conditionally "certify" the collective action by deciding whether the FLSA plaintiffs and the other employees they seek to represent are similarly situated.   At the second stage—"after all of the opt-in forms have been received and discovery has concluded"—the court makes another "similarly situated" determination (typically on motion of the defendant for decertification), *Campbell*, 903 F.3d at 1109, but under a "stricter standard because it occurs near the end of discovery." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (citing *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019)).   In the Sixth Circuit, FLSA plaintiffs have the burden to prove similarity. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162, 136 S. Ct. 663, 193 L.Ed.2d 571 (2016) (citing *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996)).   The Sixth Circuit has described the burden at the decertification stage as a "stricter standard," which requires plaintiffs to come forward with "more than just allegations and affidavits demonstrating similarity in order to achieve final certification." *Frye*, 495 F. App'x at 671; *see also Monroe*, 860 F.3d at 397 ("Once discovery has concluded, the district court—with more information on which to base its decision and thus *under*

*a more exacting standard*—looks more closely at whether the members of the class are similarly situated."); *O'Brien*, 575 F.3d at 586 ("Plaintiffs *who do present evidence that they are similarly situated* to the lead plaintiffs should not be barred from the opportunity to be part of a FLSA collective action, because the collective action serves an important remedial purpose.") (emphasis added). The Ninth Circuit has likened decertification to the summary judgment standard under Rule 56. *Campbell*, 903 F.3d at 1117 ("Decertification, in the sense the term is typically used, comes after relevant discovery is complete, and in that respect resembles a motion for summary judgment.") (collecting cases). In order to survive a motion for decertification, plaintiffs bringing an FLSA collective action must introduce "substantial evidence" of similarity. *Id*. at 1117–18 ("[T]he district courts have gradually tended to coalesce around a standard they refer to as 'substantial evidence.'").

<u>**ANALYSIS**</u>

**I. Full Decertification of the Collective Action**

The primary issue presented is whether Plaintiffs have shown how they are similarly situated and may therefore proceed to trial collectively on their FLSA claims. The Sixth Circuit has "tacitly approved" consideration of the following factors to determine similarity: "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (citing 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 n.65) (internal alterations omitted). Proof to establish a common theory of an FLSA violation is also relevant. *Id.* at 585. "All these issues tend to be factbound, meaning they depend on the specific facts pertaining to those employees." *Clark*, 68 F.4th at 1010.

The Court holds that Plaintiffs have not shown how all 84 Plaintiffs are similarly situated as a whole, either to the original named Plaintiffs in the case or to each other. The initial pleading named three patrol deputies, three investigators, and one dispatcher as parties to the collective action. Since that time, the opt-in Plaintiffs included employees working in each of these roles but also a school resource officer (Tommie Woods), a maintenance worker (Tim Welch), four sergeants working as correctional officers, and 34 correctional officers employed as deputy jailers. Many Plaintiffs no longer work for Hardeman County. The work schedules, terms and conditions of employment, and actual duties performed by dispatchers, patrol deputies, investigators, and correctional officers (as well as a maintenance worker and a school resource officer) are simply too varied to allow Plaintiffs to proceed collectively as a monolithic whole.

It is true Plaintiffs allege how two different payroll policies adopted by Defendants resulted in common violations of the FLSA. First, the Master Complaint alleges that former Hardeman County Mayor Jimmy Sain announced in March 2019 that the County was converting sheriffs deputies, deputy jailers, and dispatchers from hourly employees to salaried employees, a pay practice which allegedly resulted in FLSA violations. Master Compl. ¶¶ 109, 111. Second, the Master Complaint alleges that Hardeman County regularly granted employees compensatory time in lieu of overtime pay but did not correctly track it and then refused to pay employees for accrued comp time if they left their jobs with the County. These allegations set out common theories of FLSA violations but theories common only to specific groups of employees. Plaintiffs have not alleged, much less shown, that the policies applied to all 84 Plaintiffs or why the application of common payroll policies somehow overcomes the many differences among the various types of Hardeman County Sheriff's Office employees. *Pierce*, 922 F.3d at 747 ("A common policy cannot overcome the factual differences between [different types of] employees . . . , which goes to

determining the heart of the claim (the total hours worked each week).").  Because all 84 Plaintiffs are not similarly situated, a trial of all claims in a single collective action without some differentiation among Plaintiffs and their claims would not be appropriate.

This conclusion does not end the Court's decertification analysis.  In recognition of the fact that the Master Complaint alleges claims on behalf of certain categories of Hardeman County employees, the Court will next consider whether partial certification and the creation of separate subclasses would allow the Court to certify collective treatment for smaller groupings of Plaintiffs who can satisfy the similarly situated test. *Pierce*, 922 F.3d at 747 ("At the least, the court should have created a separate subclass for the [dissimilar] employees."); *O'Brien*, 575 F.3d at 586 ("The option of partial certification is important to consider, because it counters the argument that a collective action must be totally decertified if some members are not similarly situated to the others.").  Plaintiffs have proposed as much as part of their briefing on the decertification question. The Court finds that the creation of well-defined subclasses of Plaintiffs pursuing similar theories of relief will "yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170) (internal quotation marks omitted).

Before reaching the merits of Plaintiffs' proposed subclasses, the Court pauses to set out what Plaintiffs must prove to make out their FLSA claims and address other issues that will have bearing on the merits of Plaintiffs' claims at trial.

A. Elements of Plaintiffs' Overtime FLSA Claims

"An employee who claims that he was not paid [the correct] overtime rate 'has the burden of proving that he performed work for which he was not properly compensated.'" *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687,

66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).  There is reason to doubt whether Hardeman County has complete time records on which Plaintiffs can rely to prove up their overtime claims, despite the County's duty to maintain them.  *See* 29 C.F.R. § 553.50 (requiring a public agency like a political subdivision of a state to "maintain and preserve records containing the basic information and data" regarding comp time).  Counsel for Defendants have acknowledged in hearings and status conferences with the Court that they cannot locate all of the relevant employment documents. Plaintiffs have recently filed a motion to compel (ECF No. 370) the production of personnel files for 18 different Plaintiffs.

Nevertheless, in order to prove a defendant liable for the violation of the FLSA, the Sixth Circuit has held that the employee's own testimony can suffice to create a genuine issue of fact for a jury to decide.  *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (citing the Supreme Court's remark that in light of the remedial nature of the FLSA, the employee's burden of proof should not be "an impossible hurdle") (quoting *Anderson,* 328 U.S. at 687, 66 S.Ct. 1187)). "Generally speaking, if an employee describes a specific work schedule exceeding [the statutory maximum for hours worked], courts have found the testimony sufficient. If, by contrast, the employee testifies generically that the employee worked overtime without providing details to support this claim, courts have found that the testimony falls short."  *Viet*, 951 F.3d at 823.

An employer who violates the overtime requirements of 29 U.S.C.§ 207 is liable for the amount of unpaid overtime compensation and an equal amount as liquidated damages, "what amounts to a possibility of double damages."  *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 366 (6th Cir. 2019) (citing 29 U.S.C. § 216(c)).  The plaintiff has the burden to prove "an overtime wage calculation to include (1) the regular rate, (2) a numerical multiplier of the regular rate, and (3) the number of overtime hours."  *Monroe*, 860 F.3d at 415 (citing 29 U.S.C. § 207; 29 C.F.R. §

778.107).  Liquidated damages for the violation of the FLSA's overtime provision "are compensation, not a penalty or punishment." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002).  The Sixth Circuit has described liquidated damages in FLSA cases as "the norm" and "mandatory." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004); *see also Solis v. Min Fang Yang*, 345 F. App'x 35, 38–39 (6th Cir. 2009).  A district court may nevertheless deny liquidated damages where an employer proves that the failure to pay proper overtime wages occurred in good faith and the employer "had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Min & Kim*, 919 F.3d at 366 (citing 29 U.S.C. § 260). "Since an award of liquidated damages is left to the 'sound discretion' of the court, it is to be granted, or denied, by the court, as opposed to the jury." *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (citing *Martin v. Detroit Marine Terminals, Inc.*, 189 F. Supp. 579 (E.D. Mich. 1960)).

## B. Use of Representative Proof

Plaintiffs have not made testimony or other admissible evidence about all 84 Plaintiffs part of the record.  Plaintiffs have instead filed excerpts from the transcripts of depositions taken from 14 different Plaintiffs and written interrogatory responses given by 13 other Plaintiffs.  In FLSA collective actions, representative testimony given by less than all plaintiffs can make out proof of FLSA violations. *Monroe*, 860 F.3d at 407 ("We have recognized that 'representative testimony from a subset of plaintiffs [can] be used to facilitate the presentation of proof of FLSA violations, when such proof would normally be individualized.'").  "For the testifying [employees] to be representative of the class as a whole, it is enough that [the employees] testified as to each means of enforcement of the common, FLSA-violating policy." *Id*.  Likewise, representative proof can make out an "estimate average of overtime worked" to arrive at damages. *Id*. at 411-412.  "The

heart of the matter is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence." *Pierce*, 922 F.3d at 745-46 (citing 7B Charles Alan Wright et al., *Federal Practice & Procedure* § 1807 (3d ed. 2005)).

C. Statute of Limitations

Defendants have filed a motion *in limine* (ECF No. 320) addressed to the statute of limitations issue.  The parties are still in the process of briefing the motion.  The correct limitations period for each Plaintiff's FLSA claims and damages will have material bearing on the issues remaining for trial.  The FLSA requires a plaintiff alleging a violation to "commence" suit "within two years after the cause of action accrued."  29 U.S.C. § 255; *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 414 (6th Cir. 2022) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)).  A plaintiff "commences" an FLSA suit by filing a complaint. 29 U.S.C. § 256.  But when one or more plaintiffs bring a collective action for violations of the FLSA, the suit "commences" for each "individual claimant" on the date when a complaint is filed if (1) the claimant is "specifically named as a party plaintiff in the complaint" and (2) the claimant's "written consent to become a party plaintiff" is also filed with the Court.  § 256(a).  If the claimant is not named in the complaint or he or she has not filed a written consent form, his or her action "commences" "on the subsequent date" when he or she files a written consent.  § 256(b); *see also Campbell*, 903 F.3d at 1100 ("In an FLSA collective action, however, an opt-in plaintiff's action is deemed 'commenced' from the date her opt-in form is filed with the district court.") (citing 29 U.S.C. § 256).

If an employee can show that the employer's violation of the statute was willful, the statute of limitations is three years. *Walsh*, 56 F.4th at 414.  To make such a showing, an FLSA plaintiff

"must prove that the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677). The question of whether an employer willfully violated the FLSA is a question of fact for the factfinder.  *Id.* at 416 (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991)).  And as in any case, a statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012).

With this framework in mind, the Court turns now to consider the subclasses proposed by Plaintiffs and whether Plaintiffs have carried their burden to show how the members of each subclass are similarly situated.

## II. Hardeman County Dispatchers

Plaintiffs argue that the first subclass to which the Court should grant partial certification is a subclass of dispatchers.  Plaintiffs have identified the following 13 dispatchers who are part of the collective action and would be grouped into a separate subclass for trial: (1) Cheri Baker, (2) Jenny Duke, (3) Lauren Hampton, (4) Cristen Hill, (5) Jackie Kelley, (6) Pearlie Long, (7) Toni Pierce, (8) Crystal Ervin, (9) Tina Howell,[4] (10) Martha Lowrance, (11) Cathie Sprayberry, (12) Jane Vickers, and (13) Alisha Young.  The dispatcher subclass alleges that Defendants failed to pay them overtime and violated the FLSA in the following ways: (a) they were required to work one 48-hour week during every two-week pay period and were not paid overtime for the hours worked over 40; (b) they were required by Captain Dana Knight to be at their posts at least 15 to 30 minutes prior to their scheduled shifts; (c) they were required to complete training videos off the clock for certification; (d) when they received comp time, it was incorrectly calculated at one

---

[4] Tina Howell filed her consent form on September 1, 2020, prior to the filing of the Master Complaint.  However, Howell was not named as a Plaintiff in the Master Complaint.

hour of comp time for every hour of overtime worked; (e) they were not paid their accrued comp time when they left their County employment;[5] and (f) their overtime was not calculated correctly throughout their employment.  In support of the claims alleged by the members of this subclass, Plaintiffs have filed excerpts from the depositions of Cheri Baker and Jenny Duke.  Baker Dep. May 17, 2021 (ECF No. 352-3); Duke Dep. May 17, 2021 (ECF No. 352-4).  Plaintiffs have also produced Baker's responses to written interrogatories (ECF No. 352-17) as well as interrogatory responses from Toni Pierce (ECF No. 352-18) and Cathie Sprayberry (ECF No. 352-19).  Defendants have filed responses to written interrogatories from Tina Howell (ECF No. 356-1).

Based on the representative proof introduced by Plaintiffs, the Court holds that Plaintiffs have satisfied the "stricter standard" and shown that the members of the dispatcher subclass are similarly situated.  *Frye*, 495 F. App'x at 671; *Monroe*, 860 F.3d at 397.  First, the factual and employment setting of each dispatcher, "considering issues such as location, job duties, supervision, and salary," shows the dispatchers are similarly situated.  *Frye v. Baptist Mem'l Hosp.*, No. 07-2708-SHM, 2010 WL 3862591, at *3 (W.D. Tenn. Sept. 27, 2010) (citing *Wilks v. Pep Boys,* No. 3:02–0837, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006).  Hardeman County dispatchers worked 12-hour shifts, either 6:00 a.m. to 6:00 p.m. or 6:00 p.m. to 6:00 a.m.

---

[5] Those dispatchers who are no longer employed with the County allege the County failed to pay them for all accrued comp time and holiday and vacation pay at the conclusion of their employment in retaliation for their participation in this lawsuit.  Pierce Interrog. Resp. 12-13 (PageID 3807-3808); Sprayberry Interrog. Resp. 8 (PageID 3820).  Plaintiffs have also alleged that Mayor Sain eliminated the dispatchers' jobs as part of a reorganization of the County's dispatch and 911 system.  Both the County's refusal to pay accrued comp time and alleged retaliation against the dispatchers implicate the dispatchers' rights under the FLSA. 29 U.S.C. § 207(o)(4) ("An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time . . . ."); § 215(a)(3) (prohibiting an employer from "discriminat[ing] in any other manner" against an employee who complains of violations of the FLSA).  The Court discusses Plaintiffs' retaliation claims in more detail below.

During a two-week pay period, dispatchers worked four 12-hour shifts during one week and three 12-hour shifts during the other. All dispatchers reported to the same supervisor Captain Dana Knight during the relevant timeframe. The dispatchers "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation." *Clark*, 68 F.4th at 1010.

The dispatchers have also introduced evidence of common theories about how Defendants violated the FLSA. *O'Brien*, 575 F.3d at 585. For example, Cheri Baker testified in her deposition that she was not paid for overtime worked during the weeks in which she like all the other dispatchers was scheduled to work four 12-hour shifts, that is, 48 hours. Baker Dep. 44:2-20 (PageID 3663); *id.* at 61:18-21 (PageID 3665); Duke Dep. 42:13-22 (PageID 3675). Under Department of Labor regulations interpreting the FLSA, "a single workweek" is the "standard and [does] not permit averaging of hours over 2 or more weeks." 29 C.F.R. § 778.104. Paying dispatchers a flat rate of pay for both workweeks, regardless of the number of hours worked, would constitute an FLSA violation.

The dispatchers have further shown Captain Knight required them to report 15 to 30 minutes early for their scheduled shifts for a pre-shift briefing. Baker Dep. 66:15-22 (PageID 3668); *id.* at 67:7-21 (PageID 3669); 68:8-22 (PageID 3670); Duke Dep. 63:2-23 (PageID 3678). The regulations define "compensable hours or work" to include "all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer," including "all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call . . . ." 29 C.F.R. § 553.221(b). This practice too could show that Defendants violated the Act.

And there is proof that Defendants not only failed to pay dispatchers for all hours worked but also incorrectly calculated their overtime hours, granting them one hour of comp time in lieu of overtime pay but not the time-and-a-half required by the FLSA. Baker Dep. 71:7-18 (PageID 3671); Duke Dep. 65:15-19 (PageID 3679). The FLSA allowed Hardeman County to use comp time as a substitute for overtime pay under certain conditions but always "at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by" § 207. 29 U.S.C. § 207(o)(1).

The 13 Plaintiffs who fit within the proposed subclass of dispatchers are substantially similar as to each of these common theories of relief, with one exception. Defendants have argued that not all dispatchers have alleged precisely the same FLSA claims. For example, two Plaintiffs Cheri Baker and Toni Pierce allege they were not paid for all hours worked during spans of time when the County used a semi-monthly accounting method for payroll and that the County continued to miscalculate overtime when it transitioned from semi-monthly pay periods to bi-weekly pay periods in 2016 and 2017. Tina Howell does not allege a similar claim, presumably because she did not begin with Hardeman County until 2018. Plaintiffs who fit within other subclasses of Hardeman County employees allege similar claims about pay practices dating to 2016 and 2017.

The Court finds that the dispatchers are not similarly situated as to this claim. The alleged violation concerning Hardeman County's semi-monthly accounting method impacted only those deputies who were employed with the department in 2016. And the allegation about the County's move from semi-monthly accounting to bi-weekly pay periods would have applied only to deputies employed from later 2016 to 2017. In order to have a timely claim based on conduct occurring more than two years before the original Plaintiffs filed suit, the dispatchers must show how the

25

payroll practices affected them as a group. Only Plaintiffs (1) who worked for the department in 2016, (2) who opted into the collective action no later than 2019, and (3) who can avail themselves of the FLSA's three-year statute of limitations for willful violations of the law can bring this specific claim. The Court concludes then that Plaintiffs have not shown why the dispatchers as a group are similar with regard to payroll policies dating back to 2016.

The Court would also highlight an evidentiary issue related to the dispatchers' claims for watching training videos without receiving overtime. According to the proof, Captain Knight required dispatchers to complete annual certification videos at home and off the clock. For example, Toni Pierce spent five hours per year during each year she was employed as a Hardeman County dispatcher watching videos off the clock. Pierce Interrog. Resp. 12-13 (PageID 3807-3808). But Pierce also gave evidence that for 26 weeks out of the year she worked less than 40 hours per week. *Id.* at 7-8 (PageID 3802-3803). The problem is Pierce has not shown she worked in excess of 40 hours and was therefore entitled to overtime during the specific work periods in which she was required to watch the videos. *See also* Sprayberry Interrog. Resp. 12 (PageID 3824). There is a question then over whether the practice related to take-home training videos resulted in a violation of the FLSA. But that will be a fact question for a jury to decide at trial. Defendants have not sought judgment as a matter of law on the issue and will have the opportunity to cross-examine any witness who testifies on this subject as well as the chance to present their own evidence on the point. For purposes of the decertification analysis, Plaintiffs have shown that Captain Knight required the dispatchers to complete the annual training without pay and that the dispatchers were similarly situated in this regard.

A second factor relevant to the decertification issue is whether Defendants have individualized defenses to the dispatchers' claims. *O'Brien*, 575 F.3d at 585. Defendants have not

actually addressed this factor.  Defendants have highlighted the fact that not all dispatchers had the same tenure with the department.  Defendants' point, perhaps, shows that each dispatcher may have a different measure of damages based on the different statute of limitations applicable to each Plaintiff's FLSA claim.  In other words, Defendants may have affirmative defenses to the individual claims of the dispatchers.  However, Defendants have not shown that any specific defense would make collective treatment of the dispatchers' claims unmanageable.  This factor does not weigh against certification of the dispatchers' claims (or the claims of any of the other subclasses defined here).

The third factor requires the Court to determine whether collective treatment serves the purposes of the FLSA, an enactment which Congress intended to be "broadly remedial and humanitarian." *Donovan v. Brandel,* 736 F.2d 1114, 1116 (6th Cir. 1984)).  That includes a balancing of the lower cost of litigation for individual plaintiffs, the judicial economy achieved through the use of collective action, and any prejudice or procedural unfairness to the defendant. *Id.* (citing *Hoffman–La Rouche*, 493 U.S. at 170).  "The very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170) (internal quotation marks omitted).

The Court finds that collective treatment of the dispatchers' FLSA claims is consistent with the purposes of the FLSA and will achieve the best use of judicial resources.  Decertification would result in the Court empaneling more than one jury and the parties incurring additional litigation costs, all to try what appear to be factually and legally similar issues to decide the dispatchers'

claims for relief.  A single trial of the dispatchers' claims as a collective will be the best use of resources for the Court and the parties.  For each of these reasons, the Motion for Decertification is **GRANTED in part, DENIED in part** as to the subclass of dispatchers.

The Court finds that the dispatchers are similarly situated as to the following FLSA claims: (a) they were required to work one 48-hour week during every two-week pay period and were not paid overtime for the hours worked over 40; (b) they were required by Captain Dana Knight to be at their posts at least 15 to 30 minutes prior to their scheduled shifts; (c) they were required to complete training videos off the clock for certification; (d) when they received comp time, it was incorrectly calculated at one hour of comp time for every hour of overtime worked; and (e) their overtime was not calculated correctly throughout their employment.  Therefore, the Court grants partial certification to the subclass of dispatchers to proceed collectively on these claims at trial.

### III. Hardeman County Sheriff's Deputies – Patrol

The second subclass proposed by Plaintiffs is a subclass of Hardeman County Sheriff's Deputies.  Plaintiffs have identified the following 12 deputies who worked the first shift, typically 8:00 a.m. to 4:00 p.m., as patrol deputies and who would be grouped into a separate subclass for trial: (1) Brandon Allen, (2) James Frazier, (3) Randle Grantham, (4) Michael Hatch, (5) Jeffrey Hill, (6) Keith Hogwood, (7) Logan Howell, (8) Vincent Hunt, (9) Mike Kennamore, (10) Jaime Medina, (11) Brian Vandiver, and (12) Tommie Woods.  Plaintiffs have also proposed a separate subclass for patrol deputies who worked the second and third shifts.  Plaintiffs explain that the claims of all patrol deputies are identical, except second and third shift deputies were not compensated for additional off-the-clock work specific to their shift including in-service training, obtaining warrants, and making court appearances.  The following 16 deputies worked second and third shift: (1) Josh Allen, (2) Ed Avery, (3) Greg Brown, (4) Scott Brown, (5) Chris Deming, (6)

Nicholas Ellison, (7) Wesley Estes, (8) James Graham, (9) Ryan Herndon, (10) Chris Hopkins, (11) Courtney Howell, (12) Ethan Howell, (13) Jonathan Luttrell, (14) David Nabors, (15) Ethan Vasquez, and (16) Chris Wilkerson.

Plaintiffs argue that Defendants failed to pay all patrol deputies overtime and violated the FLSA in the following ways: (a) they were required by Chief Billy Davis to attend pre-shift and post-shift briefings before and after their shifts; (b) when the deputies did receive comp time, it was incorrectly calculated at one hour of comp time for every hour of overtime worked; (c) they were not paid their accrued comp time, holiday, and vacation pay when they left the County's employment;[6] (d) they were not paid for all overtime worked; (e) their overtime was not correctly calculated throughout their employment; (f) they were required to stay and complete all reports/paperwork off the clock before leaving; (g) they responded to calls while off duty because of understaffing of deputies; and (h) beginning in March 2019, Hardeman County Mayor Sain refused to pay deputies for all hours worked between 40 and 43. As evidentiary support for these claims, Plaintiffs have furnished excerpts from the depositions of Michael Hatch (ECF No. 352-8) and David Nabors (ECF No. 352-12). Plaintiffs have also filed responses to written

---

[6] For deputies who are no longer with Hardeman County, the proof shows that Hardeman County refused to pay all accrued time owed when a deputy separated from county employment. Herndon Interrog. Resp. 9 (PageID 3857); *see also id*. at 15 (PageID 3863) (stating that he is owed 272.5 hours of comp time). The original Complaint alleges that Michael Hatch and Chris Wilkerson left the department in 2018. The Amended Complaint also alleges the same claim on behalf of Greg Brown, Scott Brown, Chris Deming, Ryan Herndon, Chris Hopkins, Courtney Howell, David Nabors, and Ethan Vasquez.

Other than these deputies, Plaintiffs have not shown which members of the patrol deputies subclass are no longer with Hardeman County and which deputies allege that Defendants have refused to make payment for accrued comp time in retaliation for Plaintiffs' filing this lawsuit. The Court will address the issue of accrued comp time as well as Plaintiffs' claims of retaliation below.

interrogatories completed by Ed Avery (ECF No. 352-22), Randle Grantham (ECF No. 352-20), and Ryan Herndon (ECF No. 352-21). For their part, Defendants have filed responses to written interrogatories from Ethan Howell (ECF No. 356-2), Courtney Howell (ECF No. 356-3), Tommie Woods (ECF No. 356-4), Craig Collins (ECF No. 356-5), Logan Howell (ECF No. 356-6), and Ethan Vasquez (ECF No. 356-7).

Based on the representative proof introduced by Plaintiffs, the Court holds that Plaintiffs have shown that the subclass of patrol deputies is similarly situated under the "stricter standard" at the decertification stage, though only in part. *Frye*, 495 F. App'x at 671. First, the factual and employment setting of each patrol deputy, "considering issues such as location, job duties, supervision, and salary," shows the deputies are similarly situated, regardless of their shift. *Frye*, 2010 WL 3862591, at *3. The patrol deputies shared a largely common factual and employment setting. The deputies had similar duties (patrol), worked similar schedules, reported to the same command structure, and were paid as hourly employees. Nabors Dep. 18:7-9 (PageID 3747); Hatch Dep. 18:7-19 (PageID 3702); Herndon Interrog. Resp. 4 (PageID 3852).

Additionally, the patrol deputies largely allege common theories of how Defendants violated the FLSA. For example, Plaintiffs have submitted proof that sheriff's department leadership required deputies to report 15 to 30 minutes before their shifts for a pre-shift briefing and then to stay late for the briefing for the shift that followed theirs. Hatch Dep. 28:7-19 (PageID 3704); *id*. at 34:14-35:2 (PageID 3707-3708); Nabors Dep. 15:3-10, 23-25 (PageID 3745); Avery Interrog. Resp. 4 (PageID 3872). The FLSA defines "compensable hours of work" to include "pre-shift and post-shift activities" like "roll-call" under certain circumstances. 29 C.F.R. § 553.221(b). The patrol deputies have also shown that they were scheduled to work 43-hour workweeks and were not paid for hours 41 through 43, either overtime or straight time, after March 2019. Avery

Interrog. Resp. 4 (PageID 3872); Herndon Interrog. Resp. 7 (PageID 3855).[7]  This proof would make out a violation of the FLSA.  29 C.F.R. § 553.221(b) ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer.").  And there is evidence Hardeman County incorrectly calculated patrol deputies' comp time at one hour of comp time for every hour of overtime worked, not time and a half.  Hatch Dep. 33:14-34:9 (PageID 3706-3707); Herndon Interrog. Resp. 8 (PageID 3856).  As the Court has already noted, the FLSA allowed Hardeman County to use comp time instead of overtime but at a rate of time and a half for each hour of overtime worked.  29 U.S.C. § 207(o)(1); 29 C.F.R. §§ 553.20(a), 553.231(a).

Defendants question whether each deputy in the proposed subclass shares all of the same theories of Defendants' FLSA liability.  Defendants cite discovery materials in which some deputies do not address all of the common theories on which Plaintiffs seek certification of the patrol deputy subclass.  For instance, Defendants challenge Plaintiffs' allegations about the department requiring deputies to answer calls off duty due to staffing issues.  The Court tends to agree that Plaintiffs have not actually met the stricter standard to demonstrate how the patrol deputies are similar in this particular aspect of their employment.  Plaintiffs have not shown through their representative proof that all deputies were required to work this kind of overtime.

---

[7] Plaintiffs allege that Michael Hatch and Chris Wilkerson left their employment with Hardeman County in 2018.  Clearly, a payroll practice adopted by the County in 2019 had no impact on deputies who were no longer employed by the County.  The Court finds that Hatch and Wilkerson are not similarly situated to the other patrol deputies in this regard.  As a result, the Court is not certifying the subclass of deputies to include Hatch and Wilkerson.  Because Hatch and Wilkerson were original Plaintiffs in the case, they will have the opportunity to try their claims individually.

*See* E. Howell Interrog. Resp. (ECF No. 356-2).  And the deputies who did give evidence on this point did not actually provide any estimates for the amount of unpaid overtime they worked by responding to calls when they were off duty.  *See* Vasquez Interrog. Resp. (ECF No. 356-7); Herndon Interrog. Resp. (ECF No. 352-21); *but see* C. Howell Interrog. Resp. (ECF No. 356-3) (stating that she responded to calls once or twice a month).  There is also evidence to suggest that not all patrol deputies were required to be on call to respond but only deputies who were issued take-home vehicles by the department.  None of the evidence proves that all deputies worked overtime due to understaffing.   In light of the somewhat vague and imprecise nature of the proof, the Court declines to certify this issue for collective treatment at trial.

Defendants next argue that not all deputies in the proposed subclass shared the same type of patrol duties.  Defendants have shown that Plaintiff Tommie Woods worked as a school resource officer and claims unpaid overtime for working at school events after hours, though the discovery materials filed by Defendants do not indicate during what time period Deputy Woods performed those duties.  Woods Interrog. Resp. 7 (ECF No. 356-4, PageID 4125).   Plaintiffs have included Woods in their proposed subclass of patrol deputies but without submitting any evidence about Woods' actual duties.  The fact that Woods worked a completely different detail (school safety) suggests that his employment with Hardeman County and his FLSA claims are factually distinct from the other deputies in this subclass.[8]  The Court concludes that Plaintiffs have not carried their burden to show why Tommie Woods is similar to other patrol deputies.

---

[8] The same discovery materials cited by Defendants show that Deputy Woods asserts claims for some of the same FLSA violations as other patrol deputies, like not being paid for pre-shift briefings and being paid for 40 hours of work when the deputy actually worked 43 hours.

Defendants argue that Plaintiffs have not shown that all patrol deputies in the proposed subclass were affected by the same payroll policies, a restatement of Defendants' argument in opposition to the certification of the dispatcher subclass. Just like the dispatchers, some deputies allege that Hardeman County miscalculated overtime in 2016 when the County used a semi-monthly accounting method for payroll and that the County continued to miscalculate overtime when it transitioned from semi-monthly pay periods to bi-weekly pay periods in 2016 and 2017. *E.g.* C. Howell Interrog. Resp. 8 (PageID 4106); Herndon Interrog. Resp. 7 (PageID 3855). But other deputies like Ethan Howell who was not hired until 2018 would obviously have no claim based on a county payroll policy predating their tenure. For reasons the Court has already addressed in its discussion of the subclass of dispatchers, the Court finds that the deputies are not similarly situated as to this claim.

Finally, Defendants argue that not all members of the proposed subclass of patrol deputies allege similar FLSA violations. Some seek unpaid overtime for the calculation of their comp time at an incorrect rate while others do not assert this specific theory of relief. Some allege that they were required to stay and complete end-of-shift reports off the clock. The written discovery responses submitted by Ethan Vasquez (ECF No. 356-7), for example, do not address this kind of overtime claim at all.[9] The Court finds that Defendants' argument here is less persuasive. There is no dispute the FLSA applies to both claims. 29 C.F.R. § 553.221(b) (including time spent "writing up and completing tickets or reports" in the definition of "compensable hours of work"). Plaintiffs have shown that Hardeman County did not consistently calculate comp time at the

---

[9] Defendants also argue that Logan Howell did not make such a claim in his written discovery responses. Defendants' statement is factually inaccurate. *See* L. Howell Interrog. Resp. 14 (PageID 4160).

correct rate and that department leadership expected deputies to complete their paperwork at the end of the shift, off the clock.  Accepting the proof as representative of all patrol deputies, Plaintiffs have shown deputies worked overtime on paperwork, though deputies provided somewhat different estimates of just how much time they spent on this task.  *See* Hatch Dep. 39:13-25 (PageID 3710) ("a minimum of three hours"); Avery Interrog. Resp. 4 (PageID 3872) (two hours per week on paperwork); *see also id.* at 7-8 (PageID 3875-76); Herndon Interrog. Resp. 15 (PageID 3863) (1.5 hours per week); *but see id*. at 13 (PageID 3861) (four hours per week).  But these distinctions are differences in degree, not differences in kind.

The Sixth Circuit has held that FLSA plaintiffs can be similarly situated even if "proof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA" and where the proof is "inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585.  Each deputy's time estimate is just that; an estimated average of time spent working without pay.  The representative proof discharges Plaintiffs' burden to show they worked overtime without proper pay.  Plaintiffs will still have the ultimate burden to prove how much time deputies typically worked completing paperwork.  For their part, Defendants will have the chance to cross-examine any witness about estimates of this sort and call witnesses of their own to rebut the representative proof by showing that a member of the subclass did not experience the same practice.  None of this shows the patrol deputies were not similarly situated in this aspect of their employment.

Having determined that Plaintiffs have met the first factor and shown that the patrol deputies are similarly situated, the Court also finds that Plaintiffs have met the second and third factors for partial certification of the patrol deputy subclass.  The "different defenses to which the plaintiffs may be subject on an individual basis" do not counsel against certification of the patrol

deputy subclass. *O'Brien*, 575 F.3d at 584.  Defendants have essentially pointed out that not all county policies affected all patrol deputies to the same degree because each deputy started his employment with the County (and others ended their county employment) at different times.  Just as in most FLSA collective actions, a different limitations period will apply to each deputy's FLSA claims, depending on when the deputy opted into the collective action.  29 U.S.C. § 256(a) & (b).  Just like the subclass of dispatchers, the subclass of patrol deputies will be susceptible to individualized statute of limitations defenses.  Defendants' point does not show, however, that the deputies were not similarly situated in their employment or subject to the same policies which allegedly resulted in violations of the FLSA.  And just as with the dispatcher subclass, Defendants have not shown that the availability of individualized defenses to each deputy's claims requires decertification.

At trial Plaintiffs will need to show and the jury will need to make an individual assessment of each patrol deputy's damages, focusing on the statute of limitations for the deputy's FLSA claim to determine when an alleged violation occurred, the number of overtime hours worked during the limitations period, and the deputy's applicable rate of pay.   29 C.F.R. § 778.107 (requiring an FLSA plaintiff to prove "an overtime wage calculation to include (1) the regular rate, (2) a numerical multiplier of the regular rate, and (3) the number of overtime hours").  The different statutes of limitations applicable to the patrol deputies' claims do not preclude certification of the subclass.

The Court finally finds that collective action on the patrol deputies' FLSA claims "would yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *Clark*, 68 F.4th at 1012.  Therefore, the Court will grant certification to a subclass of the following patrol deputies: (1) Brandon Allen, (2) James Frazier,

(3) Randle Graham, (4) Jeffrey Hill, (5) Keith Hogwood, (6) Logan Howell, (7) Vincent Hunt, (8) Mike Kennamore, (9) Jaime Medina, (10) Brian Vandiver, (11) Josh Allen, (12) Ed Avery, (13) Greg Brown, (14) Scott Brown, (15) Chris Deming, (16) Nicholas Ellison, (17) Wesley Estes, (18) James Graham, (19) Ryan Herndon, (20) Chris Hopkins, (21) Courtney Howell, (22) Ethan Howell, (23) Jonathan Luttrell, (24) David Nabors, and (25) Ethan Vasquez.

The Court finds that these patrol deputies are similarly situated and should proceed to trial collectively as to the following FLSA claims: (a) they were required by Chief Billy Davis to attend pre-shift and post-shift briefings; (b) when the deputies did receive comp time, it was incorrectly calculated at one hour of comp time for every hour of overtime worked; (c) they were not paid for all overtime worked; (e) their overtime was not correctly calculated throughout their employment; (f) they were required to stay and complete all reports/paperwork off the clock before leaving; and (g) beginning in March 2019, Hardeman County Mayor Sain refused to pay deputies for all hours worked between 40 and 43.   Therefore, the Motion for Decertification is **GRANTED in part**, **DENIED in part** as to the subclass of patrol deputies.

### IV. Hardeman County Sheriff's Deputies – Patrol Second and Third Shifts

The third subclass proposed by Plaintiffs consists of Hardeman County Sheriff's Deputies who worked the second shift (4:00 p.m. to midnight) or third shift (midnight to 8:00 a.m.), as patrol deputies.  Plaintiffs have identified the following 16 deputies who are part of the collective action and would be grouped into this separate subclass for trial: (1) Josh Allen, (2) Ed Avery, (3) Greg Brown, (4) Scott Brown, (5) Chris Deming, (6) Nicholas Ellison, (7) Wesley Estes, (8) James Graham, (9) Ryan Herndon, (10) Chris Hopkins, (11) Courtney Howell, (12) Ethan Howell, (13) Jonathan Luttrell, (14) David Nabors, (15) Ethan Vasquez, and (16) Chris Wilkerson.  Plaintiffs argue that the second and third shift patrol deputies' claims are identical to the claims of the first

shift deputies with the addition of one claim: they were not compensated for off-the-clock work specific to their shift such as in-service training, warrants, and court appearances.  In support of these claims, Plaintiffs have filed responses to written interrogatories completed by Ed Avery (ECF No. 352-22) and Ryan Herndon (ECF No. 352-21) as well as excerpts from the deposition of David Nabors (ECF No. 352-12).

Based on Plaintiffs' representative proof concerning this proposed subclass, the Court finds Plaintiffs have not met the "stricter standard" to show the second and third shift patrol deputies were similarly situated.  First, Plaintiffs have not shown how this subclass of patrol deputies was substantially similar as far as their claims for in-service training in 2017 and 2018.  According to discovery responses submitted by two of the deputies in the proposed subclass, deputies working these shifts were not paid for 40 hours of in-service training in 2017 and 2018.  *See* Herndon Interrog. Resp. 7 (PageID 3855), 13 (PageID 3861); *see also* Avery Interrog. Resp. 7 (PageID 3875).  But the third representative, David Nabors, testified that he started his employment with the County in 2019.  Nabors Dep. 18:3-6 (PageID 3747).  It may be the case that Nabors is the only member of the proposed subclass who was not employed with the department in 2017 and 2018. But Plaintiffs have not shown whether Nabors is just an outlier or whether evidence offered by Herndon and Avery on in-service training is actually representative of the other deputies grouped into this subclass.  Without more, Plaintiffs have not shown how these deputies were similarly situated as to in-service training.

Likewise, Plaintiffs have not shown that the deputies were similarly situated as to performing off-the-clock work to obtain warrants.  The time required for this off-the-clock work seems to have varied from pay period to pay period and among the different deputies.  Avery estimated that he spent a total of 15 hours over the course of his entire tenure waiting to get

warrants issued at the clerk of court's office.  Avery Interrog. Resp. 8 (PageID 3877).  Herndon provided no specific estimate.  Herndon Interrog. Resp. 8 (PageID 3856).  Nabors just stated that if he needed a warrant issued, he might work an additional 45 minutes at the end of third shift. Nabors Dep. 60:16-24 (PageID 3749).  The Court would add that the deputies who worked second and third shift also claim they were required to stay after their shifts to complete regular end-of-shift paperwork, and the Court has already certified a subclass of deputies, which includes the second and third shift deputies, pursuing that claim collectively.  Plaintiffs have not shown through their representative proof just how much additional time the second and third shift deputies had to work to obtain warrants beyond completing their other paperwork.  Therefore, Plaintiffs have not submitted enough evidence to show why the second and third shift deputies should be allowed to proceed collectively on this specific claim.

This just leaves the second and third shift deputies' claims for attending court.  Herndon estimated he had to attend court one or two times per month, or a total of 48 hours during his tenure with Hardeman County.  Herndon Interrog. Resp. 13 (PageID 3861); *see also id.* at 15 (PageID 3863) (stating 48 hours total over course of tenure).  Avery stated that he also attended court twice a month but did not estimate a total number of hours he spent in court without being paid properly. Avery Interrog. Resp. 8 (PageID 3876).  Nabors did not mention time attending court at all.  By its very nature, court time could vary greatly, depending on the nature of the proceeding and the officer's role in the case.  Taken as a whole, the proof about deputies attending court off the clock is not as detailed or thorough as the proof presented to support some of Plaintiffs' other common theories of relief.  At most, Plaintiffs have shown deputies worked intermittently or sporadically attending court outside of their normally scheduled shifts.  Therefore, the Court finds that Plaintiffs have not offered "substantial evidence" to show the proposed subclass is similar and have not met

the higher standard for certification as a collective action.  *Campbell*, 903 F.3d at 1117–18.
Therefore, Defendants' Motion for Decertification is **GRANTED** as to these claims.

## V. Hardeman County Deputy Investigators

The next subclass proposed by Plaintiffs is made up of Hardeman County Sheriff's
Deputies who worked as investigators.  Plaintiffs have identified the following five deputies who
are part of the collective action and would be grouped into this separate subclass for trial: (1) Justin
Bryant, (2) Craig Collins, (3) Greg Moore, (4) Cody Naylor, and (5) Patrick Perry.   The
investigator subclass alleges that Defendants failed to pay them overtime and violated the FLSA
in the following ways: (a) their compensatory time was incorrectly calculated at one hour of comp
time for every hour of overtime worked; (b) they were not paid their accrued time when they left
Defendant's employment;[10] (c) Their overtime was not calculated correctly throughout their
employment; and (4) beginning in March 2019 County Mayor Sain refused to pay deputies for all
hours worked between hours 40 and 43.  In support of these claims, Plaintiffs have submitted
excerpts of deposition testimony given by Greg Moore (ECF No. 352-11) and Patrick Perry (ECF
No. 352-13).  Plaintiffs have also filed responses to written interrogatories completed by Justin
Bryant (ECF No. 352-23) and Cody Naylor (ECF No. 352-24).

The Court finds that Plaintiffs have not shown why the five Plaintiffs who worked as
investigators should proceed to trial collectively on their FLSA claims.  First, the factual and
employment settings of each investigator are not entirely similar.  Patrick Perry testified he was

---

[10] Only Cody Naylor has shown that he has left his job with Hardeman County and was
denied his accrued comp, vacation, and holiday pay, though without stating that the County acted
in retaliation for his filing this lawsuit.  The Court addresses this claim as part of its discussion of
Plaintiffs' allegations that Defendants retaliated against some of them by denying them their
accrued comp time and holiday and vacation pay at the end of their employment with the
department.

promoted to investigator in September 2016. Perry Dep. 24:1-5 (PageID 3756). But nothing in Perry's testimony specifies the nature of his duties, the types of cases he worked, or exactly how much overtime he put in as an investigator. Perry described the number of hours as "countless." Greg Moore testified that he was promoted to investigator sometime in 2012 or 2013 and then became Chief Deputy in 2018. Moore Dep. 18:20-19:7 (PageID 3731-32). Moore's FLSA claims are confined to the period between 2016 and 2018, prior to his promotion to Chief Deputy. *Id.* at 70:5-11 (PageID 3737). Moore testified that from September 2016 to April 2017, he and Justin Bryant worked double shifts of eight hours each, three to four times per week as part of their work on narcotics investigations. Moore Dep. 71:12-24 (Page 3738); *id.* at 75:8-20 (PageID 3739); *see also* Bryant Interrog. Resp. 8 (PageID 3887). Moore continued to work doubles from April 2017 to October 2017 but typically only two days a week after Cody Naylor became an investigator in April 2017. Moore Dep. 75:16-20 (PageID 3739). This proof suggests that each investigator shared certain kinds of responsibilities, though not for exactly the same kinds of cases or for the same lengths of time.

What is more, the investigators allege somewhat distinct types of FLSA violations rather than a common theory of Defendants' liability. The investigators agree that Hardeman County did not pay them overtime as a matter of policy. Moore Dep. 24:9-24 (PageID 3733); Perry Dep. 32:6-8 (PageID 3757); *id.* at 40:22-24 (PageID 3759); Bryant Interrog. Resp. 8 (PageID 3887). Department leadership told investigators upfront they were classified differently and would not get overtime. Each investigator has also given proof that Mayor Sain's policy of not paying department employees for hours worked over 40 but less than or equal to 43 in a week applied to investigators. Perry Dep. 133:22-24 (PageID 3772); *id.* at 66:16-19 (PageID 3762); *id.* at 68:6-11 (PageID 3763); Bryant Interrog. Resp. 8 (PageID 3887). Beyond that, the investigators allege

unique and distinct types of FLSA violations.  For example, Justin Bryant alleges that Defendants incorrectly calculated his comp time, Bryant Interrog. Resp. 8 (PageID 3887), that he worked 156 hours off-the-clock responding to emergency calls after hours, *id*. at PageID 3888, and that his work on an FBI task force required the department to pay him overtime for hours worked over 40 hours in a seven-day period.  *Id*.  Cody Naylor makes similar claims about working after hours calls (141 hours total) and the FBI task force. Naylor Interrog. Resp. 8 (PageID 3907).  On the other hand, Naylor has also offered proof about not being paid for pre-shift or post-shift briefings, for attending in-service training, completing paperwork at the end of his shifts, and for making court appearances.  *Id*. at 13-14 (PageID 3912-13).[11]

Putting aside these distinctions among the investigators, Plaintiffs have not introduced evidence to support each of the theories of liability on which they seek final certification on behalf of the subclass of investigators.  Only Justin Bryant has given testimony about the County incorrectly calculating comp time at one hour of comp time for every hour of overtime worked, a claim somewhat at odds with the investigators' allegation the County denied them overtime altogether.  Bryant Interrog. Resp. 8 (PageID 3887).  Considering all of the proof submitted by Plaintiffs, the Court concludes that Plaintiffs have not introduced "substantial evidence" of the investigators' similarity, at least not to such a degree that collective action on their claims is warranted.  Insofar as one or more deputies have shown some areas of similarity or factual overlap, certification based on the few common features of their employment will not necessarily result in

---

[11] Naylor's proof includes what seems to be claims like those of patrol deputies as well as those from his tenure as an investigator.  Naylor appears to have worked as a deputy from May 2014 to August 2016 and then as a sergeant from August 2016 to April 2017, when he received a promotion to investigator.  Naylor Interrog. Resp. 5 (PageID 3904).

any greater efficiency or warrant collective treatment.  Therefore, the Motion for Decertification is **GRANTED** as to the subclass of investigators.

## VI. Hardeman County Correctional Officers

The largest subclass proposed by Plaintiffs is made up of Hardeman County Correctional Officers who worked at the Hardeman County Jail.  Plaintiffs have identified the following 38 correctional officers and sergeants who are part of the collective action and would be grouped into this separate subclass for trial: (1) Quinterius Allen, (2) Tavishia Anderson, (3) Elvis Armour,[12] (4) Ashley Banks, (5) Lindsey Bolton, (6) Billy Bricker, (7) Leonard Brown, (8) James Callahan,[13] (9) Lauren Chism, (10) Gloria Coble, (11) Martha Daniel, (12) Joselyn Hall, (13) Christopher Hannis, (14) Jerald Jacobs, (15) Chasity Lewis, (16) Woodson Long, (17) Chasity Mathews, (18) Jason McCord, (19) Carol McElhone, (20) Chris McKinney, (21) Brandon McKinnie, (22) Sharnett McNeal, (23) Curtavious Neal, (24) Parris Parks, (25) Antron Parram, (26) Tia Peoples, (27) Devante Phinnessee, (28) Gina Pittman, (29) Fonta Polk, (30) Letrece Robinson, (31) Victoria Rouse, (32) Arthur Schultz, (33) Keviante Simmons, (34) Trina Smith, (35) Megan Sterling, (36) Judy Wiggins, (37) Stephanie Wilson,[14] and (38) Chadriques Wooden.

---

[12] Plaintiffs filed a motion to substitute party (ECF No. 336) on behalf of Elvis Armour, showing that Mr. Armour had passed away.  The Court granted the motion and substituted Mr. Armour's sister Linda Armour Green in her capacity as administrator ad litem as a party in place of Mr. Armour.  Order Granting Pls.' Mot. to Substitute Feb. 2, 2024 (ECF No. 344).

[13] Plaintiffs filed a motion to substitute party (ECF No. 335) on behalf of James Callahan, showing that Mr. Callahan had passed away.  The Court granted the motion and substituted Mr. Callahan's surviving spouse Patricia Callahan in her capacity as administrator ad litem as a party in place of Mr. Callahan.  Order Granting Pls.' Mot. to Substitute Feb. 2, 2024 (ECF No. 343).

[14] Plaintiffs filed a motion to substitute party (ECF No. 337) on behalf of Stephanie Wilson, showing that Mrs. Wilson had passed away.  The Court granted the motion and substituted Mrs. Wilson's son Ronald Wilson in his capacity as administrator ad litem as a party in place of Mrs. Wilson.  Order Granting Pls.' Mot. to Substitute Feb. 2, 2024 (ECF No. 345).

The proposed subclass of correctional officers alleges that Defendants failed to pay them overtime and violated the FLSA in the following ways: (a) they were required to work one 44- or 48-hour workweek during each two-week pay period and were not paid overtime for the hours worked over 40; (b) they were required to be at their post at least 15 to 30 minutes prior to their shift; (c) their compensatory time was incorrectly calculated at one hour of comp time for every hour of overtime worked; (d) they were not paid their accrued time when they left Defendant's employment;[15] and (e) they were required to stay and complete all reports/paperwork, off the clock, before leaving.   In support of these claims, Plaintiffs have submitted excerpts of the deposition testimony given by Carol McElhone (ECF No. 352-10) and Judy Wiggins (ECF No. 352-16).  Plaintiffs have also filed responses to written interrogatories submitted by Judy Wiggins (ECF No. 352-25), Billy Bricker (ECF No. 352-26), Carol McElhone (ECF No. 352-27), and Trina Smith (ECF No. 352-28).

The Court holds that through this representative proof, Plaintiffs have shown that the subclass of correctional officers is similarly situated under the "stricter standard" for decertification motions.  *Frye*, 495 F. App'x at 671.  First, the factual and employment setting of each correctional officer, "considering issues such as location, job duties, supervision, and salary," shows the correctional officers are similarly situated.  *Frye*, 2010 WL 3862591, at *3.  Correctional officers worked in the same setting (the jail), performed similar duties (correctional supervision of inmates), and were paid as hourly employees.  The proof shows that correctional officers worked 12-hour shifts, 7:00 a.m. to 7:00 p.m. or 7:00 p.m. to 7:00 a.m., for four days out of one week and

---

[15] Just as it has in its discussion of the other subclasses, the Court notes this claim on behalf of the subclass of correctional officers.  Plaintiffs have not specified which correctional officers are no longer employed with the Hardeman County Sheriff's Office.  The Court will address below Plaintiffs' allegations concerning the County's decision to deny them their accrued time.

43

then 12-hour shifts for three days out of the following week.  McElhone Dep. 16:14-24 (PageID 3724); Bricker Interrog. Resp. 7 (PageID 3945).

The correctional officers also assert common theories of Defendants' liability under the FLSA.  For weeks when the correctional officers worked over 40 hours, they did not receive overtime.  Like other categories of sheriff's department employees, the correctional officers were expected to be on duty 15 to 30 minutes before their shifts for a pre-shift briefing.  McElhone Dep. 28:11-29:14 (PageID 3726-27); Wiggins 20:3-21 (PageID 3780); Bricker Interrog. Resp. 12 (PageID 3950); 29 C.F.R. § 553.221(b).  According to Plaintiffs, correctional officers did not receive the correct time and a half rate for comp time, when they received it at all.  McElhone Dep. 19:14-24 (PageID 3725); Bricker Interrog. Resp. 7-8 (PageID 3945-46).  And like patrol deputies, correctional officers were required to stay after their shifts ended to complete paperwork.  Wiggins Interrog. Resp. 13 (PageID 3932) (two hours per week); *but see* id. at PageID 3933 (one hour per week); Bricker Interrog. Resp. 13 (PageID 3951) (1.5 hours per week); McElhone Interrog. Resp. 14 (PageID 3971) (three hours per week); Smith Interrog. Resp. 12 (PageID 3988) (two hours per week).[16]

---

[16] The Court noted in its discussion of the claims alleged by the dispatcher subclass that the dispatchers' representative proof showed that dispatchers worked less than 40 hours per week for 26 weeks out of the year.  Plaintiffs had not shown that the dispatchers completed off-the-clock training videos during the specific weeks in which they allegedly worked over 40 hours without correct overtime.  Some of the same reasoning applies to the correctional officers and their claims for time spent completing paperwork at the end of their shifts.  During workweeks when the correctional officers worked less than 40 hours, it is possible their time working on end-of-shift paperwork would not have actually resulted in compensable overtime.  After all, the representative proof shows deputies performed this work for only a small number of hours each week.  Nevertheless, that is a question of fact, and Defendants have not sought judgment as a matter of law on this point.  Suffice it to say, Plaintiffs have carried their burden to show that department leadership expected correctional officers to stay after their shifts ended to complete paperwork and that the correctional officers were similarly situated in this regard.

Defendants once more argue that not all Plaintiffs in the proposed subclass of correctional officers have introduced evidence to prove all of the same theories of Defendants' FLSA liability. Just as with the patrol deputies, not all correctional officers have given proof to substantiate all of the common theories on which Plaintiffs seek certification. For example, Defendants cite written discovery responses from Gloria Coble, Elvis Armour, and Chadriques Wooden, none of which mention Hardeman County's policy of incorrectly calculating comp time at a rate of time and a half. But as the Court noted in its discussion of the patrol deputy subclass, Plaintiffs have introduced proof that the County consistently miscalculated comp time at the wrong rate, regardless of which job an employee worked at the sheriff's department. Plaintiffs made this specific allegation going all the way back to the original Complaint in 2019. Compl. ¶¶ 105-112 (ECF No. 1). Plaintiffs retain the ultimate burden to prove their claims that Defendants required them to work overtime without correct pay. Otherwise, this is a matter Defendants can raise on cross-examination or by calling their own witnesses to challenge the representative proof offered by Plaintiffs.

On the other hand, Defendants have shown that the correctional officers are dissimilar as to one narrow aspect of their claims for overtime. Like some members of the dispatchers and patrol deputies subclasses, some correctional officers allege that Hardeman County miscalculated overtime in 2016 and 2017 when the County transitioned from semi-monthly pay periods to bi-weekly pay periods. *E.g.* Jacobs Interrog. Resp. 7 (PageID 4244); Bricker Interrog. Resp. 7 (PageID 3945). For reasons the Court has already explained in its discussion of the subclass of dispatchers and subclass of patrol deputies, Plaintiffs have not shown that all correctional officers would have been impacted by this payroll practice and certainly not in similar ways. The difference is not simply one of degree, for example based on different statutes of limitations, but

an entirely different kind of pay practice and theory of Defendants' FLSA liability.  Therefore, the Court finds that the correctional officers are not similarly situated in this specific respect.

Overall, the Court concludes that Plaintiffs have carried their heightened burden to show that the correctional officers are similarly situated in most aspects of their employment and share common theories about how Defendants violated the FLSA claims.  Defendants have not shown why the availability of any individualized defenses should preclude final certification of the correctional officers subclass.  And the Court finds that collective action on the correctional officers' FLSA claims "would yield efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."  *Clark*, 68 F.4th at 1012. Therefore, the Court will create a subclass of the following correctional officers: (1) Quinterius Allen, (2) Tavishia Anderson, (3) Elvis Armour through his administrator ad litem, (4) Ashley Banks, (5) Lindsey Bolton, (6) Billy Bricker, (7) Leonard Brown, (8) James Callahan through his administrator ad litem, (9) Lauren Chism, (10) Gloria Coble, (11) Martha Daniel, (12) Joselyn Hall, (13) Christopher Hannis, (14) Jerald Jacobs, (15) Chasity Lewis, (16) Woodson Long, (17) Chasity Mathews, (18) Jason McCord, (19) Carol McElhone, (20) Chris McKinney, (21) Brandon McKinnie, (22) Sharnett McNeal, (23) Curtavious Neal, (24) Parris Parks, (25) Antron Parram, (26) Tia Peoples, (27) Devante Phinnessee, (28) Gina Pittman, (29) Fonta Polk, (30) Letrece Robinson, (31) Victoria Rouse, (32) Arthur Schultz, (33) Keviante Simmons, (34) Trina Smith, (35) Megan Sterling, (36) Judy Wiggins, (37) Stephanie Wilson through her administrator ad litem, and (38) Chadriques Wooden.

The Court finds that the correctional officers are similarly situated as to the following FLSA claims: (a) they were required to work one 44- or 48-hour workweek during each two-week pay period and were not paid overtime for the hours worked over 40; (b) they were required to be

46

at their posts at least 15 to 30 minutes prior to their shift; (c) their compensatory time was incorrectly calculated at one hour of comp time for every hour of overtime worked; and (d) they were required to stay and complete all reports/paperwork, off the clock, before leaving. Therefore, the Motion for Decertification is **GRANTED in part**, **DENIED in part** as to the subclass of correctional officers.

## VII.  Correctional Officer Sergeants

Plaintiffs seek certification as to one small subset of correctional officers who held the rank of sergeant.  The following Plaintiffs fit within this proposed subclass: (1) Billy Bricker, (2) Carol McElhone, (3) Trina Smith, and (4) Judy Wiggins.  The correctional officer sergeants allege all of the same FLSA claims as the other correctional officers.  They allege just one additional claim that Defendants did not properly pay them for on-call time and time they spent answering phone calls from the jail to address issues that arose after hours.   Plaintiffs have shown that the sergeants performed the work and have given time estimates for how much of this unpaid overtime they performed.  Wiggins Interrog. Resp. 8 (no time estimate, "on call every day" and "routinely"); *id*. at 12-13 (1.5 hours per week); McElhone Interrog. Resp. 14 (PageID 3971) (1 hour per week); Smith Interrog. Resp. 13 (PageID 3988) (1.5 hours per week).  The Court finds that Plaintiffs have met their stricter burden for final certification and shown that the four correctional officer sergeants were similarly situated in this aspect of their employment.  The Court will therefore certify the claim of this subclass for collective treatment at trial.  Therefore, the Motion for Decertification is **DENIED** as to these claims.

## VIII. Accrued Compensatory Time, Vacation, and Holiday Pay

As the Court has noted in its discussion of the subclasses, several Plaintiffs are no longer employed with Hardeman County and allege the County refused to pay them for accrued comp

time and vacation and holiday pay at the time of their separation from county employment.  The FLSA entitles employees to an award of accrued comp time.  29 U.S.C. § 207(o)(4) ("An employee who has accrued compensatory time off authorized to be provided under paragraph (1) shall, upon termination of employment, be paid for the unused compensatory time . . . .").  As part of their briefing of the decertification issue, Plaintiffs state that all but 15 Plaintiffs are no longer employed with Hardeman County.  A recent motion filed by Plaintiffs names 54 of the Plaintiffs who are no longer employed with the department.  *See* Pls.' Mot. to Compel Apr. 19, 2024 (ECF No. 370) (seeking the production of separation letters issued to 54 Plaintiffs and containing the amount of accrued time owed to each Plaintiff at the conclusion of their tenures).

The pleadings suggest that Plaintiffs have two distinct theories about the County's refusal to pay out accrued time to employees leaving county service.  Plaintiffs initially alleged the County withheld payment as a matter of policy.  *See* Compl. ¶¶ 117-122 (alleging that Defendants failed to pay Chris Wilkerson and Michael Hatch their accrued pay at the time of their resignations in 2018; Am. Compl. ¶¶ 191-217 (ECF No. 29) (alleging the same claim on behalf of "Greg Brown, Scott Brown, Carol Danford McElhone, Christopher Deming, Jenny Duke, Michael Hatch, Ryan Herndon, Chris Hopkins, Courtney Howell, Martha Lowrance, David Nabors, Thomas Cody Naylor, Ethan Vasquez, and Chris Wilkerson"); Master Compl. ¶ 215 (naming Greg Brown, Scott Brown, Carol Danford McElhone, Christopher Deming, Jenny Duke, Nick Ellison, James Frazier, James Graham, Michael Hatch, Ryan Herndon, Chris Hopkins, Courtney Howell, Martha Lowrance, David Nabors, Thomas Cody Naylor, Ethan Vasquez and Chris Wilkerson); Baker Dep. 76:8-18 (PageID 3672) ("In October/November 2018, Mayor Sain made the decision to no longer

pay deputy, jail, and dispatch employees for their accrued compensatory, holiday, and vacation time at the time of termination of employment.").[17]

Plaintiffs have not actually sought final certification of their FLSA claims for accrued comp time as a separate subclass for collective action.  *Cf.* Jt. Proposal for Subclasses Aug. 14, 2020 (ECF No. 110) (seeking conditional certification for all employees who had not received accrued comp, vacation, and holiday time upon their separation from county employment after October 2018).  Rather, Plaintiffs have proposed that the Court consider the comp time claims as part of the collective action for each subclass of different types of employees, even though not every member of the subclass has left his or her job with the County or alleges that the County has refused to pay out accrued comp time and holiday and vacation pay.  Because only Plaintiffs who have left their county jobs are actually similarly situated as to their claims for accrued comp time, the Court finds that the better course would be to create a subclass just as to this claim.

Therefore, the Court will create a subclass of the following former Hardeman County employees: Greg Brown, Scott Brown, Carol Danford McElhone, Christopher Deming, Jenny Duke, Nick Ellison, James Frazier, James Graham, Michael Hatch, Ryan Herndon, Chris Hopkins, Courtney Howell, Martha Lowrance, David Nabors, Thomas Cody Naylor, Ethan Vasquez and Chris Wilkerson.  Master Compl. ¶ 215.  The subclass is limited only to employees (1) who allege a claim for accrued comp time and (2) who have alleged in the pleadings that the County refused to pay them for accrued comp time as a matter of policy.

---

[17] In the alternative, the Master Complaint alleges Defendants have withheld accrued comp time and holiday and vacation pay in retaliation for Plaintiffs' filing this lawsuit.  The Court will address Plaintiffs' claim for FLSA retaliation and prayer for damages representing unpaid accrued comp time and vacation and holiday pay separately.

To the extent that the Plaintiffs identified in the pleadings seek an award of accrued vacation and holiday pay as well, Plaintiffs have not shown why collective action on this claim would be proper. Strictly speaking, a claim for unpaid vacation or holiday pay (or for that matter sick pay) does not constitute a violation of the FLSA. Plaintiffs have cited no authority, and the Court is aware of none, for the proposition that an employer violates the FLSA's minimum wage or overtime provisions by failing to accurately track paid time off for vacation or holidays or by failing to pay an employee for accrued vacation and holiday time at the end of the employee's tenure. What is more, the FLSA only permits collective action for specific violations of § 207. *See* 29 U.S.C. § 216(b).

If anything, the claims for accrued vacation and holiday pay sound in Tennessee contract law. But Plaintiffs have not alleged a hybrid class and collective action to press their state law claims as a group. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020) ("Because FLSA and state law claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the state law claims as a class action under the district court's supplemental jurisdiction."). To the extent that Plaintiffs allege Mayor Sain adopted a county policy of denying employees their accrued vacation or holiday pay, Plaintiffs have not shown that the FLSA entitles them to this pay. Therefore, the Court would decline to certify a collective action to recover unpaid accrued vacation and holiday pay owed to these Plaintiffs.

## IX. Retaliation

Plaintiffs finally seek certification for the collective retaliation claims of the dispatchers. Before addressing the merits of the parties' arguments and as the Court has already noted, the

Master Complaint alleges a retaliation claim on behalf of Plaintiffs who have left their jobs with the County and been denied their accrued comp time and vacation and holiday pay, all because of Plaintiffs' participation in this lawsuit. This allegation, alleged in the alternative to Plaintiffs' general claim about not receiving accrued time as a matter of policy, would constitute a violation of the FLSA's anti-retaliation provision. To the extent that Plaintiffs seek compensation for accrued comp time, vacation, and holiday pay as damages for Defendants' alleged retaliation, the FLSA arguably allows such an award. The FLSA gives the Court broad authority to order legal and equitable remedies for an employer's retaliation against an employee. § 216(b) (permitting a court to award "legal or equitable relief as may be appropriate to effectuate the purposes of [the FLSA]").

But even assuming that these Plaintiffs seek pay for their accrued time off as one element of damages caused by Defendants' alleged retaliation, Plaintiffs have not shown why collective action on such a claim is proper. In order to make a prima facie case of FLSA retaliation under 29 U.S.C. § 215, a plaintiff must prove four elements: (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Caudle v. Hard Drive Express, Inc.*, 91 F.4th 1233, 1237–38 (6th Cir. 2024) (citing *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006)). FLSA retaliation cases follow the *McDonnell Douglas* framework, meaning "once the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citation omitted). The burden then shifts back to the plaintiff to prove the defendant's given reasons were pretext for retaliation. *Id.*

Proof to establish acts of retaliation against dozens of Plaintiffs would be highly unique to each individual member of such a subclass.  Plaintiffs would specifically have to prove "a causal connection between the protected activity and the adverse employment action."  *Caudle*, 91 F.4th at 1238.  Protected activity under the FLSA can take more than one form.  The FLSA protects an employee's right to make both oral and written complaints about practices that violate the Act, as long as the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011).  Assuming Plaintiffs could show they all engaged in similar protected activity like joining this lawsuit, each Plaintiff would also need to prove a causal connection between that activity and the County's refusal to pay out accrued time to departing employees.  Even if the County had refused to pay accrued time across the board, the County's refusal occurred at different times and under different circumstances.  And for each Plaintiff, Defendants would have the opportunity to offer non-discriminatory explanations for their decisions.  All of this tends to show that Plaintiffs with retaliation claims are not similarly situated and that collective action on their individual claims would be difficult to manage from the perspective of a workable trial procedure.

Certification of a subclass of Plaintiffs with retaliation claims would be problematic enough.    Even if Plaintiffs could make out the County's liability for retaliation through representative proof, proof of damages would be even more specific and individualized to each member of the subclass, requiring dozens of separate calculations for the amount of accrued time and the correct rate of pay.  29 C.F.R. § 553.27(b) (making it mandatory for an employee to receive payment for unused comp time "[u]pon termination of employment . . . at a rate of compensation

not less than—(1) The average regular rate received by such employee during the last 3 years of the employee's employment, or (2) The final regular rate received by such employee, whichever is higher").  In short, Plaintiffs have not carried their strict burden to show why collective action for their retaliation claims is warranted in light of the many factual distinctions the claims present.  Therefore, the Court declines to certify collective action on behalf of Plaintiffs who are no longer employed by Hardeman County on their retaliation claims regarding accrued comp time and vacation and holiday pay.

This leaves the dispatchers' claims for retaliation.  Plaintiffs seek certification for the retaliation claims alleged by the dispatcher subclass arising out of Hardeman County's decision in 2021 to eliminate their positions.  According to the Master Complaint, former Hardeman County Mayor Jimmy Sain transferred responsibility for dispatch and 911 services from the sheriff's department to the Hardeman County Emergency Communications District in 2021.  Master Compl. ¶¶ 257-296.  Plaintiffs allege Mayor Sain acted in retaliation against the dispatchers employed by the Sheriff's Office because of their lawsuit against the County.

Much of the same reasoning about the general retaliation claims of other Plaintiffs and the problems with collective treatment of those claims apply to the dispatchers' retaliation claims.  The more fundamental problem with proceeding to trial collectively on the dispatchers' retaliation claims is that Plaintiffs have not introduced "substantial evidence" to support the claim or shown how the dispatchers were similarly situated.  Plaintiffs have submitted a letter of termination dated July 23, 2021 (ECF No. 352-2), informing dispatchers of their termination and inviting them to re-apply for similar positions with the Emergency Communications District.  Plaintiffs have also made the responses to written interrogatories completed by Toni Pierce part of the record.  According to Pierce, "Jimmy Sain said that once he is over dispatch[,] all dispatchers in this lawsuit

will be fired." Pierce Interrog. Resp. 4 (PageID 3799). But Pierce resigned as a dispatcher in January 2020, prior to the date of Mayor Sain's letter informing dispatchers of their termination. *Id*. at 8 (PageID 3803). Furthermore, Plaintiffs have not shown which dispatchers were affected by Mayor Sain's decision in 2021. Other than Pierce's single statement and the letter itself, Plaintiffs have relied on the allegations of the Master Complaint. This does not satisfy Plaintiffs' stricter burden at the decertification stage. *Frye*, 495 F. App'x at 671 (requiring FLSA collective action plaintiffs to go beyond "just allegations and affidavits" at the final certification stage). Therefore, the Motion for Decertification is **GRANTED** as to Plaintiffs' claims for retaliation and the payment of accrued comp time and vacation and holiday pay.

## CONCLUSION

Defendants' Motion for Decertification is **GRANTED in part, DENIED in part**. The Court declines to certify for collective action the claims of all 84 Plaintiffs as an undifferentiated whole. The Court further finds that Plaintiffs have not carried their burden to show why collective treatment for all members of the proposed subclasses or all claims alleged by the proposed subclasses is warranted. The Court will, however, grant certification to specific subclasses of Plaintiffs and the claims on which they share common theories of Defendants' FLSA liability. Therefore, the case will proceed as a collective action only as to the subclasses defined herein on which the Court has granted certification.

A jury trial is currently set for June 24, 2024. Before the Court decides how to proceed with the claims remaining for trial, the parties should address the possibility of another round of mediation. Local Rule 16.3(c) gives the Court discretion to "order the parties to undergo any form of ADR, including but not limited to mediation . . . ." Local R. 16.3(c). The parties previously attempted mediation at more than one point in the case. In fact, the Court continued the previous

trial setting (October 23, 2023) at the parties' request and reset the trial for June 2024, in large part to give the parties time to schedule another mediation.  Order Continuing Tr. Date, Sept. 25, 2023 (ECF No. 326).  Although the parties attended mediation in December 2023, counsel reported they did not achieve the resolution of any claims or issues at that time. Pls.' Status Rep. Feb. 13, 2024 (ECF No. 347); Defs.' Status Rep. Feb. 14, 2024 (ECF No. 350).  Defendants have indicated the parties considered resuming mediation at a later time. *Id*.

In light of the Court's order on partial decertification and the current posture of the case, the parties are hereby ordered to confer and file a report, stating their respective positions on the prospects for mediation to resolve their dispute, in whole or in part, including any and all of the collective action claims certified herein, prior to trial and in any case no later than 60 days from the entry of this order.  Each party should support its position on the merits of an additional round of mediation with a detailed statement of reasons providing as much specificity as possible.  The parties' report on mediation is due within 14 days of the entry of this order.

Generally speaking, the decertification of an FLSA collective action results in the dismissal without prejudice of all opt-in plaintiffs and a trial on the merits of the individual claims of the original plaintiffs.  *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018) ("If [the opt-in plaintiffs] are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives (the original plaintiffs) then proceed to trial on their individual claims.") (cleaned up).  This rule does not apply so neatly in this case, however.  The Court's decertification is partial, in that the Court is granting in part Defendants' request for decertification but also granting partial certification of certain subclasses as to some Plaintiffs and some claims.  Rather than dismiss the claims that will not continue as part of the case at this time, the Court will allow the parties to address the prospects

of resolving those claims through mediation.  Once the parties have been heard on the matter, the Court will decide how best to proceed, including the trial of the collective action claims, the trial of the claims of the original named Plaintiffs, and the proper disposition of any claims not certified as part of the collective action for trial.  Until then, all claims alleged in the Master Complaint, including the claims not certified as part of the collective action for trial, remain as part of this action, pending further orders of the Court.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  May 8, 2024.