IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| PATRICK D. PERRY et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:19-cv-1106-STA-cgc |
| ) | |
| HARDEMAN COUNTY GOVERNMENT, ) | |
| HARDEMAN COUNTY COMMISSION, and ) | |
| JIMMY SAIN in his individual and official ) | |
| Capacities, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT JIMMY SAIN'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Jimmy Sain's Motion for Summary Judgment (ECF No. 454) filed September 18, 2024. Plaintiffs Patrick D. Perry et al. have responded in opposition, and Defendant has filed a reply. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

This is an action for violations of the overtime pay, compensatory time, and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"). On May 29, 2019, seven Plaintiffs filed the original Complaint in this case, alleging various violations of the FLSA. The initial pleading named Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, and Jimmy Sain in his individual capacity as Defendants. Several months later, Plaintiffs filed an Amended Complaint (ECF No. 28), naming more Plaintiffs and more Defendants and also alleging claims against Sain in his individual capacity and in his capacity as Mayor of Hardeman County. Plaintiffs have amended their pleadings at other times since then but always

1

with allegations against Sain in both his individual and official capacities. Sain now moves for summary judgment on the claims against him.

On May 8, 2024, the Court entered an order granting in part and denying in part Defendants' motion to decertify the collective action claims. Rather than decertify the action in full, the Court granted partial decertification as to some claims and some Plaintiffs but then certified for collective action the claims of other subclasses of Plaintiffs. The trial on the next group of collective action claims is now set for November 18, 2024.

To decide Defendant's Motion for Summary Judgment, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law. A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). In support of their Motions, both sides have filed their own statements of undisputed facts and submitted responses to the opposing party's statement.

Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted. John Doolen, who is no longer a party

to this action, was at all times relevant the Sheriff of Hardeman County and exercised control over all Hardeman County sheriff's department deputies (including the chief deputy, captains, lieutenants, sergeants, investigators, and road deputies), jailers, and, until 2021, dispatchers. Def.'s Statement of Undisputed Fact ¶ 1.[1] Sheriff Doolen was responsible for hiring deputies, determining their rate of pay, and promoting them. *Id*. ¶ 2. Sheriff Doolen also had the responsibility to hire dispatchers. *Id*. ¶ 3. Sheriff Doolen set salaries and wages for department employees as long as the department's budget could fund the payroll. *Id.* ¶ 5. Sheriff Doolen made these personnel decisions on his own authority and did not need approval from the Mayor. *Id*. ¶ 6.

Department leadership set the work schedules for each employee of the department. William Davis, a former chief deputy in the Hardeman County Sheriff's Office, testified that during his tenure, the chief deputy created work schedules for dispatchers and collaborated with other ranking officers in department leadership to schedule the rest of the deputies. *Id*. ¶ 7. Former Chief Deputy Davis also testified that the sheriff had authority to hire and fire employees in the department and grant raises. *Id*. ¶ 8.

While Sheriff Doolen set wages and made other personnel decisions, the County Mayor's Office processed department payroll. Sheriff's department employees filled out their timesheets and submitted them to their captain, who would then send them to the chief deputy. *Id*. ¶ 11. The chief deputy would then send the timesheets on to Linda Ervin in the Mayor's Office for payment. *Id*. ¶ 12. According to Sheriff Doolen, he relied on the Mayor's Office to correctly determine the

---

[1] The parties filed a Stipulation of Dismissal (ECF No. 426) whereby Plaintiffs agreed to the dismissal of their claims against Sheriff Doolen and the Hardeman County Sheriff's Office on July 11, 2024.

hourly and overtime rates owed to the employees based on employee timesheets. *Id.* ¶ 13. The County Mayor, not Sheriff Doolen, had the authority to write checks for salaries. *Id.* ¶ 14.

Jimmy Sain, who is now the former Mayor of Hardeman County, conceded in his deposition that when Sheriff Doolen made any hires or promotions or decided to demote or terminate an employee, the Sheriff would notify Ms. Ervin in the County Mayor's Office about these personnel actions. *Id.* ¶ 4. Sain further testified that the Mayor's Office would pay employees in accordance with instructions from the Sheriff but only to the extent the department budget had sufficient funding. *Id.* ¶ 15.[2] If a department's funds were running low, the department head was required to submit a budget amendment, which had to go before, first, the budget committee and then, if approved by committee, the full County Commission. *Id.* ¶ 16. If the Sheriff and the County Commission could not agree on a budget amendment, the Sheriff could file a salary suit against the Mayor. *Id.* ¶ 17. Sheriff Doolen has filed salary suits on two different occasions. *Id.*

Sheriff Doolen believed that in some instances, there were sufficient funds in his department budget to grant employees raises, only to have the Mayor's Office refuse to fund the raises. *Id.* ¶ 18. In that situation Sheriff Doolen had to seek a budget amendment from the budget committee and ultimately the full County Commission. *Id.* ¶ 19. Even then, Sheriff Doolen testified that there were instances when he would approve a raise or a promotion and the employee was not given a raise by someone in payroll. *Id.* ¶ 20. Sheriff Doolen also testified that when employees

---

[2] Plaintiffs dispute this testimony by citing testimony from witnesses that Sain had a reputation for dishonesty. Be that as it may, the Court cannot make credibility determinations, a core jury function, to decide Sain's Motion for Summary Judgment. *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019). Other than calling Sain's credibility into doubt, Plaintiffs have not cited any record evidence to create a genuine dispute over Sain's testimony that county employees like Plaintiffs were paid to the extent the Sheriff's budget had enough funding to make payroll.

4

received incorrect pay, the problem was in the Mayor's Office. *Id*. ¶ 21.  When this happened, Sheriff Doolen had to take up the issue with the budget committee. *Id*. ¶ 22.[3]

According to Sain, Plaintiffs' interrogatory responses confirmed many of these material facts about department personnel decisions and employee pay.  Plaintiffs stated in written discovery that Sheriff Doolen made personnel decisions, determined each employee's hourly wage, set work schedules, and directed the work of the employees in the department. *Id*. ¶ 10. Plaintiffs also conceded that Sheriff Doolen was "required to submit budgetary requests, payroll records, and other information and requests for assistance to Hardeman County to obtain funds for the operation of the sheriff's department." *Id*. And Sheriff Doolen adopted a personnel manual "separate and apart from the personnel manual developed and adopted by the county for the other employees of Hardeman County and that he established specific provisions relating to salary, leave, compensatory and holiday time, and hours of the work week." *Id*.  Finally, Plaintiffs stated in their discovery responses that "[i]n the event the annual budget established for the Sheriff's Department was found to be deficient during the year, Defendant Doolen had the statutory duty to work with Hardeman County Government to obtain additional funding to ensure the Sheriff's Department had the necessary funds to fund its operations." *Id*.

During the pendency of this litigation, Hardeman County transferred its dispatch operations from the Hardeman County Sheriff's Office to a newly created and separate 911 district. *Id*. ¶ 25. A board of directors governed the new 911 district and operated the 911 district through a director. *Id*. ¶ 26. Plaintiffs assert that Sain terminated the dispatchers and required them to reapply for their

---

[3] Plaintiffs deny this statement and assert that Sheriff Doolen testified that he would complain to the County Commission and the Commission did nothing.  But Plaintiffs have not cited any evidence to support their position.  The Court finds then that the statement is undisputed for purposes of summary judgment.

5

jobs with the new 911 district. Pls.' Resp. to Def.'s Statement of Undisputed Fact ¶ 25. Sheriff Doolen also believes that Sain terminated the dispatchers, even though the Sheriff alone had the authority to hire and fire dispatchers and set their wages and schedules. Def.'s Statement of Undisputed Fact ¶¶ 23, 24. Sheriff Doolen believes that Mayor Sain usurped his authority by terminating the dispatchers and by generally ignoring Doolen's personnel decisions to promote employees and grant raises. *Id*. ¶ 28.

By and large, Plaintiffs do not actually dispute any of these facts. They do, however, stress that Sain made the decision to terminate the dispatchers.[4] In Plaintiffs' view, Sheriff Doolen may have had control over personnel matters. But Mayor Sain had control over whether raises granted by Sheriff Doolen or overtime approved by department leadership were actually paid. Mayor Sain also had the power to transfer department employees from correctional officer to patrol deputy. Plaintiffs have also cited the following additional facts.

Provided there was money available in his budget, Sheriff Doolen had the authority to give his employees a raise at any time. Pls.' Statement of Add'l Facts ¶ 1. When Sheriff Doolen approved a pay raise, the Mayor's Office might not "honor" the raise. Def.'s Resp. to Pls.' Statement of Add'l Facts ¶ 1. The County Mayor was the only person with check writing authority for the County. Pls.' Statement of Add'l Facts ¶ 5. The Mayor's Office, which effectively meant former Mayor Sain, decided whether or not to pay Sheriff's Office employees for all of the hours reflected on their timesheets. *Id*. ¶¶ 2, 8, 10. Former Mayor Sain refused to pay the deputies for

---

[4] In their statement of additional facts, Plaintiffs make a number of assertions about Sain's treatment of Hardeman County dispatchers, including actions Sain allegedly took after the dispatchers joined this collective action. Because the parties have reached a tentative settlement of the dispatchers' claims, the Court finds that this evidence is not actually relevant to the question of whether Sain was an "employer" for the remaining Sheriff's Office employees in this suit.

all hours worked. *Id.* ¶ 5. For example, Plaintiff Patrick Perry was promoted to Captain and given a raise in September 2019. *Id.* ¶ 4. However, Perry did not receive his raise until three years later, after Sain had left office. *Id.* Furthermore, beginning in March 2019, deputies were not paid for hours worked between 40 and 43, meaning if they worked 40 to 43 hours, the County paid them for 40 hours of work. *Id.* ¶ 11.

The budget for the Sheriff's Office increased only 0.0001% from 2017 to 2019. *Id.* ¶ 6. In Sheriff Doolen's budget lawsuit against Mayor Sain and Hardeman County, the County's expert, Steve Overton, prepared a report for the years 2018 and 2019 and concluded that "the current staffing levels on each shift are inadequate and do not meet the demand or the workload; on any given day with regular scheduled days off there may be as few as two deputies working a shift patrolling 670 square miles and servicing over twenty-five thousand residents." *Id.* ¶ 9. On May 21, 2021, Sheriff Doolen submitted a budget amendment to move $20,000.00 from salary to overtime in the Sheriff's Office budget to cover overtime already worked as well as upcoming overtime. *Id.* ¶ 16. The County Commission only approved the amount in arrears, $1,588.52. *Id.*[5] The denial of Sheriff Doolen's budget amendment resulted in the deputies not being paid overtime on May 28, 2021, or June 11, 2021, as there was no money in the overtime budget. *Id.* ¶ 19.

Sheriff Doolen testified to a number of things he came to believe about former Sain's management of different departmental budgets within county government. Former Mayor Sain could use the county software program to view budget amounts in real time, information to which Sheriff Doolen was not granted access. *Id.* ¶ 3. Sheriff Doolen also suspected that Sain or Linda

---

[5] Plaintiffs assert that former Mayor Sain also made the decision to deny Sheriff Doolen's budget request but without citing any admissible evidence to support their claim.

Ervin in the Mayor's Office or Vicky Barber could alter budgets and move money around within the budgets. *Id.* ¶¶ 14, 15. Sheriff Doolen believed that former Mayor Sain had transferred money out of the Sheriff's Office budget without Doolen's approval or knowledge. *Id.* ¶ 18. For example, Sheriff Doolen testified that former Mayor Sain used funds in the Sheriff's Office's drug fund to purchase a helicopter. *Id.* ¶ 21. Sain objects to other evidence as speculation.

Former Mayor Sain now seeks judgment as a matter of law on a series of issues. First, Sain argues that the Court should grant summary judgment on the claims against him in his official capacity because he is no longer Mayor of Hardeman County. Next, Sain makes two different arguments for the dismissal of Plaintiffs' Tennessee Public Protection Act claims against him. Plaintiffs' Master Complaint (ECF No. 228) fails to allege all of the elements of such a claim, specifically that any Plaintiff was terminated from their Hardeman County job in violation of the Act. Furthermore, employees cannot hold individual supervisors like Sain liable for violations of the TPPA. Third, Sain moves for judgment as a matter of law on Plaintiffs' claim for breach of contract or unjust enrichment. Sain argues that Plaintiffs cannot prove the parties had a contract. Plaintiffs also have no evidence to prove an unjust enrichment claim by showing that Sain somehow retained a benefit at Plaintiffs' expense or that it would be inequitable for Sain to retain such a benefit. Finally, Sain argues that Plaintiffs cannot show that Sain was their "employer" under the economic reality test for purposes of their FLSA claims. Therefore, Sain asks the Court grant him summary judgment on all of Plaintiffs' claims against him.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

8

322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna*, 934 F.3d at 515 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case the Court has original jurisdiction over Plaintiffs' FLSA claims against Sain because the claims arise under the laws of the United States. Section 1331 vests in the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' Tennessee law claims against Sain under 28 U.S.C. § 1367. Section 1367 provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367; *see also Wisc. Dept. of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). "Claims form part of the

9

same case or controversy when they 'derive from a common nucleus of operative fact.'" *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)).

## **ANALYSIS**

The issue presented is whether Plaintiffs can hold former Hardeman County Mayor Sain liable for money damages under a number of different theories and causes of action. As an initial matter, Plaintiffs focus the entirety of their response in opposition to Sain's Rule 56 Motion on whether Sain meets the test as an "employer" under the FLSA. Plaintiffs have not addressed Sain's arguments for summary judgment on Plaintiffs' claims against him in an official capacity, claims for the violation of the TPPA, and claims for breach of contract or unjust enrichment. The Court finds then that Plaintiffs have waived their opposition to judgment as a matter of law on each point. When a party "fails to address [an argument] in response to a motion for summary judgment," the argument is deemed waived. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citations omitted). And when a party waives its opposition to an argument, "district courts in this Circuit grant summary judgment as a matter of course." *Id.* (collecting cases). Therefore, Sain's Motion for Summary Judgment is **GRANTED** on each of these issues.

This just leaves Plaintiffs' claims for violations of the FLSA against Sain in his individual capacity. The FLSA permits "employees" to sue an "employer" in a private action for violations of the Act. 29 U.S.C. § 216(b). Plaintiffs worked as employees of the Hardeman County Sheriff's Office. Sain was the Mayor of Hardeman County. Plaintiffs can only hold Sain liable for violations of the FLSA if they can show that Sain was their "employer," as the FLSA defines the term. An "employer" for purposes of the FLSA is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 203(d).

10

"Whether a particular situation is an employment relationship is a question of law." *Eberline v. Douglas J. Holdings, Inc.*, 982 F.3d 1006, 1012 (6th Cir. 2020) (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994)). Courts typically examine the "economic reality of the relationship between parties." *Id*. (citing *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011)). The economic realities test "is not a precise test susceptible to formulaic application," *id.* (citing *Ellington v. City of East Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012)), but rather "a case-by-case" determination from "the circumstances of the whole business activity." *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)). "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan,* 414 U.S. 190, 195 (1973)).

The economic realities test is frequently applied in the context of private sector employment. There the test focuses on whether the "employer" "has a significant ownership interest in the corporation that employs the plaintiffs, controls significant functions of the business, and determines salaries and hiring decisions." *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995). For example, "a corporate officer who has operational control of the corporation's covered enterprise is an 'employer' under the FLSA, along with the corporation itself." *Id*. Likewise, "the chief executive officer of a corporation [who] has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for purposes of the FLSA." *Id*.

As the Court noted at an earlier stage of the case, "neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has addressed whether state officials and public employees

11

are 'employers' subject to individual liability under the FLSA." *Perry v. Hardeman Cnty. Gov't*, No. 1:19-cv-01106, 2020 WL 1963784, at *2 (W.D. Tenn. Apr. 23, 2020) (quoting *Fraternal Order of Police Barkley Lod. v. Fletcher*, 618 F.Supp.2d 712, 715 (W.D. Ky. 2008)). However, several district courts in this Circuit have concluded that individual employees of a public agency may be held liable as "employers" under the FLSA. *Fletcher*, 618 F. Supp. 2d at 721-22 (denying a motion to dismiss by public officials sued in their individual capacities under the FLSA and finding that the plain meaning of the statute unambiguously permitted individual liability for public employers); *Willcox v. Tenn. Dist. Attorneys Gen. Conf.*, 2008 WL 4510031 (E.D. Tenn. Sept. 30, 2008) (holding that employees of a public agency may be "employers" under the FLSA as long as they "acted directly or indirectly in the interest of the State, in relation to plaintiff"), *amended sub nom. Willcox v. Kirby*, 2009 WL 78436 (E.D. Tenn. Jan. 9, 2009).

Even accepting Plaintiffs' premise that former Mayor Sain could be liable for violations of the FLSA, the Court holds that under the facts of this case, Sain was not Plaintiffs' "employer." As a matter of Tennessee law, only Sheriff Doolen had the legal authority to "employ" "deputies and assistants" in the Hardeman County Sheriff's Office. *See* Tenn. Code Ann. § 8–20–101(a) ("Where any . . . sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person *may employ such deputies and assistants* as may be actually necessary to the proper conducting of such person's office.") (emphasis added). The proof shows that each Plaintiff worked for Sheriff Doolen, not former Mayor Sain. Sheriff Doolen, not Mayor Sain, controlled and directed each Plaintiff's work and made all relevant personnel decisions. Sheriff Doolen hired and staffed the Sheriff's Office, made decisions to promote employees of the Sheriff's Office, and disciplined Sheriff's Office personnel, up to and including dismissal. Sheriff Doolen set salaries

and wages within the department, including approving raises and overtime. Sheriff Doolen even adopted a personnel manual for the employees in the Sheriff's Office, a handbook that was separate and distinct from the personnel manual applicable for county employees in other departments. And Sheriff Doolen made each of these employment decisions on his own authority and without the need to obtain approval from the County Mayor.

All of this shows that Sheriff Doolen, not Mayor Sain, was "responsible for compliance with the FLSA." *Dole*, 942 F.2d at 965. First, as the county officer with the legal authority to hire "deputies and assistants," Sheriff Doolen was responsible for setting the correct rate of pay, including the required minimum wage, for each employee. That is an "employer" function under the FLSA. 29 U.S.C. § 206 ("Every employer shall pay to each of his employees" a minimum wage.). Sheriff Doolen through his command staff also had responsibility for setting employee work schedules. Scheduling has obvious FLSA implications as well. 29 U.S.C. § 207(k) (setting maximum hours for employees of a public agency engaged in law enforcement activity and providing for time-and-a-half for any hours worked in excess of the maximum). There is no evidence that former Mayor Sain had any authority to control the pay or number of hours, including overtime, the employees of the Sheriff's Office were entitled to receive. That power was reserved to Sheriff Doolen.

This is not to say that the Mayor's Office had no role in employee pay. The evidence also shows that the Mayor's Office processed payroll for all county employees, including employees of the Sheriff's Office. Sheriff's Office employees submitted timesheets for approval to the command staff of the Sheriff's Office. The Chief Deputy then forwarded timesheets to the Mayor's Office for payroll recordkeeping and payment. The Sheriff's Office did not submit the records for the Mayor's approval but simply so that an administrative assistant in the Mayor's Office could

13

process payroll and have county checks issued to employees. It is true that Sheriff Doolen relied on the Mayor's Office to perform the calculations to arrive at the correct amount owed to each employee of the Sheriff's Office. But these were essentially ministerial functions much like the operations of a human resources department within an organization. Plaintiffs have cited no evidence that the Mayor's Office or the Mayor himself had the legal duty or authority to ensure Sheriff Doolen's "compliance with the FLSA." *Dole*, 942 F.2d at 965.

Plaintiffs cite evidence that they did not always receive the correct amount on their paychecks and that Sheriff Doolen was occasionally compelled to request supplemental funding from county government in order to fully fund payroll and other operations of the Sheriff's Office. According to Plaintiffs, county policy required the Mayor's Office to compensate Sheriff's Office employees only to the extent that the Sheriff's Office budget had sufficient funds to meet payroll. Plaintiffs cite examples of the Mayor's Office failing to "honor" raises or other compensation Sheriff Doolen had approved for Sheriff's Office employees. Plaintiffs also cite Sheriff Doolen's testimony that he formed certain opinions about former Mayor Sain moving funds from one budget to another, sometimes leaving the Sheriff's Office with insufficient money to cover payroll and overtime.

Instead of showing that Mayor Sain was an "employer" with regard to Plaintiffs' employment with the Hardeman County Sheriff's Office, the evidence reinforces the conclusion that Sheriff Doolen and the County Commission, not Mayor Sain, had the duty to ensure that Plaintiffs were paid in accordance with the FLSA. Plaintiffs allege they were denied overtime at times when the Sheriff's Office budget had insufficient funds to pay them. But it is undisputed that neither Sheriff Doolen nor Mayor Sain had the authority to appropriate new county funds for the Sheriff's Office budget. The Sheriff's Office had to operate within the constraints of a budget

adopted by the Hardeman County Commission. *Ramey v. Perry Cnty.*, No. M2008–01571–COA–R3–CV, 2009 WL 2357081, at *9 (Tenn. Ct. App. July 30, 2009) ("As a general rule, the General Assembly has left county budget decisions in the hands of the county legislative bodies, so that preparing the county budget is essentially a political process intended to reflect the desires of the county's residents.") (citing *Jones v. Mankin,* No. 88–263–II, 1989 WL 44924, *2 (Tenn. Ct. App. May 5, 1989) (cleaned up)). The fact that the Mayor's Office sometimes did not process payroll in the amount Sheriff Doolen approved does not necessarily show that Sain somehow controlled Sheriff's Office pay or overtime.

Furthermore, to the extent that the Sheriff's Office budget could not meet its statutory obligations to pay employees for all time worked, Sheriff Doolen, not Mayor Sain, had the legal duty to request adequate funding from the County Commission. The evidence shows that Sheriff Doolen occasionally had to get supplemental funding from the County Commission, first by working with the budget committee and then the full Commission. The reasonable inference from the proof is that the Sheriff was the county official responsible for making certain his department had funds to meet payroll and comply with the FLSA. Plaintiffs have cited no evidence that Sain was ever the county official with responsibility for dealing with budget shortfalls or funding gaps at the Sheriff's Office, just that Sheriff Doolen suspected Sain had caused budget shortfalls by transferring money earmarked for the Sheriff's Office to other county budget items.

What is more, there is evidence that Sheriff Doolen had to resort to legal action at times to obtain adequate funding for the Sheriff's Office. Should cooperation with the County Commission prove unsuccessful, Tennessee law vested the Sheriff with the authority to file suit to compel the County to provide necessary funding, a step Sheriff Doolen took on two different occasions. *See* Tenn. Code Ann. § 8–20–101(a)(2) ("The sheriff may . . . make application to the judge of the

15

circuit court in the sheriff's county, for deputies and assistants, showing the necessity therefor, the number required and the salary that should be paid each . . . ."); *Ramey*, 2009 WL 2357081, at *1 (explaining the historical background of Tennessee's "anti-fee" law and the proper scope and procedures to be followed in filing a salary petition). The salary petition is a mechanism intended "to provide an expedited process for resolving salary disputes in order to provide county officials quick relief and to protect taxpayers from unnecessary costs when gridlock occurs in the county budgeting process and a salary dispute is adjudicated . . . ." § 8–20–102(a).

Sheriff Doolen's salary petitions underscore the fact that once the County Commission denied his request for supplemental funding, Sheriff Doolen had recourse not with the County Mayor, not even with the County Commission, but only through the courts. In fact, Tennessee law takes the budget dispute out of the hands of the County Commission altogether at that point. § 8–20–102(d) ("After passing a county's budget pursuant to applicable budgeting laws, the applicable county commission, both as a body and as individual commissioners, do not have a further role in the budgeting process and do not have standing pursuant to this chapter."). In the context of a salary petition or salary suit, the statute required Sheriff Doolen to name the County Mayor as the party defendant. § 8–20–102 ("If a county official listed in § 8–20–101 files a petition pursuant to this chapter, the official shall name the county mayor as the party defendant in the petition.").

Even so, this procedural requirement does not somehow transform the county mayor into an "employer." In a salary suit, the county mayor simply represented county government in the court proceeding. Nothing in the statute vested the county mayor with the authority to provide the funding requested. Rather, a circuit court decides whether to "allow or disallow the application, either in whole or in part, and may approve the entire number of deputies or assistants applied for

16

or a lesser number and may approve the salaries set out in the application or reduced salaries, as the facts justify." § 8–20–102(c)(2). All of this to say, at no point in the budgeting or funding process did a County Mayor like Sain have the power to grant or deny correct compensation to Sheriff's Office employees or otherwise ensure that the Sheriff's Office or the County Commission were complying with the FLSA.

The remaining proof cited by Plaintiffs concerns bureaucratic disagreements between Doolen and Sain over budgets and personnel. In Doolen's view, Sain sometimes overstepped his authority and encroached on the Sheriff's prerogatives during Sain's tenure as County Mayor, for example, by reorganizing the County's dispatch services under the direction of a 911 board. But the evidence does not demonstrate that Sain's actions as County Mayor transformed him into an "employer" of the deputies and officers employed in the Sheriff's Office or the county official responsible for the Hardeman County Sheriff Office's compliance with the FLSA. In the final analysis, the responsible parties were Sheriff Doolen and the County Commission. Sheriff Doolen alone had the authority to control the work of employees like Plaintiffs, set their schedules and rates of pay, and even to approve overtime. The County Commission alone had the duty to fund a budget that would satisfy the FLSA's statutory requirements to pay for overtime. Sain had no authority to make personnel policy for the Sheriff's Office or decide whether the County Commission fully funded the Sheriff's obligation to pay correct amounts of overtime. Mayor Sain's role was limited to processing payroll in accordance with the county budget and issuing paychecks. The Court concludes then that Sain was not an "employer" for purposes of the FLSA.

## CONCLUSION

Defendant Sain is entitled to judgment as a matter of law on each of Plaintiffs' claims against him. Plaintiffs' claims against Sain in his official capacity and under Tennessee law are

dismissed based on Plaintiffs' waiver of their opposition to Sain's request for summary judgment on these points. The Court holds as a matter of law that Sain was not Plaintiffs' "employer" and therefore cannot be held individually liable for alleged violations of the FLSA. Defendant Sain's Motion for Summary Judgment is **GRANTED**.

    **IT IS SO ORDERED.**

                                    **s/ S. Thomas Anderson**
                                    S. THOMAS ANDERSON
                                    UNITED STATES DISTRICT JUDGE

                                    Date:  October 22, 2024.