**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK PERRY;** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 1:19-cv-01106-STA-cgc** |
| | ) | |
| **HARDEMAN COUNTY GOVERNMENT and** | ) | |
| **HARDEMENT COUNTY COMMISSION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES
AND COSTS
ORDER OF DISMISSAL**

Before the Court is Plaintiffs Patrick Perry *et al.*'s Motion for Attorney's Fees and Costs (ECF No. 543). Counsel for Plaintiffs seek an award of attorney's fees in the amount of $4,827,410.50, plus reimbursement of litigation costs and expenses in the amount of $46,480.98. Defendant Hardeman County has responded in opposition. Plaintiffs have filed a reply brief, Defendant a sur-reply, and Plaintiffs a sur-sur-reply. All told, the parties have submitted over 1,980 pages of briefing and exhibits on the attorney's fee issue. For the reasons set forth below, Plaintiffs' Motion is **GRANTED in part, DENIED in part**.

## BACKGROUND

This is an action for violations of the overtime pay, compensatory time, and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"). After years of protracted litigation, the parties have reached a series of out-of-court agreements to settle their dispute. The only issue remaining is whether Plaintiffs are entitled to an award of attorney's fees and costs.

## I. Procedural History

One of the main issues in contention, though certainly not the only one, is whether one side litigated the merits dispute in a way that needlessly prolonged and extended the proceedings. Plaintiffs assert that Defendant acted in bad faith and pursued a strategy of delay with the hope that Plaintiffs would accept a low-ball settlement or just drop their suit. Defendant answers that counsel for Plaintiffs, not Defendant, acted in bad faith and engaged in a course of delay for the purpose of increasing their fee award. Both sides have provided detailed recitations of the procedural history of the case and added their own characterizations about certain events from the case. The Court addresses the parties' arguments as part of its analysis of the fee issue.

The Court does not believe, however, it is necessary to resolve all of the parties' factual disagreements over how the case unfolded and what caused it to play out the way it did. In order to decide whether Plaintiffs are entitled to an award of attorney's fees and costs, the Court makes the following findings about the procedural history of the case.

### A. Plaintiffs' Initial Complaint for Violations of the FLSA

Plaintiffs, seven to be exact, filed their original Complaint on May 29, 2019, alleging various violations of the FLSA. The original Complaint named Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, and Hardeman County Mayor Jimmy Sain in his individual capacity as Defendants. Plaintiffs sought relief for themselves and on behalf of all other similarly situated employees of the Hardeman County Sheriff's Office.

From the outset, Plaintiffs' theory of the case was not a single, undifferentiated violation of the FLSA. Three Plaintiffs were investigators employed at the Hardeman County Sheriff's Office (Patrick Perry, Justin Bryant, and Cody Naylor), and three were sheriff's deputies (Chris Wilkerson, Michael Hatch, and Ethan Vasquez). Plaintiff Cheri Baker was a dispatcher employed

jointly by Hardeman County Government, the Hardeman County Sheriff's Office, the Hardeman County Emergency Communication District, and the City of Bolivar. As a dispatcher, Baker was subject to a 40-hour workweek. Compl. ¶ 129. All other Plaintiffs were considered law enforcement and therefore subject to a 43-hour workweek.[1] *Id.* All seven Plaintiffs alleged that Defendants had not paid them for all hours of overtime worked, had not correctly calculated their hourly rate of pay, and had altered timesheets submitted by Plaintiffs. *Id*. ¶¶ 97-101. All seven Plaintiffs alleged that they received compensatory time in lieu of overtime but that Defendants had not correctly calculated the amount of compensatory time which they were owed. *Id.* ¶¶ 105-112.

Beyond these two claims, the original Complaint alleged that Defendants violated the FLSA in a number of different ways at different times. For example, the investigators alleged they were misclassified as exempt employees and had never been properly paid for hundreds of hours of off-the-clock work. *Id.* ¶¶ 102-103. Two Plaintiffs, Chris Wilkerson and Michael Hatch, resigned their positions with Hardeman County in 2018. *Id*. ¶¶ 71, 82, 119. According to Wilkerson and Hatch, Defendants failed to pay them for all compensatory time, vacation time, and holiday time they were owed at the time of their resignations. *Id.* ¶¶ 117-122. The other five Plaintiffs alleged Defendants adopted a new work week in January 2019, at which time Defendants began to miscalculate Plaintiffs' pay. *Id.* ¶¶ 113-116. Finally, Deputy Ethan Vasquez alleged that Defendants did not properly pay him for time he spent traveling to perform duties in the National Guard in violation of Tenn. Code Ann.§ 8–33–101 *et seq. Id.* ¶¶ 123-28.

---

[1] Defendants later sought judgment as a matter of law on the 43-hour work week adopted for Hardeman County employees classified as law enforcement. *See* Defs.' Mot. for Summ. J. July 21, 2023 (ECF No. 308). Plaintiffs responded in opposition to that point, even though the Complaint contained the allegations about the department's 43-hours workweek. Before the Court had issued a ruling, Defendants withdrew their motion for summary judgment.

After an initial scheduling conference on September 24, 2019, the Court adopted the case management plan proposed by the parties and entered a Rule 16(b) Scheduling Order (ECF No. 25). Among other things, the Scheduling Order set November 20, 2019, as the deadline to add parties and amend the pleadings, and a discovery cut-off of May 29, 2020. Working from the pretrial deadlines adopted in the initial Scheduling Order (ECF No. 25), the Court set a jury trial for November 30, 2020.

### B. Plaintiffs' First Amended Complaint

The case quickly grew to involve a much larger group of named parties, Plaintiffs and Defendants, and even more claims than those alleged by the seven original Plaintiffs. Just after the entry of the Scheduling Order, Plaintiffs filed a motion for leave to amend their pleadings (ECF No. 27). Plaintiffs requested leave of court to file an amended complaint naming 22 new Plaintiffs, all of them employees of the Hardeman County Sheriff's Office. The Court would highlight the fact that no Defendant opposed Plaintiffs' motion to amend, even though the proposed amendment greatly increased the number of parties and the kind of FLSA violations Plaintiffs alleged. In the absence of any reason to deny the request, the Court granted the motion to amend, and Plaintiffs filed an Amended Complaint (ECF No. 29) on October 11, 2019.

The Amended Complaint named 21 deputies, seven dispatchers, and one jailer as Plaintiffs. Plaintiffs also alleged claims against new Defendants. The Amended Complaint continued to name as Defendants Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, and Mayor Sain in his individual capacity. But Plaintiffs also named as Defendants Mayor Sain in his official capacity, Sheriff John Doolen in his individual and official capacities, the City of Bolivar, the Hardeman County Emergency Communications District ("the

District"), and Jerry McCord in his individual capacity and in his official capacity as Chairman of the District.[2]

The Amended Complaint also greatly expanded Plaintiffs' allegations about each of the "specific mechanisms" by which Defendants had violated the FLSA. Am. Compl. ¶ 132 (ECF No. 29). First, Plaintiffs alleged Defendants arbitrarily changed deputies, dispatchers, and jailers from hourly employees to salaried employees in March 2019, even though none of them were exempt from the FLSA's overtime requirements, and by doing so, failed to pay these employees for all hours worked. *Id.* ¶¶ 133-153. Plaintiffs next alleged that prior to 2019 Defendants scheduled dispatchers and jailers to work 48 hours one week and 36 hours the following week, without paying overtime for hours worked during the 48-hour workweeks. *Id.* ¶¶ 154-175 (dispatchers), ¶¶ 176-190 (jailers). The Amended Complaint also restated Plaintiffs' allegations about Defendants' failure to pay all compensatory, vacation, and holiday pay due upon an employee's resignation. *Id.* ¶¶ 191-217.

In one of its new theories of relief, the Amended Complaint went on to allege that Defendants had failed to pay deputies who worked the second or third shift for time spent attending annual in-service training. For those deputies, who were not identified in the Amended Complaint, Defendants required them to work their regular shift and then attend eight hours of in-service training, meaning those deputies worked a total of 80 hours for that week without any overtime pay. *Id.* ¶¶ 218-230. Finally, Plaintiffs expounded on their allegations of off-the-clock work and

---

[2] The Court quickly dismissed the claims against most of the Defendants named for the first time in the Amended Complaint. Order Granting McCord's Mot. to Dismiss, Jan. 15, 2020 (ECF No. 54); Order Granting the District's Mot. for Summ. J., Apr. 6, 2020 (ECF No. 72); Order Granting City of Bolivar's Mot. for Summ. J., May 11, 2020 (ECF No. 87).

realleged their claim about Defendants' failure to pay Deputy Vasquez for his travel time to National Guard duty.

From that very early stage of the case then and before Plaintiffs had even sought the conditional certification of a collective action, Plaintiffs' Amended Complaint had presented a complex FLSA dispute.

**C. Conditional Certification of the FLSA Collective Action**

Against the backdrop of these pleadings, Plaintiffs filed a motion to conditionally certify the case as an FLSA collective action (ECF No. 66) on March 3, 2020. Plaintiffs identified the following category of Hardeman County employees as persons similarly situated to Plaintiffs:

> All persons who have worked for Hardeman County Government as a sheriff deputy, jailer or dispatcher at any time in the three years prior to the filing of the complaint in this case and were required to work a 48-hour week without compensation at the rate of time and one half for all hours worked over 40 in a work week. Those who have had their overtime incorrectly calculated, who have not been paid for overtime worked, who have worked off the clock without being paid, those who were required to attend pre-shift and post-shift briefings without being paid, and those who were not paid their accrued compensatory, holiday and vacation time that [sic] time of termination of employment.

Conditional certification of such a sprawling collective of different Plaintiffs working in different jobs and with different theories of Defendants' FLSA liability raised a number of case management concerns. In fact, Defendants initially opposed (ECF No. 101) conditional certification. However, when the parties appeared before the United States Magistrate Judge for a hearing on the motion, Defendants withdrew their opposition. Minute Entry, June 26, 2020 (ECF No. 104).

In the absence of opposition from the defense, the Magistrate Judge entered a written order granting Plaintiffs' motion for conditional certification on June 30, 2020. In her order, the Magistrate Judge expressed her concerns with the parties about the scope of the putative collective action and stated that Plaintiffs should "provide a more definite statement of the classes and

subclasses to be included" in the collective action and submit a proposal for "classes and subclasses." Order Granting Pls.' Mot. to Certify 2, June 30, 2020 (ECF No. 106).

On August 14, 2020, the parties submitted a joint proposal (ECF No. 110), defining eight "sub-classes" of Hardeman County employees: (1) those who did not receive correct overtime pay (all Plaintiffs); (2) all deputies, dispatchers, and jailers who did not receive pay for pre-shift briefings starting May 29, 2016; (3) all employees who had not received proper accrued compensatory, vacation, and holiday time upon their termination after October 2018; (4) dispatchers and jailers who had worked 48-hour workweeks each pay period without overtime starting in March 2019; (5) all deputies who were changed from hourly to salaried employees and had not been paid for 3 hours during those weeks starting in March 2019; (6) deputies and jailers who had not been paid for off the clock work starting in May 29, 2016; (7) all employees who were not paid correctly between October 1, 2016, and July 31, 2017; and (8) all deputies who did not receive overtime pay for in-service training.  Even though the parties submitted this proposal for classes and sub-classes, no further action was taken to adopt the proposal.

### D. Consolidation and Plaintiffs' Master Complaint

Even after obtaining conditional certification, Plaintiffs were still not finished framing the pleadings. Prior to the Magistrate Judge's conditional certification order, Plaintiffs filed two motions to amend their pleadings and add more claims, essentially supplemental claims concerning conduct occurring since they had filed the Amended Complaint. The Court denied the requests, coming as they did after the deadline for amending the pleadings.

Having had no success in amending their pleadings and adding new parties to their existing collective action, some Plaintiffs and other Hardeman County employees who were not already parties in *Perry* filed two separate suits of their own.  In a Complaint dated June 9, 2021, and

docketed as civil action no. 1:21-cv-01087 ("the *Allen* case"), Brandon Allen, Cheri Baker, Justin Bryant, Jenny Duke, Crystal Ervin, Lauren Hampton, Jackie Kelley, Pearlie Long, Martha Lowrance, Cody Naylor, Patrick D. Perry, Toni Pierce, Cathie Sprayberry, Martha Jane Vickers, and Alisha Young alleged violations of the FLSA and claims under state law against Hardeman County and Jimmy Sain in his individual capacity and in his official capacity as Mayor of Hardeman County. And in a separate Complaint dated June 28, 2021, and docketed as civil action no. 1:21-cv-01098 ("the *Luttrell* case"), Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry alleged more FLSA violations and claims under state law against Hardeman County and Mayor Sain.

Before the Court could set scheduling conferences in either of the new cases, the parties in *Perry* and the parties in *Allen* filed joint motions to consolidate the three actions. Consolidation meant even more Plaintiffs joining the already large *Perry* matter. Even so, Defendants did not oppose consolidation and actually joined in Plaintiffs' request to bring all claims into *Perry*. The Court therefore granted the parties' joint motions and consolidated cases 1:21-cv-01087 and 1:21-cv-01098 with *Perry* for all further proceedings. The Court also granted Plaintiffs in all three cases leave to file a single "Master Complaint" to set forth all of the allegations made in the three cases in a single pleading. Upon the filing of the Master Complaint (ECF No. 228) in *Perry* on December 1, 2021, the Court subsequently dismissed cases *Allen* and *Luttrell*, finding that the claims in each of the companion cases were redundant to the claims asserted in the Master Complaint.

The Master Complaint named 67 current and former employees of Hardeman County as Plaintiffs and Hardeman County Government, the Hardeman County Commission, the Hardeman County Sheriff's Office, Mayor Sain (in both an individual and official capacity), and Hardeman

County Sheriff John Doolen as Defendants.[3]  Master Compl. ¶ 6.  The Master Complaint alleged on behalf of all Plaintiffs (deputies, dispatchers, and jailers) FLSA claims for unpaid overtime based on Mayor Sain's decision to convert all Plaintiffs from hourly pay to salary in March 2019. *Id.* ¶¶ 91-114.  With respect to deputies only, the Master Complaint alleged that the Hardeman County Sheriff's Office required deputies to work off the clock to complete paperwork before leaving for the day.  *Id.* ¶¶ 115-122.  With respect to investigators (four Plaintiffs), the Master Complaint alleged that investigators routinely worked off the clock without proper overtime pay. *Id.* ¶¶ 123-136.   With respect to deputies who worked the second or third shifts, the deputies did not receive overtime pay for time spent on annual in-service training, one week during the year when the deputies attended mandatory training for eight hours and worked their regular 8-hour shifts.  *Id.* ¶¶ 137-151.

The Master Complaint also included FLSA violations that denied overtime pay to dispatchers and jailers.  The Master Complaint alleged two types of violations affecting these groups of employees and in largely similar ways.  First, Plaintiffs restated certain allegations about dispatchers and jailers who were regularly scheduled to work 48 hours per week and did not receive overtime pay.  *Id.* ¶¶ 167-177 (dispatchers); *id.* ¶¶ 184-191 (jailers).  Defendants also required dispatchers to be at their posts 15 minutes before their shift began and jailers to be at their posts 15 to 30 minutes prior to a shift change but without paying these employees for their pre-shift time. *Id.* ¶¶ 178-183 (dispatchers); *id.* ¶¶ 192-197 (jailers).

---

[3] The Court later dismissed the claims against former Mayor Sain, Sheriff Doolen, and the Hardeman County Sheriff's Office.  Order Granting Sain's Mot. for Summ. J., Oct. 22, 2024 (ECF No. 495); Consent Order Dismissing Sheriff John Doolen in his Individ. Cap. & the Hardeman Cnty. Sheriff's Office, July 12, 2024 (ECF No. 427).

Beyond the policies affecting whole categories of employees, the Master Complaint also restated allegations from the previous pleadings about other FLSA violations. Defendants had miscalculated accrued compensatory, vacation, and holiday time for employees and thereby denied employees, 17 Plaintiffs in all, who had resigned their jobs the full amount of pay they were owed at the time their employment with Hardeman County ended. *Id.* ¶¶ 198-221.[4] The Master Complaint also made allegations specific to the Plaintiffs in case no. 1:21-cv-01087 and only for certain pay periods in 2021. According to the Master Complaint, Jonathan Luttrell, Brandon Allen, Joshua Allen, Justin Bryant, Jeff Hill, Deitrick Mason, and Patrick Perry, did not receive correct pay for overtime they worked during the period between May 21, 2021, and June 18, 2021. *Id.* ¶¶ 152-166. In its longest series of factual allegations, the Master Complaint alleged that Mayor Sain had retaliated against several Plaintiffs over their participation in this litigation. *Id.* ¶¶ 222-296. The Master Complaint finally restated the allegations about Defendants improperly denying Deputy Ethan Vasquez pay for his time spent traveling for military duty with the National Guard in January 2019. *Id.* ¶¶ 297-303.

**E. Discovery**

The filing of Plaintiffs' Master Complaint finally brought a close to the pleadings, two years after the Court had entered an initial case management order and the parties had begun discovery. Discovery in any FLSA collective action with scores of Plaintiffs alleging so many different theories of relief would require an unusually long time. But the discovery phase from October 2019 (when the Court entered the first Scheduling Order) to December 2021 (when Plaintiffs filed the Master Complaint) mostly coincided with a global pandemic and a declared state of national emergency. This had an impact on the parties' ability to prepare the case for trial.

---

[4] Eventually, all but a handful of Plaintiffs resigned their positions with Hardeman County.

For example, when counsel for one Defendant was exposed to COVID-19 and had to quarantine, the parties were forced to continue a raft of depositions and eventually ask the Court to consider the entry of a whole new case management plan. The Court granted that request and entered a Revised Scheduling Order (ECF No. 163) on January 26, 2021. The new case management plan required new deadlines for ADR, completing discovery, and filing dispositive motions, all of which meant a continuance of the trial date.

And this was not a one-time occurrence. Even as pandemic conditions eased, the Court would continue to repeat this exercise at other junctures of the case, finding that the case's complexity and the number of outstanding discovery issues necessitated extensions of time to prepare for trial. The Court finds it unnecessary to review each of the depositions noticed by the parties, the modifications to the discovery deadlines granted by the Court, or the motion practice over discovery disputes. All told, the Court reset the trial date six different times before the parties had largely completed fact discovery and were prepared to file dispositive motions.[5] Suffice it to say, discovery was extended and complex.

The Court also began to hold regular status conferences with counsel for the parties to better manage the pretrial phase of the case. *E.g.* Minute Entry, Aug. 11, 2022 (ECF No. 257); Minute Entry, Nov. 17, 2022 (ECF No. 287); Minute Entry Apr. 10, 2023 (ECF No. 292); Minute Entry, June 8, 2023 (ECF No. 299); Minute Entry, Sept. 25, 2023 (ECF No. 327); Minute Entry, Feb. 20, 2024 (ECF No. 351); Minute Entry, Apr. 3, 2024 (ECF No. 366). The status conferences advanced the case, culminating in dispositive motion practice to sharpen the issues for trial.

### F. Defendants' Motion for Decertification

---

[5] Even after the case had reached the dispositive motions stage, the parties were still dealing with a number of challenges related to Hardeman County's production of personnel records and the opinion testimony of its damages expert Dawn Farias.

This included Defendants' request to decertify the conditionally certified collective action. Defendants sought the complete decertification of the case, which would have resulted in the dismissal of the claims of all opt-in Plaintiffs and separate trials for each individual Plaintiff's claims. The Court found that Plaintiffs had not shown why the Court should certify all claims for collective action in a single class and as part of a single proceeding. And the Court found that Plaintiffs had not carried their burden to show why collective treatment for all members of the proposed subclasses or all claims alleged by the proposed subclasses was warranted.

But rather than decertify the action in full, the Court granted partial decertification as to some claims and some Plaintiffs but then certified for collective action the claims of other subclasses of Plaintiffs. Specifically, the Court held that certain Plaintiffs shared common theories of Defendants' FLSA liability and therefore had carried their burden for certification as subclasses: dispatchers (13 members), patrol deputies (25), correctional officers (38), correctional officer sergeants (4), and former employees who alleged they did not receive pay for their accrued comp time. The Court also gave the parties additional time to consider how best to handle the claims the Court had not certified for collective action, short of dismissing the claims and requiring each Plaintiff with dismissed claims to file a whole new lawsuit. Plaintiffs elected to nonsuit the claims alleged by the individual Plaintiffs who were not included in the subclasses certified for collective action. *See* Order of Partial Dismissal Without Prejudice, Sept. 9, 2024 (ECF No. 438).

### G. Mediations

Consistent with the Court's plan for alternative dispute resolution, the parties engaged in multiple rounds of mediation in an effort to resolve their dispute. The initial Scheduling Order (ECF No. 25) required the parties to complete ADR by January 31, 2020, and file a status report within seven days. When the first mediation deadline came and went, the parties reported that

they had yet to schedule mediation due in part to the number of new parties and claims added to the case in Plaintiffs' Amended Complaint. The Court granted the parties' request to have more time for mediation. Over the next year, the parties engaged in discovery and continued to ask for more time to complete mediation.

Then, two years into the case, Hardeman County made a request to be relieved of the ADR requirement altogether (ECF No. 207, filed Sept. 15, 2021). For cause, the County stated that counsel for Plaintiffs William C. Sessions, III had made a comment to Attorney Laura Martin, one of Defendant's former lawyers. According to a declaration from Martin (ECF No. 207-1), Mr. Sessions commented on the prospects of settling the case at mediation and remarked that settlement was unlikely because he expected to recoup a significant attorney's fee in the case. The Court did not find that Mr. Sessions' remark justified excusing the parties from the mediation requirement.

While the Court denied Defendant's request for relief from the ADR requirement, the Court did refer the case to the Magistrate Judge for a settlement conference. The Magistrate Judge set aside four days in January 2022 for mediation, one day devoted to mediate the claims of each category of employee. Minute Entry, Jan. 7, 2022 (ECF No. 232). Despite that herculean effort, the case did not settle.

The parties returned to the negotiating table over a year later in February 2023. According to a status report (ECF No. 290) filed March 3, 2023, the parties had participated in several days of mediation with private mediator Michael Russell. At the conclusion of their formal mediation, Mr. Russell had presented the parties with his own mediator's suggestion. The parties had taken the mediator's suggestion under advisement and were awaiting approval from the Hardeman County Commission. As it turned out, Plaintiffs had actually agreed to settle all claims (back

13

wages, liquidated damages, and accrued time for former employees; back wages and liquidated damages for current employees; and the claims of 15 Plaintiffs for retaliation), excluding attorney's fees and costs, for the sum of $2,999,999.00. The vote of the County Commission on March 21, 2023, fell one vote short of approval.

Even though tentative settlement did not ripen into a final settlement, the parties returned to mediation two more times. At a status conference on September 25, 2023, the parties agreed to mediate, mainly at the urging of Stephen Hale, counsel for Sheriff Doolen. So on December 12, 2023, the parties engaged in mediation once again, this time with mediator Steve Shields and with several Hardeman County Commissioners in attendance. The December 2023 mediation was not successful in reaching a settlement. And the parties went back to mediation in June 2024, this time with mediator John Houseal, after the Court's decertification ruling and one last time before proceeding to trial on the collective claims of each subclass. The June 2024 did not result in a settlement, either. However, the parties reached a settlement on the claims of the dispatcher subclass soon thereafter.

### H. Out-of-Court Settlements of the Dispatch Subclass and then the Entire Case

The decertification decision left open the question of trial procedure. At the time of the Court's decertification ruling, a jury trial was set for June 2024. Instead of trying the subclasses together with one jury, the Court elected to set separate trials for each subclass. The Court designated the subclass of dispatchers as the first subclass to be tried and set the trial to begin August 26, 2024. The week prior to the trial on the dispatchers' claims, counsel for Defendants notified the Court that the parties had reached a settlement of the dispatchers' claims. The Hardeman County Commission subsequently gave its approval to the settlement at a special called meeting on August 24, 2024.

At the same meeting, Commissioner Jackie Sain, the brother of Defendant Jimmy Sain, also proposed that the County offer each of the remaining Plaintiffs in the case a cash amount representing half of their most recent demand to settle their claims, a demand based on calculations made by counsel for Plaintiffs. Commissioner Sain suggested that any Plaintiff could accept the individual offer of settlement but only if the Plaintiff was no longer represented by counsel. The Commission apparently voted to adopt Commissioner Sain's motion to make this offer to Plaintiffs.

According to counsel for Plaintiffs, Commissioner Sain had begun to contact individual Plaintiffs to make this offer, even before he had proposed it to the Commission. Plaintiffs ended up filing a motion for sanctions (ECF No. 439) and argued that the Commission's proposal was unethical and that counsel for the County had an ethical duty to advise the Commission against such an approach. Even so, the County apparently followed through on its offer, and many Plaintiffs accepted. Over the following weeks, counsel for Plaintiffs filed 18 motions to withdraw from further representation of the following Plaintiffs: David Nabors (ECF No. 448), Ashley Banks (ECF No. 449), Lindsey Bolton (ECF No. 450), Logan Howell (ECF No. 470), Ethan Howell (ECF No. 471), Brandon Allen (ECF No. 507), Chris Hannis (ECF No. 508), Chadriques Wooden (ECF No. 509), Cody Naylor (ECF No. 510), Ethan Vasquez (ECF No. 511), Gina Pittman (ECF No. 512), James Graham (ECF No. 514), Wesley Estes (ECF No. 515), Brian Vandiver (ECF No. 516), Trina Smith (ECF No. 517), Tommie Woods (ECF No. 518), Jason McCord (ECF No. 519), and Judy Wiggins (ECF No. 520). Proceeding *pro se*, these Plaintiffs

have since reached individual settlements with the County and obtained court approval for the terms of their settlements.[6]

Meanwhile, the parties reached another settlement of certain Plaintiffs' claims of retaliation brought under the FLSA and Tenn. Code Ann. § 50–2–103.  The Court approved that settlement and then went on to grant Mayor Sain's motion for summary judgment on the last of the claims against him.  Order Granting Jt. Mot. to Approve Settlement, Sept. 25, 2024 (ECF No. 462).  The Court also proceeded to set the next trial, this one on the claims of the subclass of patrol deputies, to begin October 21, 2024, which was later reset to November 18, 2024. The week before that trial, the parties filed a joint notice of settlement (ECF No. 521) and reported that they had reached an agreement to settle the case in whole.

The parties though were unable to agree on the terms of a written settlement agreement, causing Defendant to file a motion to enforce settlement (ECF No. 530).  In granting in part the motion to enforce, the Court held that the parties had a meeting of the minds as to the following material terms: (1) Hardeman County would pay $250,000.00 in settlement of the dispatchers' claims and the remaining Plaintiffs the lump sum of $1,750,000.00; (2) the monetary settlement resolved the unpaid overtime and liquidated damages claims of all Plaintiffs still represented by the Sessions Firm; (3) the monetary settlement resolved the leave-bank claims of all Plaintiffs who no longer worked for Hardeman County, Tennessee; (4) the settlement did not include attorney's fees, costs, or expenses; and (5) the parties would work with Sheriff Doolen to correct the accrued

---

[6] Order Granting Motion to Approve *Pro Se* Settlement David Nabors (ECF No. 489), Ashley D. Banks (ECF No. 490), Lindsey A. Bolton (ECF No. 491), Judy Wiggins (ECF No. 548), Brian Vandiver (ECF No. 561), Jason McCord (ECF No. 562), Brandon Allen (ECF No. 563), Chad Wooden (ECF No. 564), Wesley Estes, (ECF No. 565), Gina Pittman (ECF No. 566), James Graham (ECF No. 567), Cody Naylor (ECF No. 568), Tommie Woods (ECF No. 569), Trina Smith (ECF No. 570), Logan Howell (ECF No. 571), Ethan Howell (ECF No. 572), Ethan Vasquez (ECF No. 574).

leave balances of Plaintiffs who still work for the County and to resolve the leave balance issue within six months of the court approving the settlement by entry of its order.  Order Granting in Part, Denying in Part Defs.' Second Mot. to Enforce Settlement, Feb. 27, 2025 (ECF No. 534).

## II. Plaintiffs' Motion for Attorney's Fees and Costs

Plaintiffs' Motion for Attorney's Fees and Costs followed the Court's order enforcing the parties' agreement to settle their dispute.  Plaintiffs argue that as the prevailing parties, the FLSA entitles them to a mandatory award of attorney's fees.  First, Plaintiffs assert they are the prevailing party in the case.  Plaintiffs take the position they have received a full recovery on all claims, including the claims the Court had not certified for collective action and the claims of the Plaintiffs who parted ways with the Sessions Firms and accepted their own settlements.  Counsel argue that they are entitled to an award of fees for time they devoted to the cases of the *pro se* Plaintiffs before those Plaintiffs decided to represent themselves.  Adding in the value of the settlements with the value of the settlements the *pro se* Plaintiffs received, Plaintiffs collectively recovered over $2.6 million.  Plaintiffs argue then that they are undoubtedly the prevailing parties for purposes of a fee award.

Plaintiffs next argue the fees requested are reasonable.  Plaintiffs believe the Court should apply the lodestar method for calculating a reasonable attorney's fee.  Plaintiffs have shown through the declaration of lead counsel, Mr. Sessions, that five attorneys in all provided legal services to represent Plaintiffs in this matter and devoted a total of 14,290.40 hours to the case.  Of the five attorneys who have worked for Plaintiffs, Mr. Sessions worked 7,542.60 hours: 5,077 hours worked at an hourly rate of $400.00 and 2,465.60 hours later in the case at the rate of $440.00

per hour.  Under the lodestar method, Mr. Sessions claims a fee of $3,140,320.00.[7]  Co-counsel
Frances Hildebrand Sessions worked a total of 6,082.20 hours with 4,183.70 hours worked at an
hourly rate of $250.00 and 1,898.50 hours worked later in the case at the rate of $300.00 per hour.
The lodestar calculation yields a fee award for Mrs. Sessions of $1,615,475.00.  The other three
attorneys, James King ($5,120.00 based on 12.80 hours @ $400.00/hour), Eric Lindquester
($1,010.50 based on 4.30 hours @ $235.00/hour), and Louis Montesi ($65,450.00 based on 648.50
hours @ $100.00/hour) performed the balance of the work for which Plaintiffs request an award
of fees.  Plaintiffs seek a sum of $4,827,410.50 in attorney's fees.

Plaintiffs also argue that each attorney's hourly rates and total hours billed are reasonable.
Plaintiffs cite the complexity and duration of the case and Mr. Sessions' experience in labor and
employment matters.  Mr. Sessions' hourly rates are consistent with the rates charged by attorneys
with labor and employment practices and similar experience in the community. Furthermore, the
case reasonably required thousands of hours of preparation.  Plaintiffs emphasize that counsel had
to review employee timesheets and other personnel records covering years of county employment
for over 80 Plaintiffs.  For its part, the County would release records in batches and continued to
do so even after the discovery deadline.  Each time the County produced more records, counsel
had to review them, compare them to what earlier productions had shown, and then update his
damages calculations.  And counsel for Plaintiffs took the case on a contingency basis, meaning
they ran the risk of receiving no fee at all.

---

[7] Plaintiffs opening brief states in one place that Mr. Sessions' current hourly rate is
$450.00 per hour, *see* Mem. in Support 19, and in another part of the brief that his current rate is
$440.00 per hour.  *Id*. at 20, n.19.  Plaintiffs' Motion calculates the dollar amount of Mr. Sessions'
fee using the hourly rate of $450.00, and not $440.00.  Because Mr. Sessions' sworn declaration
indicates that his current rate is $440.00 per hour, the Court will apply that rate to Plaintiffs' request
for fees.

Lastly, Plaintiffs request an award of costs in the amount of $46,480.98.  Plaintiffs argue that FLSA jurisprudence entitles them to their costs, both those allowed under 28 U.S.C. § 1920 and Rule 54(d) as well as other out-of-pocket litigation expenses.  So Plaintiffs' recoverable costs include filing fees, court reporter fees, mediation fees, and meals and travel for counsel.

Hardeman County has responded in opposition to Plaintiffs' request and argues that the Court should award counsel no fees at all or in the alternative drastically reduce the award.  The County primarily argues that Mr. Sessions unreasonably extended the case through his settlement demands. Defendant has provided a table of various settlement demands made by Mr. Sessions in the months following the failed settlement in March 2023.  The County argues that the timeline shows Mr. Sessions asked for amounts far greater than the amount for which the parties eventually settled the dispute. According to Hardeman County, Mr. Sessions engaged in this course of conduct without any legal justification and only in an effort to increase his fees.  The County argues that Mr. Sessions' tactic of making demands for higher amounts to settle the case is evidence of Mr. Sessions' lack of seriousness in reaching a settlement.

Next, Defendant cites two different periods of time when Mr. Sessions stated in filings with the Court that he needed more time to prepare.  His billing records now show that he claims hundreds of hours of time for these same periods.  Mr. Sessions also billed large amounts of time that would never be billed to a client like 2,000 hours for answering discovery or 560 hours preparing for mediation.  Mr. Sessions' billing also include unusually large single time entries for performing tasks such as 30 hours for a phone call or 70 hours for drafting an amended pleading.

Defendant also objects to other categories of time.  Mr. Sessions represented members of the Southern States Police Benefit Association ("the SSPBA") pursuant to a contract with the SSPBA to provide legal counsel and representation to members of the organization.  As part of the

contract, Mr. Sessions agreed to accept $350.00 per hour. But in his fee petition, Mr. Sessions seeks $400.00 to $450.00 per hour. Mr. Sessions billed the SSPBA for paralegal time but seeks fees at an attorney's rate in his fee petition. The fee petition also includes time Mr. Sessions already billed the SSPBA for, except Mr. Sessions included larger amounts of time in his fee petition than he did in his bills to the SSPBA. The County also argues that Mr. Sessions should not be allowed to recover time he spent consulting with other lawyers about matters with little or no relevance to the case, time he spent speaking with the media about the case, time spent on probate matters for the family members of Plaintiffs who died, or time devoted to frivolous motions and claims without any legal merit. And Mr. and Mrs. Sessions appear to double bill for many tasks on several different occasions.

As for the costs Plaintiffs seek, Defendant contends that Plaintiffs cannot recover all meals, only meals related to trial or depositions. Plaintiffs are also not entitled to costs for $218 in external hard drives purchased by counsel or a late cancellation fee for the postponement of the deposition of Defendant's expert. The County further opposes a payment of interest for the court reporter fees Mr. Sessions has not yet paid or paying Plaintiffs' share of the Mr. Russell's mediator fee.

The remainder of the parties' briefing focuses on their competing versions of how the other side's conduct unnecessarily delayed the resolution of the case. Plaintiffs describe Defendant's response brief as "intellectually dishonest" and misleading. For example, Plaintiffs point out that when Defendant refers to counsel's requests for more time due to his workload, Defendant failed to note that one of the motions it referred to was filed in another FLSA case against Hardeman County. When Mr. Sessions stated in the *Carnell* case he needed more time due to his workload, the workload to which he referred was his work in *Perry*. Concerning Mr. Sessions' bills to SSPBA, Mr. Sessions admits that he billed the organization for less time than he included on his

20

time records.  Mr. Sessions explains he could only bill the organization for time he spent working for members of the organization.  And Plaintiffs argue that Defendant was responsible for delaying a final resolution of the case and should not be heard now to criticize the amount of time Mr. Sessions had to spend on the case.  If Defendant had believed Mr. Sessions was drawing the case out, Defendant could have made an offer of judgment.

Under the somewhat unusual circumstances of the case, the Court granted Hardeman County leave to file a sur-reply and Plaintiffs leave to file a sur-sur-reply.  In both the sur-reply and sur-sur-reply, the parties by and large continue to argue their factual disputes about the course of the litigation.  Defendant argues for the first time that Mr. Sessions had impermissibly submitted block billing for many tasks.

## STANDARD OF REVIEW

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  An award of attorney's fees and costs are therefore mandatory under the FLSA. *Kritcher v. Prudential Security, Inc.*, 799 F. App'x 376, 378 (6th Cir. 2020) (citing *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)).  "The ultimate amount" of fees and costs awarded is nevertheless a matter of the judge's discretion and must be reasonable. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). "[A] court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

"The most critical factor governing the reasonableness of a fee award is the degree of success obtained." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013) (quoting

*Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (cleaned up)).  Where "a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'" *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 370 (6th Cir. 2014) (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005)).  On the other hand, "where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (quoting *Hensley*, 461 U.S. at 435).

"The applicant for attorney fees has the burden of demonstrating the reasonableness of hours, and the opposing party has the burden of producing evidence against this reasonableness." *Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co.*, No. 2:01-cv-02133, 2003 WL 223082, at *4 (W.D. Tenn. Jan. 28, 2003) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As far as a methodology of calculation, the Supreme Court has held that "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . . case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citation omitted).  Furthermore, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id*. (citations omitted).

In the final analysis, the determination of a fee award "should not result in a second major litigation." *Hensley,* 461 U.S. at 437. As the Supreme Court has explained, "courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an

attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 494 (6th Cir. 2014) (rejecting "mathematical precision" as the standard for an award of attorney's fees).

## ANALYSIS

The issue presented is the reasonable amount of attorney's fees and costs to which Plaintiffs are entitled as the prevailing parties on their FLSA claims. As an initial matter, the Court finds that counsel for Plaintiffs are entitled to an award of attorney's fees, despite Defendant's argument that the Court should reject the Motion outright. Section 216(b) requires an award of "costs" including attorney's fees "in addition to any judgment awarded to the plaintiff or plaintiffs" in the case. Plaintiffs easily meet the definition of a prevailing party. For purposes of the FLSA, a "prevailing party" is "a party who succeeds on *any* significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Monroe v. FTS USA, LLC*, 17 F.4th 664, 672 (6th Cir. 2021) (quoting *Hensley*, 461 U.S. at 433) (emphasis in original). The only real question is what amount of attorney's fees is reasonable under the lodestar method. The lodestar calculation requires the Court to determine a reasonable hourly rate for counsel's time and then multiply the rate by the reasonable number of hours counsel worked on the case.

### I. Reasonable Hourly Rates

The Court first finds that counsel's hourly rates are reasonable. In order to determine a reasonable hourly rate, "courts use as a guideline the prevailing market rate . . . that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498–99 (6th Cir 2011) (citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007)). Here, counsel has shown that Mr. Sessions employed two different hourly rates, $400 from the beginning of the

case through the end of 2023 and then $440 since 2024.  Sessions Decl. ¶ 13.  Mrs. Sessions'

worked at $250 per hour from the start of the case through the end of 2023 and then $300 thereafter.

*Id*. ¶ 14.  And at the time each of them associated with the Sessions, co-counsel James King worked

at $400.00 per hour, Eric Lindquester at $235.00 per hour, and Louis Montesi at $100.00 per hour.

The County raises one objection only as to Mr. Sessions' hourly rates.  According to

Defendant, Mr. Sessions charged the SSPBA a contractual rate of $350.00 an hour and agreed in

the contract that "a minimum hourly attorney fee of $350.00 [sic] hourly is a fair and reasonable

fee for work to be performed by" Mr. Sessions on behalf of SSPBA members in the case.  SSPBA

Agr. § 2 (ECF No. 595).  Defendant argues then that the Court should cap Mr. Sessions' hourly

rate at $350.  The Court does not find the County's argument to be convincing.

The Supreme Court has "adopted the lodestar approach as the centerpiece of attorney's fee

awards."  *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).  In the context of the fee-shifting

provisions of 42 U.S.C. § 1988, the Supreme Court has held that a prevailing a party is entitled to

its reasonable attorney's fees calculated under the lodestar method even if the party is represented

by a non-profit legal services organization that agreed to charge no fee, *Blum*, 465 U.S. at 888, and

even if the party had a contract for a contingency fee. *Blanchard*, 489 U.S. at 94.  The Sixth Circuit

has held, albeit in an unpublished table decision, that an hourly rate in a contract for legal services

"may be probative of the fair market value of these services," but "it certainly is not dispositive."

*Jackson v. Roeman Real Estate Co., Inc.*, Nos. 85-2142, 3143, 1986 WL 16655, at *3 (6th Cir.

Mar. 5, 1986).

The Court finds this authority persuasive even if it does not control the question outright.

Mr. Sessions' contractual hourly rate of $350.00 is not irrelevant to the question of what rate is

reasonable. But as the contract itself states it, the contractual hourly rate is a "minimum."

Furthermore, Plaintiffs have shown through competent proof that an hourly rate of $400.00, and later in the case $440.00, is reasonable for the type of legal services Mr. Sessions rendered and for lawyers of similar experience in wage and hour cases practicing in the Western District of Tennessee. Ryan Decl., Apr. 25, 2025 (ECF No. 543-6); King Decl., Apr. 28, 2025 (ECF No. 543-7). Defendant has not shown then why the contractual rate Mr. Sessions received from SSPBA should determine his reasonable hourly rate.

The Court concludes that the following hourly rates are reasonable and commensurate with the hourly rates charged by counsel with similar experience in wage and hour cases in the Western District of Tennessee: Mr. Sessions $400 (through 2023) and $440 (from 2024 to the present); Mrs. Sessions $250 (through 2023) and $300 (from 2024 to the present); James King $400; Eric Lindquester $235; and Louis Montesi $100.

## II. Reasonableness of Counsel's Hours

The Court now considers the reasonable amount of time counsel devoted to their representation of Plaintiffs. Plaintiffs have shown through Mr. Sessions' declaration that their lawyers spent 14,290.40 hours on the case. The bulk of the attorney time is attributable to Mr. Sessions who worked 7,542.60 hours or over 52.77% of the total billable time. Mrs. Sessions worked 6,082.20 hours or about 42.56% of the hours on the case. The balance of the hours came from the three attorneys who associated with the Sessions at different points during the case.

Other than arguing that both Mr. Sessions and Mrs. Sessions may have duplicated certain time entries, the County really only challenges the time submitted by Mr. Sessions. The County's primary argument is that Mr. Sessions made unsupported and perhaps inflated settlement demands at various times throughout the case and that his conduct had the effect of needlessly extending the proceedings. Defendant's argument in its essence is that the Court should reject Plaintiffs'

request for fees because of counsel's supposed bad faith. That is simply not something the Sixth Circuit has permitted. *Murphy v. Vaive Wood Prods. Co.*, No. 19-1685, 2020 WL 615068, at *2 (6th Cir. Feb. 10, 2020) ("But under the law of our circuit, a plaintiff's bad acts are not special circumstances that render a fee award unjust."); *Wikol ex rel. Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) (same in awarding attorney's fees under IDEA); *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982) (same in awarding attorney's fees under FHA).

The Sixth Circuit has held that when it comes to assessing a party's "degree of success" in calculating fee awards, district courts have the discretion to "consider substantial settlement offers that are rejected as part of the 'degree of success' in the litigation." *Kritcher*, 799 F. App'x at 379 (citing *McKelvey*, 768 F.3d at 495).[8] That consideration makes sense when it comes to awarding attorney's fees. "In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Marek v. Chesny*, 473 U.S. 1, 11 (1985).

Even so, the County has made no such showing here. The parties engaged in three different mediations, one judicial settlement conference, and many other private discussions about the prospects of settling before they finally reached their out-of-court settlement agreement. The County has shown that both in mediations and in other settlement discussions, the County offered amounts far less and Mr. Sessions demanded amounts far greater than the amount the parties ultimately agreed on in settlement. But that type of hard bargaining can be true in any civil action,

---

[8] As one of the many secondary arguments raised by the parties in the fee dispute, Plaintiffs argue Defendant never made a Rule 68 offer of judgment. Defendant responds that Plaintiffs cite no authority for their position that an offer of judgment might be relevant to an award of attorney's fees. *But see Kritcher*, 799 F. App'x at 379 (noting that "[the record contains no offers of settlement from Prudential nor any offer of judgment under Rule 68" as a factor in deciding whether a party's failure to accept a settlement offer should affect an award of attorney's fees).

particularly a complex FLSA case where the payroll records are extensive and the parties may value the case differently, depending on factors like the availability of liquidated damages or the statute of limitations.

Regardless, unlike *Kritcher*, this is not a case where Plaintiffs rejected a settlement offer from the County and then continued to litigate only to end up with a smaller recovery. On the contrary, the closest the parties appear to have come to reaching a settlement occurred in early 2023. The parties first reached a tentative settlement in March 2023, which provided for a fund of almost $3 million to settle all claims, exclusive of attorney's fees. But the Hardeman County Commission did not pass the motion to approve the settlement and by doing so effectively decided to continue to defend the case on the merits. The County finally agreed to pay Plaintiffs approximately $2.6 million to settle the dispute in its entirety, that is, about 13 percent less than the $2.99 million the parties had tentatively agreed to in early 2023.

By the time the parties reached a settlement 20 months later, they had engaged in substantially more litigation. They had briefed and argued more motions (including a dispositive motion for decertification), engaged in two more rounds of mediation, had deposed more witnesses, and prepared for two different trials (first, the trial of the dispatchers subclass and then, the patrol deputies subclass). All of this to say, both sides continued to incur additional costs and expenses between the tentative settlement in March 2023 and the final settlement in November 2024. The additional litigation and increased expense to the parties did not occur because Plaintiffs rejected the tentative settlement but because the County did. Defendant has not shown then why the parties' attempts at settlement should weigh against Plaintiffs in the Court's fee determination.

Having determined that a fee reduction based on the settlement negotiations is not warranted, the Court now considers Defendant's remaining objections. The Court can summarily

address two points raised by the County, one that has merit and one that does not.  The County argues that some time entries in Mr. Sessions' billing records are simply implausible on their face. The two specific examples cited by Defendant involve phone calls between Mr. Sessions and two different Plaintiffs in 2020.  Mr. Sessions claims that he spent 30 hours on a phone call to Plaintiff Chris Hopkins on April 14, 2020, and 20 hours on a call to Plaintiff Greg Monroe on May 17, 2020.  The Court suspects the two time entries are likely typographical errors.  However, Plaintiffs did not address Defendant's arguments in their reply or sur-sur-reply briefs.  The Court finds then that omitting the hours from the petition and reducing Mr. Sessions' total hours by 50 hours is warranted.  This objection is sustained.

The County also points out that Mr. Sessions' billing to SSPBA showed one amount of time but his fee petition shows higher amounts of time for the same entries.  Defendant's questions about the hours billed to the SSPBA are easily answered.  According to Mr. Sessions, some Plaintiffs were SSPBA members and the vast majority were not.  It stands to reason then that Mr. Sessions submitted bills to the SSPBA showing one number of hours devoted to work on behalf of SSPBA members and logged somewhat higher numbers of hours for the same tasks working for non-SSPBA members.  This objection is overruled.

The real gravamen of the County's critique concerns the number of hours Mr. Sessions billed.  The County questions the reasonableness of certain time entries listed in the fee petition and argues that counsel's hours are excessive.  "[T]he 'lodestar' method of calculation . . . does not solve the problem of excessive hours." *Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir. 1986). The Sixth Circuit has remarked that "[t]hree very different kinds of issues can arise concerning excessive hours:"

> (1) factual questions about whether the lawyer actually worked the hours claimed or is padding the account; (2) legal questions about whether the work performed is

> sufficiently related to the points on which the client prevailed as to be compensable;
> (3) mixed questions about whether the lawyer used poor judgment in spending too
> many hours on some part of the case or by unnecessarily duplicating the work of
> co-counsel.

*Id.* at 150–51.  The County argues that all three types of excessive billing are present here.

First, the County calls into doubt entries for certain periods of time and contrasts Mr. Sessions' billing with statements he later made to the Court about his ability to meet certain deadlines. For example, between October 2019 to January 2020, Mr. Sessions claims to have worked 174.5 hours on the case.  But in a motion to extend the deadline for amending the pleadings (and as part of Plaintiffs' motion for leave to file a second amended complaint), Mr. Sessions argued that good cause existed for the extension based on counsel's workload and his need to care for his mother who had recently sustained injuries and been hospitalized.  *See* Pls.' Mot. to Modify Rule 16(b) Scheduling Order and Mot. for Leave to File Second Am. Compl., Feb. 13, 2020 (ECF No. 62).  Defendant makes a similar point about the period from May 2021 to September 2021.  In a related case, *Carnell v. Hardeman County*, no. 1:21-cv-02179, Mr. Sessions responded to a show cause order and explained his earlier failure to respond by citing the death of his father, family matters involving his children who were performing military service, and the establishment of his new law office.  *See* Counsel's Resp. to Order to Show Cause, Sept. 21, 2021 (ECF No. 35).  And yet Mr. Sessions' billing shows that he worked 1,200 hours in *Perry* during that same timeframe. Defendant now argues that Mr. Sessions' billing records are inconsistent with his previous representations to the Court.

Defendant has posed "factual questions about whether the lawyer actually worked the hours claimed or is padding the account." *Coulter*, 805 F.2d at 150–51.  The Court finds, however, that Defendant has not carried its burden. Defendant relies on motions Mr. Sessions filed

requesting more time or explaining his failure to act within a certain time and then contrasts Mr. Sessions' statements in his court papers with the time entries in his billing records, all to show that Mr. Sessions could not have worked the hours he claimed. But the County has simply shown that Mr. Sessions worked approximately 175 hours during one 4-month stretch early in the case, that is, about 10 hours a week. This showing does not reasonably suggest an excess of hours and is easily reconcilable with Mr. Sessions' statements about his family needs during that timespan.

The same goes for the proof about Mr. Sessions working 1,200 hours on the case over 5 months in 2021. The County points to Mr. Sessions' show cause response in *Carnell* in which he cited the number of important family matters and the press of his other business as the reason he had not complied with a previous court order. However, the Court does not find any tension between Mr. Sessions' billing and his statements to the Court. Working 1,200 hours over a 5-month span of time comes out to around 60 hours per week. Mr. Sessions explains that the other business that delayed his work in *Carnell* was his work in *Perry*. The number of hours he billed is actually consistent with Mr. Sessions' show cause response in *Carnell*. And nothing about the death of his father or the deployment of his children for military service suggests that the hours are not credible, much less excessive. So the Court finds that Defendant has not shown Mr. Sessions did not actually work these hours.

Next, the County challenges certain entries for tasks that were not reasonably incurred or necessary to the prosecution of the action, for instance, time spent consulting with other attorneys about the case and devoted to claims the Court subsequently dismissed (and in some cases because Plaintiffs did not make a timely response on the merits of an issue). Defendant's point is perhaps another way of asking "legal questions about whether the work performed is sufficiently related to the points on which the client prevailed as to be compensable." *Coulter*, 805 F.2d at 151. The

Court is not persuaded by Defendant's argument that Mr. Sessions spent excessive time on legal claims lacking merit.

The inquiry "is not whether . . . in hindsight the time expenditure was strictly necessary to obtain the relief achieved" but rather "whether a reasonable attorney would have believed the work to be reasonably expended in the pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).   One of the issues in the case became how Hardeman County funded overtime.   Mr. Sessions has shown that his consultations with outside counsel were in part related to a salary suit brought by Sheriff Doolen against the County to obtain more funding for wages and benefits for the Sheriff's Office and its employees. Conferring with another attorney about the salary suit was not unreasonable.

It is true that the Court dismissed Plaintiffs' claims against several Defendants on dispositive motions.   The dismissals occurred, however, relatively early in the case, mostly before May 2020.   *See* footnote 2.   The last of the individual Defendants in the case was Mayor Sain. Plaintiffs did not prevail on their claims against Mayor Sain and even waived some of them by failing to respond to the issues in Mayor Sain's motion for summary judgment.   It is also true that Mr. Sessions included in some of his settlement demands amounts to be paid by Mayor Sain for his personal liability to Plaintiffs for their damages. The fact is Plaintiffs sought to hold Mayor Sain individually liable for violations of the FLSA under the theory that Mayor Sain met the FLSA's definition as an "employer."   Plaintiffs contested the issue all the way to summary

judgment, that is, until the Court granted Mayor Sain summary judgment on the claim.[9]  Defendant has not shown that it was unreasonable for Mr. Sessions to press the claim or continue to assert it until the Court had decided it on the merits.

The bulk of the County's objections arguably fall into the third type or category where a fee petition raises "mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Coulter*, 805 F.2d at 151.  According to Defendant, Mr. Sessions spent too much time on specific tasks or duplicated the work of co-counsel.  The County cites "red flag" entries, either billing large blocks of time for a single day of work,[10] or spending an unreasonably large amount of time on certain tasks, or duplicating the effort among Plaintiffs' attorneys.  The County specifically objects to Mr. Sessions spending 2,000 hours responding to discovery, 550 hours preparing for mediation, 53.7 hours working on the complaint, and 70.2 hours drafting the amended complaint.[11]  The County also argues that in many instances, Mr. Sessions and Mrs. Sessions have included time entries for the same lawyer tasks, meetings with clients, or other court proceedings.

---

[9] Mayor Sain could have moved for judgment as a matter of law on the FLSA wage and hour claims against him in his individual capacity at any time and certainly long before he did. Sain actually had to move for an 11th-hour extension of the dispositive motion deadline just to file his Rule 56 motion when he did. *See* Order Setting Pretrial Deadlines, Sept. 9, 2024 (ECF No. 437).

[10] The Sixth Circuit "has held that so long as the description of the work performed is adequate, block-billing can be sufficient." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014) (citing *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs,* 473 F.3d 253, 273 (6th Cir.2007)).  To the extent that Defendant has objected to counsel's practice of block billing, that objection is overruled.

[11] Mr. Sessions explains that in his time entries for preparing pleadings, he included time for factual investigation, legal research, and drafting the document, not simply typing up the pleading.  Based on Mr. Sessions' explanation, the Court is satisfied that the time related to the pleadings was not excessive or unreasonable.

The Court finds that the vast majority of Mr. Sessions' and Mrs. Sessions' time entries are reasonable. As the Court's review of the procedural history emphasized, this has been a complex FLSA collective action, involving a large number of Plaintiffs with several theories of relief against multiple Defendants. Mr. Sessions has shown that a large portion of his time in the case was spent communicating with the lead Plaintiffs (i.e. those who filed suit in the first place) as well as the large number of opt-in Plaintiffs who joined the case along the way and preparing his clients' claims for trial. Mr. Sessions and Mrs. Sessions have an office in Shelby County and represented Plaintiffs two counties away in Hardeman County. Naturally, counsel had to travel many times to meet with their clients, work on discovery with their clients, and defend depositions involving their clients. In fact, between March 2020 and May 2021, the Sessions made 38 trips (by the Court's count) to Bolivar, Tennessee in Hardeman County, mostly related to depositions either to prepare their clients for depositions or represent them in the depositions.

Defendant does not directly contest the Sessions' billing on travel or meeting with clients.[12] The County instead objects to Mr. Sessions recovering fees related to handling probate matters for the families of Plaintiffs who passed away before the case settled or time spent discussing the case with Hardeman County community members or the press (120 different entries) or ancillary litigation with the State of Tennessee's Comptroller for the production of Hardeman County payroll information. Defendant has shown that much of this time had only a slight connection to Plaintiffs' success on the merits of their claims.

Even if the Court gives Mr. Sessions the benefit of the doubt on the time entries with limited connection to the merits of *Perry*, other entries appear to be either duplicative or somewhat

---

[12] The Sixth Circuit has implied that travel time is compensable. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994) ("[Plaintiffs] correctly point out that . . . the time spent traveling is fully compensable.").

excessive. Defendant claims that it has identified 500 separate billing entries that are "excessive[,] duplicative, and questionable." For example, although there were three different mediations and one settlement conference, Mr. Sessions explains that much of his time was devoted to reviewing late document productions from the County and using the information to prepare for mediation. Still, 550 hours spent on mediation preparation seems excessive.

While there is no *per se* rule against two attorneys attending the same hearing, deposition, or other matter as part of the representation of the same client, the Court has some concerns about the duplication of effort by Mr. Sessions and Mrs. Sessions identified by Defendant in its objections. For instance, Defendant points out that the Court held a joint scheduling conference in *Perry* and *Carnell* on October 7, 2021. Both Mr. Sessions and Mrs. Sessions were awarded their fees for 3.7 hours attending the conference as part of their fee petition in *Carnell*. Now they request an award for another 4.5 hours for travel and attending the scheduling conference as part of their *Perry* fee petition. Not only have they already received payment for this time, the minute entry for the conference shows that only Mr. Sessions was in attendance. The Court tends to agree with the County that the Sessions should not be able to recover the same time even if the conference was a joint one addressed to two different cases.

Generally speaking, the time records are full of instances of counsel documenting time for both attorneys to work on the same task and attend the same meetings or hearings in the case. The overall result is that counsel perhaps billed at the higher end of what might be a reasonable amount of time for certain discrete tasks. The Court of Appeals has approved "simply deducting a small percentage of the total hours to eliminate duplication of services" as an "arbitrary but essentially fair approach" in cases where more than one lawyer seeks an award of fees for representing the same client. *Smith*, 592 F. App'x at 372 (quoting *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187,

at *8 (6th Cir. Jan. 31, 2000) (table).  The Court finds that reducing counsel's billable time by 5% will adequately address any concerns with excessive time or duplication of effort without requiring a line-by-line examination of each time entry.  *Sigley*, 2000 WL 145187, at *8 ("Such an approach [a flat reduction] seems preferable to an attempt to pick out, here and there, the hours which were duplicative.").  Under the circumstances, the Court will reduce the overall hours documented in Mr. Sessions' and Mrs. Sessions' time records by five percent (5%).

In summary, Mr. Sessions claimed 5,077 hours worked prior to 2024 and 2,465.60 hours worked since 2024. The Court will reduce the 5,077 hours billed for work prior to 2024 by 50 hours for the excessive time for two phone calls in 2021 and then reduce the remaining hours by 5%.  Based on this calculation, the Court finds that Mr. Sessions reasonably worked 4,775.65 hours [(5,077 hours – 50 hours)*0.95] for the period before 2024.  The Court will also reduce the 2,465.60 hours Mr. Sessions billed for his work after 2024 by 5% and find that Mr. Sessions reasonably worked 2,342.32 hours for the period since 2024.  This result is an overall reduction of 425 hours from Mr. Sessions' billing.[13]

The Court will likewise apply an across-the-board reduction of 5% to Mrs. Sessions' billable time in recognition of certain entries containing excessive or duplicative time. Mrs. Sessions claimed 4,183.70 hours worked prior to 2024 and 1,898.50 hours worked since 2024. The Court will reduce the 4,183.70 hours billed for work prior to 2024 by 5%.  Based on this calculation, the Court finds that Mrs. Sessions reasonably worked 3,974.52 hours [(4,183.70 hours*0.95] for the period before 2024.  The Court will also reduce the 1,898.50 hours billed for

---

[13] Mr. Sessions states that he had already used his billing judgment to reduce his hours by almost 375 hours.  Sessions Decl. ¶ 20 (ECF No. 543-2).

work after 2024 by 5% and find that Mrs. Sessions reasonably worked 1,803.58 hours for the period since 2024. This yields an overall reduction of 304.10 hours from Mrs. Sessions' billing.

Defendant has not actually contested the time entries for work performed by the other attorneys who acted as co-counsel on the case. The Court finds that Mr. King's time of 12.80 hours, Mr. Lindquester's time of 4.30 hours, and Mr. Montesi's time of 648.50 hours were are all reasonable.

### III. Lodestar Calculations

The Court now uses the lodestar method to calculate a reasonable award of attorney's fees for each lawyer representing Plaintiffs in this matter. The lodestar is "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The Court finds that under the lodestar method, Plaintiffs are entitled to an award of attorney's fees in the following amounts:

- William C. Sessions: **$2,940,880.80** [(4,775.65 hours * $400.00/hour = $1,910,260.00) + (2,342.32 * $440.00/hour = $1,030,620.80)]

- Frances H. Sessions: **$1,534,704.00** [(3,974.52 hours * $250.00/hour = $993,630.00) + (1,803.58 hours * $300.00/hour = $541,074.00)].

- James King: **$5,120.00** (12.80 hours * $400.00/hour)

- Eric Lindquester: **$1,010.50** (4.30 hours * $235.00/hour)

- Louis Montesi: **$65,450.00** (648.50 hours * $100.00/hour)

  **TOTAL AWARD**: $4,547,165.30

Once the Court has arrived at its lodestar calculation, the Court may "adjust the award upward or downward to achieve a reasonable result." *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 434). In order to make that determination, the Supreme

Court has endorsed the twelve factors adopted in *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714 (5th Cir.1974). *Id.* (citing *Hensley*, 461 U.S. at 430 n.3, 434 n.9. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19. "The Supreme Court, however, has limited the application of the

*Johnson* factors, noting that many of these factors usually are subsumed within the initial

calculation of hours reasonably expended at a reasonable hourly rate." *Geier*, 372 F.3d at 792

(citing *Hensley,* 461 U.S. at 434 n.9).

The Court holds that an adjustment of the attorney's fee calculated under the lodestar

method is not required here. The Court has largely considered the *Johnson* factors as part of its

determination of how many hours counsel reasonably devoted to the case. The Court would only

add that Plaintiffs have achieved what appears to be a high degree of success. "The most critical

factor in determining the reasonableness of a fee award is the degree of success obtained." *Isabel*,

404 F.3d at 416. The case has remained pending for over six years and involved the FLSA claims

and state law claims of over 80 Plaintiffs. Mr. Sessions and Mrs. Sessions along with their co-

counsel have negotiated settlements (or put their former clients who accepted the County's

counter-offer in a position to receive settlement payments of their own) valued at over $2.6 million

in all. Under all of the circumstances, the lodestar method has yielded a reasonable attorney's fee

in this case.

**IV. Award of Other Costs and Expenses**

Plaintiffs finally seek an award of other costs totaling $46,480.98. In addition to a judgment for damages and attorney's fees, the FLSA entitles a plaintiff to the "costs of the action." 29 U.S.C. § 216(b). Under 28 U.S.C. § 1920, a judge or clerk of court "may tax as costs" certain enumerated expenses. 28 U.S.C. § 1920; *see also* Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). Section 1920 permits a prevailing party to recover as costs

> (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under [28 U.S.C. § 1923]; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

§ 1920. "The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007).

The Court finds that Plaintiffs are entitled to all of the costs allowed under § 1920: their federal court filing fees and their fees for transcripts, service of process, printing, copying, and experts. Most of these expenses are spelled out as recoverable "costs" under § 1920. *E.g. Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989) (construing § 1920(2) & (4) as allowing recovery of costs for taking, transcribing, and reproducing depositions). The Sixth Circuit has held that "a district court may tax costs for private process server fees to the extent that these private process server fees do not exceed the United States Marshal's fees. *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002) (collecting cases).

The documentation provided by Plaintiffs to substantiate their request for costs shows the following types and amounts of § 1920 expenses:

- $24,926.18 in deposition transcript fees (Elite-Brentwood Reporting Services and Veritext Legal Solutions);

- $1,820 expert witness fee (Dawn Farias);
- $340.00 Hardeman County Commission Meeting Transcript;
- $1,474.84 outside printing (Insight Discovery, LLC);
- $1,150.01 document production (Insight Discovery, LLC);
- $343.82 printing electronic files (Insight Discovery, LLC);
- $1,204 in U.S. District Court filing fees (for *Perry*, *Allen*, and *Luttrell*);
- $302.50 service of process;
- $637.50 process server (PDQ Couriers); and
- $43.29 printing (FedEx Office).

Defendant has not raised an objection to an award of any of these specific costs. Therefore, the Court will grant Plaintiffs' request for these costs.

Plaintiffs' request actually goes further and seeks other expenses as part of their FLSA-recoverable "costs." Many courts, including two members of this Court, have held that the FLSA goes beyond § 1920 and entitles "the prevailing party in an FLSA case" "to all reasonable costs of litigation." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) (recognizing that recoverable costs under the FLSA "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920" such as reasonable out-of-pocket expenses); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988), *cert. denied*, 490 U.S. 1107 (1989)); *Cheung v. United States*, 170 Fed.Cl. 622, 676–77 (Ct. Fed. Claims 2024); *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 19-cv-02378-SHM-tmp, 2021 WL 5016872, at *3 (W.D. Tenn. Oct. 28, 2021); *Monroe v. FTS USA, LLC*, No. 2:08-cv-02100-JTF-cgc, 2020 WL 13227389, at *9 (W.D. Tenn. Oct. 13, 2020); *Shorter v. Valley Bank & Trust Co.*, 678 F. Supp. 714, 726 (N.D. Ill. 1988) ("Costs under fee-shifting statutes such as the FLSA include all reasonable out-of-pocket expenditures.").

Defendant has not objected to Plaintiffs recovering their reasonable out-of-pocket expenses for postage ($256.90) and mileage ($255.30). The Court will therefore award Plaintiffs those expenses as part of their recoverable out-of-pocket costs. Defendant does object to other out-of-

pocket expenses included with Plaintiffs' request for costs. Plaintiffs seek an award of costs for mediation fees ($9,742.40 owed to mediator Michael Russell, $1,448.61 owed to mediator John Houseal), meals ($740.65), filing fees in Hardeman County Chancery Court ($988.50), a hotel reservation in connection with an expert witness deposition ($383.13), and the purchase of computer storage devices ($218.16).

Concerning the mediation fees, "courts typically allow counsel to recover their reasonable out-of-pocket expenses" including their "share of the mediator's fees" as long as the costs "are reasonable and were incidental and necessary to the representation." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 183 n.3 (S.D.N.Y. 2003)). According to two receipts attached to Mr. Sessions' declaration (ECF No. 544-2, Page ID 7228-29), Mr. Russell billed Plaintiffs as follows: a mediation "admin fee" of $200.00, a mediation "flat fee" of $8,500.00, Plaintiffs' portion of a travel fee of $750, and Plaintiff's portion of the mediator's hotel fees of $292.40. Although it is not clear whether the "flat fee" or the "admin fee" were the total amounts Mr. Russell billed or just Plaintiffs' share of those fees, the overall mediation fees appear to be reasonable. Mr. Russell committed several days to the mediation, incurred his own travel expenses, and actually helped the parties reach a tentative settlement. Likewise, Plaintiffs have shown that their one-third share of Mr. Houseal's fee, which amounts to $1,448.61, is recoverable and reasonable.

Defendant objects that Mr. Sessions has not actually paid Mr. Russell the mediation fee and asserts that Defendant will pay Mr. Russell "outside of this case." The Court fails to see why the fact that Mr. Russell has yet to be paid should preclude Plaintiffs from recovering at least their share of the mediation fee. And Defendant has not raised any objection to Plaintiffs' request for Mr. Houseal's mediation fee. Plaintiffs are awarded their mediation expenses as recoverable costs,

subject to the following condition.  Plaintiffs have not shown whether the "flat fee" of $8,500.00

or the "admin fee" of $200.00 charged by Mr. Russell were the total amounts Mr. Russell billed

or just Plaintiffs' share of those fees.  The Court will assume for purposes of its cost determination

that the "flat fee" and "admin fee" represent the full charges billed by Mr. Russell and not just

Plaintiffs' *pro rata* share of Mr. Russell's "fees."  The Court will assess the full $8,700.00 of those

specific fees as a cost against the County in full satisfaction of the fees Mr. Russell billed to

Plaintiffs, subject to the County's right to reduce its payment for any fees it has already remitted

to Mr. Russell and which the award of costs to Plaintiffs would duplicate.

Defendant also objects to Plaintiffs' request for the cost of meals.  Recoverable out-of-

pocket costs under the FLSA can include "working meals," again, as long as the meals "were

incidental and necessary to the representation." *Beckman*, 293 F.R.D. at 482.  Mr. Sessions' billing

records list out several "client meals," though without including receipts for the meals or

explaining why the meals were "necessary to the representation."  Most of the meals appear to

date back to an early phase of the case that coincided with counsel's monthly trips to meet with

clients in Hardeman County.  Based on the amounts of the expenses listed, it appears counsel

shared the meals with one or more clients.  But without something to show why the meals were

"working meals," the Court declines to award Mr. Sessions the $740.65 Plaintiffs seek as meal

costs.

Defendant next argues that the Court should not award Plaintiffs the costs of filing petitions

in the Hardeman County Chancery Court.  Plaintiffs have shown that Mr. Sessions filed petitions

on behalf of three deceased Plaintiffs, James Callahan, Elvis Armour, and Stephanie Wilson.  The

petitions requested that the state court appoint an administrator ad litem for the purpose of allowing

the administrators to pursue the FLSA claims of the deceased here.  Plaintiffs later filed in *Perry*

motions to substitute the administrators ad litem for the deceased parties along with copies of the court orders appointing an administrator ad litem for each deceased Plaintiff. *See* Motions to Substitute Party, Jan. 17, 2024 (ECF Nos. 335–340).

Neither party has cited any legal authority directly addressed to the reasonableness of awarding a prevailing party in an FLSA case its costs for such an expense. The Court nevertheless finds that the expenses were reasonable and necessary for counsel's representation of these three Plaintiffs to vindicate their rights under the FLSA. Plaintiffs' request is limited and narrowly drawn. They seek only reimbursement for a very particular court cost directly associated with the appointment of an administrator ad litem with authority to act on behalf of the deceased Plaintiffs in this action. The state court made each appointment for the specific purpose of allowing each decedent's estates to pursue the decedent's claims against the County. The Court will therefore grant Plaintiffs an award of $988.50 for their filing fees in state court for the appointment of the administrator ad litem.

Defendant also argues that the Court should not award Plaintiffs a hotel reservation fee associated with a cancelled deposition. Plaintiffs request $383.13 in costs for Mr. Sessions' hotel reservation on September 23, 2022, to attend the deposition of the County's damages expert, Dawn Farias. According to Defendant, the deposition was cancelled but in plenty of time for Mr. Sessions to also cancel his hotel reservation and avoid the charge. Plaintiffs have not responded to Defendant's argument on this point. Because it is undisputed the travel did not occur and Defendant has shown that Mr. Sessions could have cancelled the reservation before incurring the charge, the Court declines to award Plaintiffs their expenses for the September 2022 hotel reservation.

This just leaves Defendant's objection to awarding Plaintiffs their expenses for counsel's purchase of three different computer storage devices (external hard drives) in the total amount of $218.16. The County argues that the devices are part of the normal overhead expense associated with the practice of law. Be that as it may, courts permit prevailing parties in FLSA cases to recover reasonable, out-of-pocket expenses that "were incidental and necessary to the representation." *Beckman*, 293 F.R.D. at 482. The Court finds that the purchase of additional storage devices was reasonable in a case involving so many Plaintiffs and an unusually large volume of discovery materials. The Court will therefore grant Plaintiffs' request for the expense as a reasonable cost of the action.

In summary, the Court will grant Plaintiffs' Motion as to their request for $24,926.18 in deposition transcript fees; $1,820.00 in expert witness fees; $340.00 for a Hardeman County Commission meeting transcript; $1,474.84 for outside printing; $1,150.01 for document production; $343.82 for printing electronic files; $1,204 in U.S. District Court filing fees; $302.50 for service of process; $637.50 for a process server; $43.29 in printing expenses; $256.90 in postage; $255.30 for mileage; $9,742.40 in mediation fees owed to mediator Michael Russell; $1,448.61 in mediation fees owed to mediator John Houseal; $988.50 in filing fees in Hardeman County Chancery Court; and $218.16 for the purchase of computer storage devices. The total amount of costs awarded is **$45,152.01**.

## V. Remaining Relief

Plaintiffs state in footnote found in their opening brief that their request represents an interim award of attorney's fees and costs. According to Plaintiffs, "[a]dditional fees and costs will accrue due to this and additional litigation addressing the accrued comp time for Plaintiffs Tavisha Anderson, Cheri Baker, Leonard Brown, Jenny Duke, Randal Grantham, Vincent Hunt,

43

Jackie Kelley, Mike Kennamore, Pearlie Long and Patrick Perry." Pl.'s Mem. in Support 19, n.18 (ECF No. 543-1). Plaintiffs therefore ask for "leave to move for an award of additional attorneys' fees and costs following the resolution of the accrued comp time for the above current employees of Defendant." *Id*.

By way of background, the Court entered an order approving the parties' settlement on February 27, 2025. The Court found that as part of the settlement, the parties had agreed to "work with Sheriff Doolen to correct the accrued leave balances of Plaintiffs who still work for the County and resolve the leave balance issue within six months of the court approving this settlement by entry of its order." Order Granting in Part, Denying in Part Defs.' Second Mot. to Enforce Settlement 19, Feb. 27, 2025 (ECF No. 534).

"Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees." Fed. R. Civ. P. 58(e). Plaintiffs have not actually filed a separate motion requesting the opportunity to petition the Court for more attorney's fees and costs and setting out with particularity the grounds supporting the request. Fed. R. Civ. P. 7(b)(1) (requiring a request for a court order to be made by motion and to "state with particularity the grounds for seeking the order). Plaintiffs' request also remains contingent. More than six months have now passed, and the parties have not requested any additional relief from the Court related to the leave bank. For all of these reasons, the Court finds no reason to delay the entry of judgment.

## CONCLUSION

Plaintiffs' Motion is **GRANTED in part, DENIED in part**. Pursuant to 29 U.S.C. § 216(b), the Court hereby awards Plaintiffs attorney's fees in the total amount of $4,547,165.30 and costs in the amount of $45,152.01. This case is **DISMISSED**. The Clerk of Court is directed to enter judgment.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  September 30, 2025.